*UNITED STATES v. LEZMOND CHARLES MITCHELL*
CV09-8089-PCT-MHM(MEA)

EXHIBITS IN SUPPORT OF
MOTION TO VACATE SENTENCE

**EXHIBITS IN SUPPORT OF SYSTEMIC CLAIMS**

84.   Federal Capital Defendants Who Were Found Not Guilty of the Capital Charge or Were Innocent

85.   Federal Capital Defendants Convicted of a Lessor Offense

86.   Federal Capital Cases Where the Death Penalty Has Been Rejected by Juries or Judges

87.   Federal Capital Cases Resulting in a Sentencing of Death

88.   Federal Capital Cases Resulting in an Execution

89.   Former Federal Death Row Inmates

90.   Technical Errors Can Kill, 9/4/00 NLJ A16, (Col. 2)

91.   Reviewed Ordered on McVeigh Ties, 2/28/04 Wash. Post A22

# Summaries Of Cases
# Authorized for the Death Penalty
# 1988 - 2003

## David Bruck, Dick Burr & Kevin McNally
## Federal Death Penalty Resource Counsel Project

### TOPIC:

## Federal Capital Defandants Who Were Found Not Guilty of the Capital Charge or Were Innocent

**Brown, Reginald**
E.D. MI CR No. 92-81127
Race: B

Involves multiple killings - an innocent gang member. After insisting for nearly two years he had murdered four people, including a child, the government dismissed capital murder charges against a Detroit man and began prosecuting a co-defendant for the same killing. The AUSA has claimed the gang was connected to "more than 50 murders."

**Crummie, Chedrick; Mack, Edward Alexander; Rozier, Kevin Denard**
S.D. FL CR No. 93-252-CR-UUB
Race: All B

Two drug-related murders committed in the course of a Miami narcotics trafficking operation. The three defendants faced the death penalty on one of the homicides. Attorney General Reno authorized a capital prosecution in early 1994; trial began on September 18,1995 and ended in an acquittal on the homicide counts on February 5, 1996. The government alleged that the defendants had intentionally shot an innocent female victim after the defendants kicked the door to her bedroom down while searching for a rival drug dealer who had ripped them off. This version, based on informant testimony, was contradicted by physical and eye-witness testimony. The defendants were convicted of non- capital drug trafficking charges.

**McKelton, Antonio**
E.D. MI CR No. 98-80348
Race: B

A bank robbery in which an employee was killed while servicing an ATM machine. McKelton was serving a state sentence for the armed robbery of a jewelry store and was suspected in six other robberies at jewelry stores. McKelton's print was on the clip inside the gun. The black victim had fired one shot off as he dove to the ground. McKelton, also a black man, suffers from Hodgkin's disease. The defense and the prosecutor jointly petitioned the Attorney General's Committee to withdraw the death penalty request. The request was first denied but was eventually granted. The indictment was dismissed when additional evidence was uncovered.

**Alejandro, Joel Rivera; Martinez, Hector Acosta**
D. PR CR No. 99-044 (SEC)
Race: H

Intrastate kidnapping, killing and dismembering of a Rio Piedras businessman who may have been involved in the illegal numbers racket called "bolleta," after his family ignored a million dollar ransom demand and called the police. The accused allegedly belonged to a gang of kidnappers suspected in as many as 15 abductions. Alejandro was alleged to be the triggerman. Only Alejandro and Martinez were to face the death penalty, but the district court declared the death penalty unconstitutional in Puerto Rico. 106 F.Supp. 311 (D. PR 2000). However, this decision was reversed by the Circuit. 252 F.3d 13 (2002). Both capital defendants had prior local murder convictions. Both were acquitted at trial. All involved are Hispanic.

**Castillo, Mario; Jacobo, Gerardo**
C.D. CA CR No. 99-83-(A)-DT
Race: H

Involves multiple murder charges against two co-defendants of Mariano Martinez who were approved for a capital prosecution while Martinez was on trial. Jacobo, 21, and Castillo, 22, were charged as the triggermen in a November 1998 triple slaying, allegedly by the Mexican Mafia, La Eme (Spanish for The M). Three men, one a drug dealer and two innocent bystanders, were killed in a Monticello autobody shop. After three months of trial, the government withdrew its notice of intent to seek the death penalty after the Court threatened to bar the testimony of two witnesses negligently not discovered or disclosed before trial. 18 U.S.C. Section 3432. The witnesses testified but the jury acquitted both defendants. All involved are Hispanic. The trial lasted 6 months. Castillo and Jacobo were acquitted of murder.

**Church, Walter Lefight**
W.D. VA CR No. 00-CR-104-ALL
Race: W

The April 1989 shotgun multiple murder of a family of three. A federal grand jury indicted Gilmore, a former mayor and convicted cocaine kingpin, and co-defendants Ealy and Church, charging them with two capital murders in the furtherance of a drug-trafficking enterprise and a third murder of a potential federal witnesses. They are charged with these murders during an alleged robbery of $30,000 belonging to a drug ring. The murders occurred one week after Gilmore learned that federal investigators were aware of his ties to drug trafficking.

**Jones, Luke**
D. CT CR No. 00-CR-238-ALL
Race: B

Six murders in two indictments and other attempted murders by the members of gangs called "The Middle," "Q & A Mob" or the "Batman Crew." The gangs dealt in cocaine, crack or heroin. Powell, Harris and Baldwin were charged in multiple (two) racketeering murders in 1996 and 1997. 18 U.S.C. '' 1959 and 924(c). Luke Jones was charged in two murders in 1998 and 1999. The others were charged in one homicide. Luke and Lance Jones were found wearing bullet proof vest in a car in which several loaded weapons were found. Lance Jones is serving a 24 year federal prison term and Luke a 10-year sentence for being a felon in possession of a gun. All involved are African-American. Attorney General Ashcroft required a capital prosecution against Luke Jones. The jury found Luke Jones not guilty of one murder and

Judge Nevas granted a Rule 29 motion as to the other, finding that the second murder victim was not involved with a drug organization and did not pose a threat to Jones' drug enterprise, rather he was killed after a personal dispute.

**Rice, Darrell David**
W.D. VA CR No. 02-CR-26-ALL
Race: W

The multiple 1996 murders of two young female hikers in Virginia's Shenandoah National Park by cutting their throats. The victims were found bound and gagged. According to Attorney General Ashcroft, who announced pursuit of the death penalty himself, Rice has said he hates women and enjoys assaulting the vulnerable and that the two women deserved to die because they were lesbians. Review of tape recordings indicate Rice said only that the governement was portraying him that way. Rice is currently serving a 135 month sentence in federal prison for the 1997 attempted abduction of a female bicyclist in the park. Attorney General Ashcroft stated at a news conference: "We're inclined to prosecute hate crimes like this one, prosecute them to the fullest." All involved are white. Days before the October 2003 trial date the trial was postponed when the FBI "found a new hair" and also re-examined a hair linking Rice to the women and admitted there was no connection. The new hair did not come from Rice or the women. There is male DNA on both ligatures that did not come from Rice. Eventually, the prosecution was dismissed.

**Lentz, Jay**
E.D. VA CR No. 01-CR-150-ALL
Race: W

Interstate domestic violence and kidnapping resulting in death. The defendant lived in Virginia and his ex-wife was kidnapped from Maryland. Her body was never located. A bloody car was found in D. C. All involved are white. A government pretrial appeal involved statements by the defendant. 225 F.Supp.2d 672, aff'd, 2003 WL 253949 (4th Cir. (VA)). Lentz was convicted and the jury recommended a life sentence. However, the judge vacated the conviction for lack of any evidence of interstate kidnapping. A government appeal is pending.

**Gilmore, Charles Wesley**
W.D. VA CR No. 00-CR-104-ALL
Race: W

The April 1989 shotgun multiple murder of a family of three. A federal grand jury indicted Gilmore, a former mayor and convicted cocaine kingpin, and co- defendants Ealy and Church, charging them with two capital murders in the furtherance of a drug-trafficking enterprise and a third murder of a potential federal witnesses. They are charged with these murders during an alleged robbery of $30,000 belonging to a drug ring. The murders occurred one week after Gilmore learned that federal investigators were aware of his ties to drug trafficking

# Summaries Of Cases
# Authorized for the Death Penalty
# 1988 - 2003

## David Bruck, Dick Burr & Kevin McNally
## Federal Death Penalty Resource Counsel Project

## TOPIC:

## Federal Capital Defendants Convicted of a Lesser Offense

**Smith, Howard L.**
E.D. VA CR No. 97-341-A
Race: B

The stabbing death of a Lorton Correctional Center prisoner. The defendant was serving a 20-life sentence for a murder he committed ten years previously, at age 17. Lorton is the District of Columbia prison complex, but is located in suburban Virginia. After a one-week 1998 trial, a jury in Alexandria, Virginia, rejected first-degree murder charges and convicted Smith of second-degree murder, which is not a death-eligible offense. Although a number of Lorton murders have been prosecuted in federal court since passage of the 1994 Crime Bill, the Smith case was the first approved for capital prosecution. Smith was sentenced as a "career offender" to life without parole.

**Thomas, Christopher**
E.D. VA CR No. 99-477-A
Race: B

Another murder at the District of Columbia Department of Corrections facility in Lorton. The victim allegedly brought a shank to the fight and the defendant wrestled it from him and stabbed him three times. Thomas was convicted of second degree murder. All involved are African-American. This was Thomas' third murder conviction.

**EX 85 - 1417**

# Summaries Of Cases
# Authorized for the Death Penalty
# 1988 - 2003

## David Bruck, Dick Burr & Kevin McNally
## Federal Death Penalty Resource Counsel Project

### TOPIC:

## Federal Capital Cases Where the Death Penalty Has Been Rejected By Juries or Judges

**Hutching, James Norwood; Molina, Ramon Medina**
E.D. OK CR No. 1:92-032-S
Race: W, H (resp.)

Two white and one Hispanic defendants were tried jointly in connection with the drug- related intrastate kidnap/murder of a Muskogee, Oklahoma auto dealership employee. The two capitally-charged "managers" of the drug enterprise received life sentences from the jury. A wheelman, present on the scene, was sentenced to death, but that sentence was overturned on appeal. The victim was white.

**Cooper, Alex; Davis, Darnell Anthony**
N.D. IL CR No. 89-CR- 580
Race: All B

Two black Chicago gang members received life sentences for the cocaine-related murder of an informant after separate trials. The Government had offered one defendant, but not the other, a plea bargain prior to trial. 19 F.3d 1154 (7th Cir. 1994).

**Pitera, Thomas**
E.D. NY CR No. 90-0424 (RR)
Race: W

Involves multiple killings. A white Mafia contract killer, the only person with mob connections to face the federal death penalty, received a life sentence from a Brooklyn, New York jury after being convicted of seven murders, two of which qualified as capital crimes under 21 U.S.C. § 848(e). Several of the murders involved torture and dismemberment of the victims. 5 F.3d 624 (2d Cir. 1993).

**Villarreal, Reynaldo Sambrano; Villarreal, Baldemar**
E.D. TX CR No. 9:91-CR4
Race: All H

Two Hispanic defendants in Texas were sentenced to life imprisonment and 40 years, respectively, for the marijuana-related murder of a law enforcement officer after a joint trial. The sentencing jury found no facts legally warranting the death penalty. 963 F.2d 725 (5th Cir.), cert. denied, 113 S.Ct. 353 (1992). A third Hispanic defendant, Jesus Zambrano, was also initially approved for capital prosecution but received a sentence of 30 years after he

EX 86 - 1418

pleaded guilty and testified for the government against the Villarreals.

**Johnson, Shaheem; Johnson, Raheem**
E.D. VA CR No. 97-00314-A
Race: All B

Involves multiple killings - five killings of African-Americans, four males, one female, all cocaine-related murders, two in Virginia (a supplier/witness and his girlfriend with Raheem Johnson as the triggerman), one in Maryland (drug supplier with both Raheem and Shaheem firing weapons), one in Philadelphia (supplier/witness with Raheem Johnson as the triggerman) and another "murder for hire" in New York (drug supplier hit ordered by both Shaheem and Raheem Johnson). The two lead defendants, brothers Shaheem and Raheem Johnson, were authorized for a capital prosecution. Trial began in Alexandria in November, 1998 and ended in life verdicts for both brothers.

**Minerd, Joseph**
W.D. PA CR No. 99-215
Race: W

A case, 1999 New Year's Day arson resulting in the death of the defendant's girlfriend, her three year old child by another man and her fetus, the defendant's child. The ATF believes there was a pipe bomb as there was a shard of metal found in the deceased's exhumed body. All involved are white. Attorney General Ashcroft approved a plea agreement but the defendant backed out of the deal. 176 F.Supp. 424. 182 F.Supp.2d 459. 197 F.Supp.2d 272.

**Henry, Arnold Mark; Oscar, Frantz; Oscar, Jean Claude**
E.D. VA CR No. 93-CR-131
Race: All B

Involves multiple killings. Three blacks, two brothers born in Haiti, another man born in Grenada, were accused of two killings of an African-American man and a woman in related incidents where the victims were suspected of stealing crack cocaine. A Norfolk, Virginia jury refused, in March, 1994, to impose the death penalty upon any of the three capitally-charged defendants. Attorney General Reno authorized a capital prosecution in this case in 1993. Life sentences were affirmed on appeal. 82 F.3d 419 (4th Cir. 1996) (unpub.).

**Moore, Todd**
E.D. VA CR No. 2:93CR16
Race: B

Involves multiple killings. A black New York-based crack cocaine distributor was spared in the first and (to date) only judge-sentencing procedure. Attorney General Reno approved the death penalty in this case in 1994. Moore pled guilty to an indictment charging him with having ordered the murder of a member of his Newport News, Virginia drug organization. The government waived a jury for sentencing, and a sentencing hearing was held before the district court. One month later, the district judge declined to impose the death penalty, and sentenced Moore to life without possibility of release. The sentence was affirmed on appeal, 81 F.3d 152 (4th Cir. 1996) (mem.). At the trial of the admitted triggerman in the murder, Derek Kelley, Moore offered to testify as a government witness. However, the government declined to use Moore as a witness, and Kelley was subsequently acquitted of all charges and released.

**Diaz, Walter; Walker, Tyrone**
N.D. NY CR No. 94-CR-328
Race: All B

Involves multiple killings. Two African-Americans on a drug-related crime spree were approved for capital prosecution by Attorney General Reno in April 1995. The spree involved the alleged drug-related murder of a white victim by two African-American defendants. Two additional cross-racial homicides were alleged in aggravation, one during the course of a robbery in New York City, another of an elderly lawyer in upstate New York. Trial began in 1995 and sentences of life were returned after a vote of 11 to 1 for life for Diaz and 11 to 1 for death for Walker.

**Moore, Dennis B., Sr.**
W.D. MO CR No. 94-00194
Race: W

Recruited his associate (Wyrick) to kill a rival drug marijuana dealer. Murder for hire is alleged as an aggravating circumstance. Both the defendants and the deceased are Caucasian. In 1996, the jury deadlocked on the punishment for Moore, resulting in a life sentence.

**Nguyen, Phouc**
H. D. KS CR No. 94-10129-01
Race: A

The co-defendant of Chanthadara was also involved in a Hobbes Act robbery/murder. A Wichita, Kansas jury voted to sentence the defendant to life imprisonment in 1996, following his conviction for a murder committed during a commercial robbery. Mr. Chanthadara was previously sentenced to death by a different Wichita jury.

**Nichols, Terry Lynn**
D. CO CR No. 96-CR-68-M
Race: W

The co-defendant in the Oklahoma City bombing case. At a separate trial following McVeigh's, a Denver federal jury failed to reach a unanimous finding on Nichols' alleged intent to kill, a legal requirement for imposing the death penalty. The same jury's guilt phase verdicts indicated that the government had failed to prove that Nichols intended a lethal attack on the Murray Building. He was sentenced in 1998 to life imprisonment and faces the death penalty in state court.

**Beckford, Dean Anthony; Cazaco, Leonel; Dennis, Claude; Thomas, Richard**
E.D. VA CR No. 3:95CR00087
Race: All B

Involves multiple killings. Another New York - Richmond cocaine connection was uncovered which involved members of a Brooklyn gang, all African- American, who transported crack cocaine to Richmond, Virginia. The 32-count indictment charged five of the alleged members of the so-called "Poison Clan" with capital murder in six killings, two in 1988 and four in 1994. (Devon Dale Beckford, 33, identified by the FBI as a gang leader was not arrested until July, 1997.) After a seven-week trial, a jury declined to impose the death penalty on all four defendants: Dean Beckford, 32, Leonel Romeo Cazaco, 22, Claude Gerald Dennis, 28 and

Richard Thomas, 22. Dean Beckford and Claude Dennis were found guilty of the 1998 double murder. (Dennis had previously been acquitted on these charges in state court in 1989.) Cazaco and Thomas were also convicted of a capital charge. Thomas had been acquitted in state court on the one homicide count on which he was convicted in federal court.

**Ingle, Trinity Edward**
W.D. AR CR No. 6:96CR60022
Race: W

Two white teenagers charged with the robbery-murder of an elderly retired National Parks employee who was found shot and bound with tape near a hiking path in Hot Springs National Park, a federal preserve within the city of Hot Springs, Arkansas. Ingle was convicted of the murder in 1997 after a 6-day trial; two days later a Hot Springs federal jury unanimously sentenced him to life imprisonment. Paul was sentenced to death following a separate, eight-day trial. All involved are white.

**Jones, Anthony**
D. MD CR No. WMN-96-0458
Race: B

Involves multiple (six) killings: one in '94, four in '96, one in '97. Authorization was granted to seek the death penalty for three murders, including an allegation that Jones ordered his step-brother killed from jail because he feared he was about to become a government witness. Jones also ordered the murder, by the victim's own bodyguards, of a rival Baltimore drug dealer who had earlier attempted to arrange the murder of Mr. Jones. Numerous other homicides, attributed to Jones, were alleged in aggravation. Murder for hire is alleged as an aggravating circumstance. Jones was convicted in 1998, sentenced to life without release. Eight co-conspirators were involved in multiple murders but did not face the death penalty. Chapman, Hill and Ross were charged in at least 2 killings. Jones was sent to the "Control Unit" at "super-max," ADX in Florence, Colorado, where he is under severe communication restrictions for 10 years.

**Ray, Quan**
N.D. IL CR No. 96 CR 379
Race: B

Involves multiple killings and a "Gangster Disciple" enforcer. In 1997, a Chicago jury declined to impose the death penalty after convicting Mr. Ray of having murdered a fellow gang drug trafficker on orders of a Gangsters Disciples' higher-up, Darryl Johnson. Murder for hire is alleged as an aggravating circumstance. The jury found that no statutory aggravating factor had been established beyond a reasonable doubt, rejecting the government's allegation that the murder had been committed "after substantial planning and premeditation." Johnson was sentenced to death for the same and one additional murder.

**Bobbitt, LaFawn; Jones, Rashi**
E.D. VA CR No. 97 CR 129
Race: All B

Two defendants were charged with the fatal shooting of an bank teller during an attempted robbery of a Nationsbank branch in Richmond, Virginia. Both defendants and the victim are African-American. A security guard was shot and blinded during the robbery, but survived.

**EX 86 - 1421**

Trial began in 1998. The jury opted against the death penalty for both defendants.

**Holley, Marvin Lee**
N.D. AL CR No. 96-B-0208-NE
Race: W

The 1991 killing of an informant in a drug conspiracy prosecution who had been given a new identity and sent out of state. However, the government witness returned and was spotted at a flea market in Ft. Payne. The drug ring boss, Mr. Holley, and co-defendant Charles Holland are alleged to have kidnaped the victim and killed him with a hammer. Holley is also alleged to have attempted to arrange the killing of government witnesses from prison. Holley was sentenced to life in prison and is also serving several consecutive life sentences in state prison for drug trafficking. All involved are White

**Gonzales-Lauzan, Luis**
S.D. FL CR No. 02-CR-20572-ALL
Race: H

A murder-for-hire/informant killing case. Gonzales-Lauzan is charged with having arranged the murder of a government witness in a federal firearms case against his father. 18 U.S.C. " 924(j), 1111, 1512 and 1513. He allegedly provided a gun and a silencer and waited in another car nearby. Wiggins, the triggerman, allegedly shot the victim at his home in order to work off a drug debt to Gonzales-Lauzan. Hernandez is charged with having helped set up the shooting. Wiggins entered into a plea agreement to testify against Gonzales-Lauzan, who will face the death penalty. All involved are Cuban/Americans.

**Kehoe, Chevy**
E.D. AR CR No. LR-CR-97-243
Race: W

Involves multiple killings - the murder of a family of three (an Arkansas gun dealer, his wife and their 8 year old child) in the Fall of 1996 by white supremacists. Chevie Kehoe faced sentencing before the jury first and was sentenced to life imprisonment. Co-defendant Lee followed and was sentenced to death

**O'Driscoll, Michael**
M.D. PA CR No. 4:CR-01-277
Race: W

The stabbing and killing of an inmate at USP - Allenwood in 1997. There were half a dozen correctional officers who witnessed the end of the stabbing. Both the defendant and victim are white.

**Dhinsa, Gurmeet Singh**
E.D. NY CR No. 97-672 (S-3) (ERK)
Race: I

Involves multiple killings - a wealthy Indian businessman alleged to head a racketeering enterprise which killed two. Murder for hire is alleged as an aggravating circumstance.

**Al-Owhali, Mohamed Rashed Daoud**
S.D. NY CR No. S6 98 CR 1023
Race: AR

Alleged accomplices of Usama bin Ladin, purported to be the organizer of two bombings of American embassies in Africa. The August 7, 1998 bombings in Kenya and Tanzania killed 224 people (11 in Tanzania), including 12 Americans, and more than 5,000 people injured. Al-'Owhali is a 21 year old Saudi citizen who was arrested in Nairobi after the Kenya bombing. They are alleged members of al Qaeda, an international terrorist organization, led by bin Laden, a Saudi millionaire, who issued various "fatwahs" against the United States. Bin Laden and 7 others are fugitives. Al-'Owhali allegedly was ordered to create a diversion for the Kenya bomb by throwing grenades. Mohamed allegedly rented the house where the Tanzania bomb was made. The 12 dead Americans included 4 blacks, 4 whites and 1 Asian. The other victims were mostly black Africans.

**Finley, James A**
W.D. NC CR No. 4:98CR243
Race: W

Involves multiple killings - the murder of two campers at a national park by a young man with a history of drug abuse but no violence. The crime may have been a robbery\murder. All parties are white. Mitigation involved Finley's drug abuse and depression. The defendant was sentenced to life after an April 1999 trial

**Gilbert, Kristin**
D. MA CR No. 98-30044-MAP
Race: W

The killing of four patients at the Department of Veterans Affairs, and the attempted killing of three others. Ms. Gilbert, 31, used epinephrine, a drug that can overstimulate the heart, on her patients. Federal prosecutors said Gilbert murdered one patient, a 41-year-old invalid, after asking a supervisor if she could "leave early if he died." All involved are Caucasian. The jury deadlocked and Gilbert was sentenced to life in prison.

**Tello, Plutarco**
W.D. MO CR No. 98- 00311-01/05-CR-W-2
Race: H

Four Columbians charged in a drug related murder. The "kingpin", Hinestroza, was never arrested and may have fled to Columbia. Hinestroza and his gang sold cocaine in the Kansas City area. The victim and his nephew (who sold cocaine for the gang) stole $240,000 from them. The defendants tied up, interrogated, duck taped and shot both victims. The nephew lived, escaped and identified the defendants. Sinisterra shot and killed one victim. Ortiz or Tello shot the surviving victim. Sinisterra and Ortiz were sentenced to death. The jury deadlocked on punishment for Tello, and he was sentenced to life in prison.

**Bass, John**
E.D. MI CR No. 97-80235
Race: B

Involves multiple killings and eleven death eligible defendants who were charged in a four victim (continuing criminal enterprise) Detroit drug/murder case under 21 U.S.C. '848(a)(1)(A). Of the eleven, only Bass was chosen to face a federal capital prosecution. All involved are African-American. A pretrial appeal involved the issue of discovery of Department of Justice charging practices in capital cases. In a per curiam opinion, the United States Supreme Court reversed the order granting discovery. United States v. Bass, 122 S.Ct. 2389 (2002). John Bass and his brother Patrick allegedly started a drug gang called the "Dog Pound" (because members owned many pit bulls), which sold crack in Michigan and Ohio. John Bass is charged with arranging two murders - of his brother and a rival.

**Edelin, Tommy**
D. DC CR No. 98-264
Race: B

A drug conspiracy, racketeering, multiple murder CCE prosecution. Tommy Edelin faced the death penalty alone among many capital eligible defendants, including his father. Edelin, 30, was charged with ordering 14 murders and attempting to have another dozen killed during the 1990's, in his role as the so-called "drug kingpin" of the "1-5 Mob". Murder for hire is alleged as an aggravating circumstance. The gang was charged with the shooting of a D.C. police officer and in another incident in which three people were shot while attending a crowded neighborhood picnic. One victim was shot several times while returning from a prom with his girlfriend. Two teenagers were targeted by mistake on their way to a church Christmas Party. Edelin was acquitted of this double killing by co-defendant Bostick. Much of the violence stemmed from a turf battle with members of the "Stanton Terrace Crew," which is now essentially out of business after numerous members were killed or convicted of first-degree murder. Edelin was convicted of four murders, including paying a hit man to kill a 19 year old who alleged robbed an associated. 11 jurors deliberated 3 hours before voting for a life sentence. The capital charge was a conviction of murder for hire of a 14 year old who allegedly robbed an associate of Tommy Edelin. Edelin was born as a result of a brief sexual encounter to a convicted drug addict. He had an abusive, deprived, depraved childhood in a crime infested neighborhood. This was the first death penalty trial in the District of Columbia since the last execution in 1957. D.C. voters rejected the death penalty in 1992.

**Haynes, Willis**
D. MD CR No. PJM-98- 0502
Race: B

Involves multiple (two) killings - the January 1996 triple intrastate kidnapping/murder of three black females from D.C. Haynes has confessed three time, blaming Higgs the first two. A third defendant, Victor Gloria, also has confessed and will plead guilty as an accessory after the fact. The AUSA says he will seek permission to argue for the death penalty for Haynes and Higgs. They were involved in another shooting six weeks before. All involved are African-American.

**Martinez, Mariano**
C.D. CA CR No. 99-84- AHM
Race: H

Involves defendants in one of three related multiple murder Mexican Mafia prosecutions. "Chuy" Martinez, 41, is a defendant in one indictment, and the target of a murder plot in another. There are a total of four murders charged and 13 conspiracies to commit murder charged. Three men, one a drug dealer and two innocent bystanders, were killed in a Monticello autobody shop. Martinez, head of a drug organization allegedly orchestrated the

killing using a walkie-talkie. Max Torvisco, once Martinez's right hand man, worked a deal with the government. He admitted ordering 140 murders and planning to kill Martinez who had survived a 1997 assassination attempt. Wiretaps show Martinez ordering hits on numerous targets.

**Lyon, Billy Joe**
W.D. KY CR No. 4:99-CR-11-M
Race: W

Involves multiple killings - contract killing of men in Alabama and Kentucky. Lyon, 19, and co-defendant Charles Stewart, 54, were charged with conspiracy and murder for hire. Stewart and Richard Dorman, 62, were partners in an 18-month forged-check and fraud scheme, using the deceased's identity. Lyon and his deceased father, Stewart's nephew, were hired to murder James Norris in Kentucky. Norris was found under a bale of hay beaten to death in a barn behind his home. Lyon was also hired to kill James Nichols in Alabama, whose body was discovered in 1999 in a partially submerged van. Nichols' 85 year old mother was also in the van, but survived. Co-conspriator Dorman was kidnapped (interstate) and locked into the trunk of a car that was then run into the Green River in Henderson County. He survived to be charged as part of the conspiracy. The elder Lyon committed suicide to avoid apprehension. Stewart was arrested in the Spring of 2000 after appearing on "America's Most Wanted." Lyon faced the death penalty but was sentenced to life in prison after his jury was instructed that Stewart would not because the Attorney General took too long to file a notice of intent to seek the death penalty. A third bank fraud victim is missing and presumed dead. Lyon committed an unrelated fourth murder. All involved are white.

**Tatum, Kenneth A.; Smith, Daymon**
E.D. TX CR No. 2:99 CR 5
Race: All B

Involves multiple killings - three young black defendants, members of the "Crips" gang, involved in a series of robberies and three killings in East Texas. Stephens, 21, Smith, 20, and Tatum, 20, faced the death penalty in both state and federal court. Smith was convicted of a botched 1999 bank robbery involving the fatal shooting of a 61 year old white female teller. A female bank manager was wounded. Tatum and Stephens kidnapped (intrastate) and robbed a used car dealership (a Hobbs Act count). The victim, a 63 year old retired minister was shot and killed. Tatum was also convicted of a 1998 slaying of a president of a bank. Stephens and Tatum abducted the 50 year old white male. Stephens died of a brain tumor before trial. Tatum and Smith received life sentences at separate trials after a change of venue. The victims were white.

**Garrett, Lemond**
S.D. GA CR No. 4-99-133
Race: B

Two young death eligible defendants, ages 18 and 20, involved in a drug conspiracy, in which a long time federal informant was killed. Both defendants and the victim are African-American. The United States Attorney requested permission to seek the death penalty against Lamond. Savanah police arrested Lamond Garrett in March of 1999 for the shooting death of Joseph Smart, Sr., 52. DeLoach, the get-a-way driver, was convicted for killing his cousin outside a sports bar in December 1998, and sentenced to life in prison in state court. Joe Perry Garrett was not arrested until shortly before trial. He ordered the killing of the DEA informant who was wearing a bullet-proof vest when he was shot. The bullet pierced his side in an unprotected area. The Court set a deadline for the Attorney General's decision whether to seek the death penalty. The government failed to meet the Court's deadline as to Joe Perry and he did not

**EX 86 - 1425**

face the death penalty.

**Mohamed, Khalfan Khamis**
S.D. NY CR No. S6 98 CR 1023
Race: AR

Alleged foreign national accomplices of Usama bin Ladin, purported to be the organizer of two bombings of American embassies in Africa. The August 7, 1998 bombings in Kenya and Tanzania killed 224 people, including 12 Americans. More than 5,000 people were injured. Al-'Owhali is a 21 year old Saudi citizen who was arrested in Nairobi after the bombing. All are alleged members of al-Qaida, an international terrorist organization, led by bin Laden, who issued various "fatwahs" against the United States. Al-'Owhali was ordered to create a diversion for the Kenya bomb by throwing grenades. Mohamed rented the house where the Tanzanian bomb was made. The 12 dead Americans included 4 blacks, 4 whites and 1 Asian. The other victims were mostly black Africans. The Kenya bomb killed 213 and the second bomb eleven.

**Wills, Christopher Andaryl**
E.D. VA CR No. 99-00396
Race: B

A witness-elimination in Alexandria, Virginia. Wills, 33, an African American, lured the victim from suburban Virginia to Washington, D.C. by means of a phoney job advertisement. The victim disappeared and is presumed to have been murdered. The Afghan national victim had recently testified against Wills at a preliminary hearing on state burglary charges. Wills was permitted to represent himself. He filed a motion to dismiss and the Court ruled that Wills cannot be charged with the capital crime of interstate kidnapping leading to death because his victim crossed state lines voluntarily and alone. The 4th Circuit reversed. 2000 WL 1781402. The jury deadlocked and Wills was sentenced to life in prison. Wills, who has 5 other felony convictions, is also serving 14 years for an unrelated Baltimore carjacking.

**Sanders, Marcus**
S.D. AL CR No. 98-0056-CB
Race: B

The April 1999 murder of a witness in a federal drug prosecution two days before Sanders drug conspiracy trial. Sanders did not appear for trial. Sanders was alleged to the triggerman and was the only defendant authorized for a federal capital prosecution, but he was sentenced to life in prison at a separate trial.

**Denis, Jose**
S.D. FL CR No. 99-00714 CR (KING)
Race: H

One capital eligible 924(c) count - a homicide occurring during a 1996 drug rip-off at Hialech motel. Everyone involved is Hispanic. Denis was the alleged triggerman. He had no prior criminal record. The defendant was attending Florida State University at the time of his arrest. The victim was allegedly tortured prior to his death. The court set, then extended, a deadline. 246 F.Supp.2d 1250.

**Gray, Kevin; Moore, Rodney**
D. DC CR No. 1:00CR00157
Race: B

Involves RICO multiple killings - a Southeast Washington, D.C., gang, alleged to be connected to approximately 40 slayings. The indictment charges 31 murders. Murder for hire was alleged as an aggravating circumstance. The leader, Kevin Gray, 28, is charged with carrying out the racketeering slayings of 10 people. Members of this heroin and marijuana conspiracy allegedly gunned down rivals and people they thought might testify against them, catching victims by surprise at a gas station, a beauty salon and on street corners, sometimes in broad daylight. Three of the victims were killed because they were viewed as potential witnesses. Another victim was shot by mistake. The 158 count indictment alleges 10 attempted murders. Gang members allegedly took outside contracts as hit men. Gray is charged in 22 murders. He and Moore are the only defendants to face the death penalty. The victims were Hispanic and African-American.

**Johnson, Coleman**
W.D. VA CR No. 3:00 CR 00026
Race: W

one §844(ii) count for allegedly leaving a pipe bomb in 1997 which killed his ex-girlfriend, who was eight months pregnant, to avoid the child support that he would have to pay. DNA indicates he was the father of the child the victim was carrying. All involved are white. 136 F.Supp.2d 553

**Ealy, Samuel Stephen**
W.D. VA CR No. 00-CR-104
Race: All W

Another Petite policy case involving the April 1989 shotgun multiple murder of a family of three. Ealy avoided trial in state court in 1991 by a successful motion to suppress. A federal grand jury indicted Ealy and Church, charging them with two capital murders in the furtherance of a drug-trafficking enterprise and a third murder of a potential federal witnesses. They are charged with these killings while trying to rob one victim of $30,000 that he was holding for a drug ring. The victims were white. 2001 WL 686954, 855894, 1661706. 151 F.Supp.2d 715. 163 F.Supp.2d 633, 2002 WL 229700, 273317, 376880, 1205035.

**Waldon, Carl**
M.D. FL CR No. 3:00-CR-436-J25-TJC
Race: B

Involves a CCE-related murder. Sinclair was a narcotics detective and Waldon an uniformed patrol officer. Three drug dealers apparently implicated Sinclair in drug trafficking as part of a 5K1 deal. Waldon and Sinclair are charged with murder. Sinclair worked as a bank guard. He saw an Arab-American storeowner withdraw $50,000 from the bank. Sinclair tipped Waldon who detained the victim on a pretext traffic stop and tried to rob him. The victim was strangled in the police cruiser, near a school in broad daylight. Two others were present, including Kenneth McLoughlin, who participated and testified as a government witness. The Attorney General required a capital prosecution against only Waldon. The penalty phase was bifurcated and the jury deadlocked on whether the mental state threshold (intentional killing) or sole aggravating circumstance (pecuniary gain) was present.

**EX 86 - 1427**

**Haskell, Carl**
W.D. MO CR No. 00-CR-395
Race: All B

Involves the sequel to the Peoples and Lightfoot trial in October of 1999, resulting in life sentences. The government's theory is that Peoples, on behalf of Lightfoot and himself, enlisted the services of hired killers, one of whom allegedly was Haskell, to do away with one Jovan Ross, a white male. Ross was Lightfoot's homosexual live-in lover. The pair lived in a house in KC. After a lover's quarrel, Ross informed on Lightfoot regarding robberies pulled by Lightfoot and Peoples in Nebraska and led police to a cache of blank certified checks stored in the crawl space under the Lightfoot/Ross home. Shortly after, Lightfoot was arrested, and while in jail received information about Ross' involvement. Not long after that, Ross ended up dead. Attorney General Ashcroft approved Haskell, the alleged triggerman, for a capital prosecution, but denied permission to seek the death penalty against co-defendant Barfield.

**Britt, L.J.**
N.D. TX CR No. 00-CR-260-ALL
Race: B

A Fort Worth drug trafficking prosecution of the leaders of an Arlington-based drug ring responsible for multiple (three) murders. The first killing involved a 1998 shooting of an African-American, mistaken for the intended victim, in a car traveling on Cential Expressway. A second 1999 killing was of an Hispanic person, also mistaken for the intended victim, his brother, who allegedly sold a fake kilo of cocaine to Robinson. Britt was the triggerman in the third 1999 killing of another drug dealer, a Mexican national, who had stolen 20 kilos from a Laredo drug kingpin. Robinson was following in another car. Britt and Robinson, African-American, both allegedly fired weapons in the first and second incidents. The Court set, then extended, a deadline for the approval of a capital prosecution. A plea agreement to a life sentence for co-defendant Robinson was rejected by the Attorney General. He was sentenced to death. The victims were Hispanic and African-American.

**Cooper, Billy D.**
S.D. MS CR No. 01-CR-8
Race: All B

Involves carjacking and multiple killings of two black victims who were attempting to buy about $30,000 worth of cocaine and were ripped off and killed. Both African-American defendants confessed, blaming the other as the triggerperson. There was a post-mortem attempt to dismember (head and hands) and rebury the bodies. The Notice of Intent to Seek the Death penalty against Frye was dismissed as filed too late. Cooper's life sentence was affirmed. 2003 WL 21672845 (5th Cir.).

**Ostrander, Robert Norman; Ostrander, Michael Paul**
W.D. MI CR No. 01-M-59-ALL
Race: W

Slaying of a man found buried in a previously dug grave in the Manistee National Forest. The Ostrander brothers are charged with the August 2000 use of a firearm causing death during drug trafficking, involving marijuana and cocaine. The Attorney General required a capital prosecution.

**EX 86 - 1428**

**Davis, Johnny**
E.D. LA CR No. 2:01-CR-282-ALL
Race: B

involves multiple killings (four) - 924(c) 2001 gun murders by a drug gang pushing heroin in a New Orleans Housing project. The alleged kingpin, Richard Porter, was convicted of one murder and did not face the death penalty. The enforcer for the group, Johnny Davis, was convicted of four murders. All involved are African-American. The government sought the death penalty against only Davis.

**Haynes, Aaron**
W.D. TN CR No. 01-CR-20247-ALL
Race: B

Bank robbery resulting in the death of a black female employee of Union Planters Bank. A security guard was also shot in the face by Johnson, but survived. The defendants are African-American. Haynes was a shooter. The state and federal government both sought the death penalty against Haynes and Maxwell but not against Johnson who may be retarded. A federal jury sentenced Haynes to life imprisonment. After this verdict, Attorney General Ashcroft reversed his position and approved a plea agreement specifying a life sentence for Maxwell. 242 F.Supp.2d 540. 269 F.Supp.2d 970, 265 F.Supp.2d 914.

**Regan, Brian Patrick**
E.D. VA CR No. 01-CR-405-ALL
Race: W

A 20 year veteran of the Air Force who worked in the headquarters of the National Reconnaissance Office, charged with three counts of attempted espionage and one count of mishandling classified information. The government charged Regan of creating a "grave risk of death" to U.S. military pilots patrolling the no-fly zone over Iraq. Regan intended to sell Iraqi resident Saddam Hussein secret details about American satellites. Prosecutors said Regan apparently used a form letter to solicit money from at least two foreign countries. Investigators said Regan told Hussein in a letter, "If I am caught, I will be imprisoned for the rest of my life, if not executed for this deed." Two of the charges carried the death penalty.

**Matthews, Lavin; Tucker, Tebiah Shelah**
N.D. NY CR No. 3:00 CR-269-ALL
Race: B

Murder during a CCE, motivated by a drug rip off. Another drug dealer was beaten to death. His marijuana and cash were stolen. The Attorney General required a capital prosecution against three defendants, later withdrawing the notice of intent as to McMillian, who was found to be mentally retarded by both the defense and government experts. All involved are African-American

**Dixon, Emile**
E.D. NY CR No. 01-CR-389-ALL
Race: B

Dixon is one of the leaders of the inter-state "Patio Crew" gang, charged with taking part in a July 26, 2002 murder of a witness and another murder. A government informant, Robert Thompson, 30, was machine-gunned to death in his car, and his brother was wounded. A

superceding indictment was filed charging a 1992 drug-related murder. Attorney General Ashcroft required a capital prosecution overruling, press accounts indicate, his own review committee. Dixon is a foreign national, a Jamaican immigrant. The multiple victims were African-American.

EX 86 - 1430

# Summaries Of Cases
# Authorized for the Death Penalty
# 1988 - 2003

## David Bruck, Dick Burr & Kevin McNally
## Federal Death Penalty Resource Counsel Project

### TOPIC:

## Federal Capital Cases Resulting in a Sentence of Death

**Johnson, Corey; Roane, James; Tipton, Richard**
E.D. VA CR No. 3-92-CR-68
Race: All B

Three of four young black inner-city gang members in Richmond, Virginia, who were sentenced to death in 1993, for their roles in eleven crack-related murders. The trial of a fourth defendant, Vernon Thomas, was severed. Appeals by the three death-sentenced defendants were rejected. United States v. Tipton, 90 F.3d 861 (4th Cir. 1996). A petition for certiorari was denied by the Supreme Court in 1997, and a post-conviction petition pursuant to 28 U.S.C. § 2255 was filed in 1998.

**Hall, Orlando C.**
N.D. TX CR No. 4:94-CR-121-Y
Race: All B

The first approval of a death penalty prosecution under the 1994 Federal Death Penalty Act. Hall, and his co-defendant, Webster, both African-American, were charged in Fort Worth, Texas, with the abduction, sexual assault and beating murder of a 16-year-old black female whose older brother had allegedly stolen marijuana. In 1995, Hall was sentenced to death after the jury heard testimony from co-defendants who pled guilty and testified in return for leniency. Expert testimony suggested the victim was still alive when buried. After a separate trial, Bruce Webster was sentenced to death by a jury in 1996. Webster is the first case in which a federal defendant has been sentenced to death after attempting to establish his ineligibility for the death penalty by reason of mental retardation. Hall's appeal was denied by the Fifth Circuit in 1998, 152 F.3d 381, and certiorari was denied in 1999. Webster's appeal was also rejected in 1999. 162 F.3d 308. Post-conviction petition was denied.

**Webster, Bruce**
N.D. TX CR No. 4:94-CR-121
Race: All B

The first approval of a death penalty prosecution under the 1994 Federal Death Penalty Act. Hall, and his co-defendant, Webster, both African-American, were charged in Fort Worth, Texas, with the abduction, sexual assault and beating murder of a 16-year-old black female whose older brother had allegedly stolen marijuana. In 1995, Hall was sentenced to death after the jury heard testimony from co-defendants who pled guilty and testified in return for leniency. Expert testimony suggested the victim was still alive when buried. After a separate trial, Bruce Webster was sentenced to death by a jury in 1996. Webster is the first case in which a federal defendant has been sentenced to death after attempting to establish his

EX 87 - 1431

ineligibility for the death penalty by reason of mental retardation. Hall's appeal was denied by the Fifth Circuit in 1998, 152 F.3d 381, and certiorari was denied in 1999. Webster's appeal was also rejected in 1999. Cert. denied 528 U.S. 829. Post-conviction petitions are pending.

**Battle, Anthony**
N.D. GA CR No. 1:95 CR 528
Race: B

A black prisoner with a history of psychiatric problems who was sentenced to death for the hammer-murder of an African-American guard in the Atlanta federal penitentiary. Mr. Battle was serving a life sentence for the murder of his wife when the killing occurred. In 1997 a federal jury rejected Mr. Battle's insanity defense and returned a death sentence after three hours' deliberation. Appeal to the United States Court of Appeals for the Eleventh Circuit was rejected in 1999. 173 F.3d 1433. A petition for writ of certiorari was denied. 529 U.S. 1022. A post-conviction petition pursuant to 28 U.S.C. ' 2255 was denied on April 30, 2003. 264 F. Supp. 2d 1088.

**Hammer, David Paul**
M.D. PA CR No. 4-96-CR-239
Race: W

A strangulation murder of a federal prison inmate by his cellmate. The defendant and the victim are white. Mr. Hammer was serving a 1200+ year Oklahoma state sentence at the time of the homicide, but had been incarcerated in the federal penitentiary at Allenwood, Pennsylvania. Mr. Hammer abandoned his direct appeal. 226 F.3d 229 (3d Cir. 2000). An execution date was set for November 15, 2000, but was vacated when Mr. Hammer decided to file a post-conviction action.

**Johnson, Darryl Alamont**
N.D. IL CR No. 96 CR 379
Race: B

Involves multiple killings and a "Gangster Disciple" drug conspiracy/racketeering/multiple murder case. Two homicides were charged, one of a government confidential informant. Co-defendant Quan Ray committed two murders on orders of Mr. Johnson. Four additional homicides were alleged in aggravation. Murder for hire is alleged as an aggravating circumstance. Ray was sentenced to life in prison at a separate trial. Johnson's jury recommended a sentence of death in 1997. An appeal to the Seventh Circuit was rejected in 2000. 223 F.3d 665. Certiorari was denied on October 1, 2001. 534 U.S. 829. Post-conviction relief was denied on March 12, 2003. 2003 WL 1193257.

**Paul, Jeffrey Williams**
W.D. AR CR No. 6:96CR60022
Race: W

Paul is one of two white teenagers charged with the robbery-murder of an elderly white National Parks employee in Hot Springs National Park, a federal preserve within the city of Hot Springs, Arkansas. A Hot Springs federal jury unanimously imposed a life sentence on co-defendant Trinity Ingle on June 6, 1997. Paul's separate trial began on June 17, 1997, and ended with a death sentence on June 25, 1997. An appeal to the United States Court of Appeals for the Eighth Circuit was rejected in 2000. 217 F.3d 989. Certiorari was denied on

October 1, 2001. 534 U.S. 1156. All involved are white.

**Allen, Billie Jerome**
E.D. MO CR No. 4:97 CR 0141 ERW (TCM)
Race: B

Two black defendants charged with the fatal shooting of a white bank guard during a robbery. Attorney General Reno authorized the government to seek the death penalty on August 1, 1997. After separate trials, death sentences were returned on March 10, 1998 for Allen and April 3, 1998 for Holder. Appeals were rejected by the Eighth Circuit. 247 F.3d 741 (2001). The Supreme Court remanded in light of Ring v. Arizona, 536 U.S. 953

**Holder, Norris G.**
E.D. MO CR No. 4:97 CR 0141 ERW (TCM)
Race: B

Two black defendants charged with the fatal shooting of a white bank guard during a robbery. Attorney General Reno authorized the government to seek the death penalty on August 1, 1997. After separate trials, death sentences were returned on March 10, 1998 for Allen and April 3, 1998 for Holder. Appeals were rejected by the Eighth Circuit. 247 F.3d 741 (2001). Certiorari was denied. 124 S.Ct. 19.

**Barnette, Aquila Marcivicci**
W.D. NC CR No. 3:97CR23-P
Race: B

Multiple murder including a domestic killing. Barnette confessed to murdering a motorist during a Charlotte, North Carolina carjacking. He drove the victim's car to Roanoke, Virginia, where he killed his former girlfriend. Barnette has a long history of domestic abuse of the second victim. The defendant and the female victim are black; the carjacking victim was white. A Charlotte, North Carolina jury imposed the death penalty in 1998. Two years later the appeals court ordered a new sentencing trial. 211 F.3d 803 (4th Cir. 2000). Barnette was again sentenced to death in 2002.

**Gabrion, Marvin**
W.D. MI CR No. 1:99-CR-76
Race: W

The disappearance of an alleged rape victim before Gabrion's trial, as well as the multiple disappearance of her 3 year old child and three men. The bound victim was found in a lake, part of federal land. Attorney General Ashcroft required a capital prosecution in this 18 U.S.C. '1111 case. All involved are white.

**Lee, Daniel Louis**
E.D. AR CR No. LR-CR-97-243
Race: W

Involves multiple killings - a RICO prosecution of an organization supposedly intent upon starting a revolution. The capital crime was the murder of a family of three (an Arkansas gun dealer, his wife and their 8 year old child) in the Fall of 1996. The defendants may have believed the gun dealer was an ATF informant. The victims were killed by duct-taping plastic bags over their heads, handcuffing the three and throwing them in a river. The defendants and

**EX 87 - 1433**

the victims are white. Co-defendant Chevie Kehoe was charged in two additional murders as well. The defendants were also charged with bombing the Spokane, WA city hall. Kehoe, older, whom some considered more culpable, was first sentenced to life by the jury at a 1999 separate penalty hearing. At that point the United States Attorney attempted to withdraw the request for the death penalty. The Attorney General was unavailable, so the Deputy Attorney General declined the request. Lee was then sentenced to death. The next year the District Court ordered a new sentencing hearing for Lee. 89 F.Supp.2d 1017 (E.D. AR). That decision was reversed by the Eighth Circuit. 274 F.3d 485 (2001). Petition for cert. denied 537 U.S. 1000 (2002).

**Stitt, Richard**
E.D. VA CR No. 2:98CR47
Race: B

Involves multiple killings - three homicides and other attempted homicides committed by co-defendants on Stitt's urging. Authorization to seek the death penalty was only granted by the Attorney General for Stitt. Four co-defendants did not face the death penalty. One of the shooters plead guilty to a life sentence. Stitt received a sentence of death in 1998 after a joint trial with three of the non-capital codefendants. He has a lenghty record of assaultive conduct. An appeal was rejected by the Fourth Circuit. 250 F.3d 878 (5/25/01). Certiorari was denied. 535 U.S. 1074 (2002).

**Ortiz, Arboleda**
W.D. MO CR No. 98- 00311-01/05-CR-W-2
Race: H

Four foreign national Columbians charged in a drug related murder. The kingpin, Hinestroza, was never arrested and may have fled to Columbia. Hinestroza and his gang sold cocaine in the Kansas City area. The victim and his nephew (who sold cocaine for the gang) stole $240,000 from them. The defendants tied up, interrogated, duck taped and shot both victims. The nephew lived, escaped and identified the defendants. Sinisterra shot and killed one victim. Ortiz or Tello shot the surviving victim. Sinisterra and Ortiz were sentenced to death. The jury deadlocked on punishment for Tello, and he was sentenced to life in prison. The Eighth Circuit affirmed. 315 F.3d 873 (2002). Petition for cert. denied 124 S.Ct. 920 (2003).

**Sinisterra, German**
W.D. MO CR No. 98- 00311-01/05-CR-W-2
Race: H

Four foreign national Columbians charged in a drug related murder. The kingpin, Hinestroza, was never arrested and may have fled to Columbia. Hinestroza and his gang sold cocaine in the Kansas City area. The victim and his nephew (who sold cocaine for the gang) stole $240,000 from them. The defendants tied up, interrogated, duck taped and shot both victims. The nephew lived, escaped and identified the defendants. Sinisterra shot and killed one victim. Ortiz or Tello shot the surviving victim. Sinisterra and Ortiz were sentenced to death. The jury deadlocked on punishment for Tello, and he was sentenced to life in prison. The Eighth Circuit denied relief. 315 F.3d 873 (2002). Petition for rehearing en banc denied 2003 U.S. App. LEXIS 1863.

**Higgs, Dustin**
D. MD CR No. PJM-98- 0502
Race: B

Involves multiple (two) killings - the January 1996 triple intrastate kidnapping/murder of three black females from D.C. on federal land. Haynes, 20, confessed that he fired the shots. He said Higgs, 26, gave him the gun and told him to do it after an argument with the women. The defendants are African-American and were involved in another shooting six weeks before. Haynes= jury deadlocked and he was sentenced to life in prison. Higgs was sentenced to death by an all male jury at a separate, subsequent trial. The government suggested a wintess killing motive at this trial and alleged Higgs plotter to kill a government witness and/or his family. He was already serving a 17 year sentence on a drug conviction. Appeal is pending in the Fourth Circuit. All involved are African-American.

**Vialva, Christopher Andre**
W.D. TX CR No. W99CR070
Race: B

Vialva, 19, Bernard, 18, and two juveniles, all with alleged gang affiliations. These African-Americans were convicted of a 1999 ' IIII carjacking/double homicide and robbery of a young white church couple. The bodies of the victims were found in the trunk of their car just inside the Fort Hood boundary, with gunshot wounds to the face and head. The vehicle had been set on fire. Authorities believe Vialva shot the victims. The Fifth Circuit rejected appeals. 299 F.3d 467 (5th Cir. 2002). Rehearing en banc was denied. 299 F.3d 467. Certiorari was denied. 123 S.Ct. 2572 (2003).

**Bernard, Brandon**
W.D. TX CR No. W99CR070
Race: B

Vialva, 19, Bernard, 18, and two juveniles, all with alleged gang affiliations. These African-Americans were convicted of a 1999 ' 1111 carjacking/double homicide and robbery of a young white church couple. The bodies of the victims were found in the trunk of their car just inside the Fort Hood boundary, with gunshot wounds to the face and head. The vehicle had been set on fire. Authorities believe Vialva shot the victims. The Attorney General required a capital prosecution for Bernard. The Fifth Circuit rejected appeals. 299 F.3d 467 (5th Cir. 2002). Rehearing en banc was denied. 299 F.3d 467. Certiorari was denied. 123 S.Ct. 2572 (2003).

**Nelson, Keith**
D. W.D. MO CR No. 99-CR-303-1
Race: W

The intrastate1999 kidnapping and murder of a ten year old girl, in violation of 18 U.S.C. '1201. Both the defendant and the victim are white. The Eighth Circuit affirmed in 2003. 347 F.3d 701. Petition for rehearing en banc and panel denied. 2003 U.S. App. LEXIS 26278.

**Jackson, Richard**
W.D. NC CR No. 00-CR-74
Race: All W

A capital defendant in state court who pled guilty to second degree murder, intrastate kidnaping and rape of a 22 year old woman jogging Holloween morning in a Nation Forest. Jackson received a 25 - 31 years sentence in state court. He was charged in federal court after the North Carolina Supreme Court reversed his original death sentence and conviction, and suppressed his confession on Edwards grounds. Jackson was 31 years old. The victim was tied with duct tape to a tree on federal land in the Bend Creek Recreation Area off Blue Ridge Parkway, raped and shot one time. All involved are white. An appeal was rejected by the Fourth Circuit. 327 F.3d 273 (2003). Cert. denied 124 S.Ct. 566 (2003).

**Robinson, Julias Omar**
N.D. TX CR No. 00-CR-260
Race: All B

A Fort Worth drug trafficking prosecution of the leaders of an Arlington-based drug ring responsible for multiple (three) murders. The first killing involved a 1998 shooting of an African-American, mistaken for the intended victim, in a car traveling on Cential Expressway. A second 1999 killing was of an Hispanic person, mistaken for the intended victim, his brother, who allegedly sold a fake kilo of cocaine to Robinson. Britt was the triggerman in the third 1999 killing of another drug dealer, a Mexican national, who had stolen 20 kilos from a Laredo drug kingpin. Robinson was following in another car. Britt and Robinson, African-American, both allegedly fired weapons in the first and second incidents. The Court set, then extended, a deadline for the approval of a capital prosecution. Attorney General Ashcroft rejected a plea agreement involving a life sentence. Co-defendant Britt was sentenced to life in prison at a separate trial.

**Sampson, Gary**
D. MA CR No. 01-CR-10384-ALL
Race: W

A series of carjackings, two in Plymouth County, Massachussetts, and one in New Hampshire on July 23 and 24, 2001. The defendant confessed. He also confessed to five North Carolina bank robberies. Sampson was accused of carjacking and stabbing to death a 69 year old man and abducting and killing a 19 year old college student. Sampson called the FBI before the killings but the call was dropped and then covered up. All involved are white. Sampson pled guilty. Memorandum opinion and order 2004 U.S. Dist. LEXIS 1527 (2/4/2004).

**Purkey, Wesley Ira**
W.D. MO CR No. 01-CR-308-ALL
Race: W

The 1998 interstate kidnapping (from Missouri to Kansas), rape and murder of a 17 year old high school girl, whose body was then dismembered and burned. Purkey is serving a prison sentence for another killing. Previously, Purkey was paroled after 17 years for shooting a man. Both victim and defendant are white.

**Fields, Sherman Lamont**
W.D. TX CR No. 01-CR-164-ALL
Race: B

Fields escaped from jail, where he was being held on federal weapons charges with the aid of a deputy sheriff in November 2001 and killed his girlfriend with a gun. He received 12 years

**EX 87 - 1436**

on the gun charge. He allegedly carjacked a vehicle at gunpoint. Fields represented himself during the guilt phase of the trial. All involved are black.

**Mitchell, Lezmond**
D. AZ CR No. 01-CR-1062-ALL
Race: NA

Murder on Navajo tribal land. All involved are Native American. The defendant and a juvenile got a ride from a woman and her 9 year old granddaughter, killed both and stole the car supposedly for use in an armed robbery. Each was stabbed at a separate location. In an attempt to hide the victim's identity, the hands and heads of the victims were removed. Attorney General Ashcroft required a capital prosecution against Mitchell under a carjacking theory -- although the Indian tribe has not "opted in" to the death penalty.

**LeCroy, William Emmet**
N.D. GA CR No. 02-CR-38-ALL
Race: W

A carjacking murder. The victim, a nurse practitioner, came home where she was raped, stabbed to death in her bedroom. LeCroy took car keys from her purse and then stole her Ford Explorer. He was arrested two days later in Minnesota trying to enter Canada with the victim's SUV. All involved are white.

**Brown, Meier Jason**
S.D. GA CR No. 02-M-53-ALL
Race: B

The stabbing murder of a United States Postal Service employee during a robbery at a United States Post Office. Brown confessed and blood was found on his jacket and bike. The victim is white and the defendant is black. She was stabbed 10 times. There was a conditional plea agreement specifying a life sentence. Attorney General Ashcroft rejected a plea agreement and required a capital trial.

**Bourgeois, Alfred**
S.D. TX CR No. 02-216-ALL
Race: B

A two year old child who died from "shaken baby syndrome". The baby was found unresponsive beside her father's tractor-trailer. Bourgeois and his wife told authorities the toddler had fallen out of the cab while they were making a delivery at Naval Air Station Corpus Christi. The toddler had seven major hemorrhages - two behind her right ear, two above her right eye and three in the back of her skull. Bourgeois's wife and his 7-year-old daughter alleged Bourgeois had abused the toddler before. All involved are African-American

**EX 87 - 1437**

# Summaries Of Cases
# Authorized for the Death Penalty
# 1988 - 2003

## David Bruck, Dick Burr & Kevin McNally
## Federal Death Penalty Resource Counsel Project

## TOPIC:

## Federal Capital Cases Resulting in an Execution

**Garza, Juan Raul**
S.D. TX CR No. 93-009
Race: H

An Hispanic marijuana distributor was sentenced to death by a jury in 1993 in Brownsville, Texas, in connection with the murders of three other drug traffickers in the Brownsville area, two Hispanic and one Anglo. Garza ordered two murders and killed a third person himself. The government introduced 5 unadjudicated murders in aggravation, 4 were in Mexico. All but one victim were males. Attorney General Barr authorized the prosecution to seek the death penalty in December, 1992. Mr. Garza's death sentence was affirmed. United States v. Flores, 63 F.3d 1342 (5th Cir. 1995), and a petition for writ of certiorari was denied by the Supreme Court in 1996. Habeas relief was denied in 1998-1999. Garza's first two execution dates in 2000 were postponed by President Clinton pending a Department of Justice study of racial and geographic disparities in the federal death penalty, the second time on December 7, 2000 for 6 months. He was executed on June 19, 2001.

**McVeigh, Timothy**
D. CO CR No. 96-CR-68-M
Race: W

The 1995 Oklahoma City bombing in which 160 lost their lives, including 19 children. The President and Attorney General immediately announced that the death penalty would be sought, even before any suspects were identified. A Denver jury convicted McVeigh and voted to sentence him to death in 1997. Appeal to the United States Court of Appeals for the Tenth Circuit was quickly denied in 1998, 153 F.3d 1166, as was a post-conviction petition. 118 F.Supp.2d 1137 (D. CO 2000). Thereafter, Mr. McVeigh decided to abandon further appeal. His execution was scheduled for May 16, 2001, was delayed by the Attorney General upon the discovery of over 6,000 pages of FBI reports not disclosed to the defense. He was executed on June 11, 2001.

**Jones, Louis**
N.D. TX CR No. 6-95-CR-0015-C
Race: B

A 46 year old African-American -- a retired 22-year decorated Persian Gulf veteran--was convicted of the cross-racial abduction murder of a young white female soldier. The victim's family traveled to Washington to seek DOJ approval of the death request. The trial occurred in Lubbock on change of venue, after thousands of San Angelo residents signed petitions calling for the death penalty. The defendant was sentenced to death in 1995, the Fifth Circuit affirmed in 1998, but the United States Supreme Court granted review to consider issues

EX 88 - 1438

relating to the jury's sentencing instructions in this first case conducted under the 1994 Federal Death Penalty Act. The Supreme Court affirmed the Fifth Circuit's decision in 1999. 119 S.Ct. 2090. A post-conviction action has been filed and denied, as was a successor petition raising a Ring issue. President Bush denied clemency the same evening as announcing the second Gulf War. Jones was executed the next morning, March 18, 2003.

# Summaries Of Cases
# Authorized for the Death Penalty
# 1988 - 2003

## David Bruck, Dick Burr & Kevin McNally
## Federal Death Penalty Resource Counsel Project

### TOPIC:

### Former Federal Death Row Inmates

**Chandler, David Ronald**
N.D. AL CR No. 90-CR-H-266-E
Race: W

A white Alabama marijuana grower was sentenced to death for the murder for hire of a subordinate in his drug ring. The triggerman in the killing was granted immunity in exchange for his testimony, later recanted, that Chandler offered him $500 for the murder. Insisting on his innocence, Chandler refused a pretrial plea offer of life imprisonment. Chandler's convictions and death sentence were affirmed by a panel of the Eleventh Circuit in mid-1993. 996 F.2d 1073 (11th Cir. 1993), cert. denied, 114 S.Ct. 2724 (1994). He filed a motion to vacate his convictions under 28 U.S.C. ' 2255, and an execution date originally set for March 31, 1995, was stayed by the District Court. After several evidentiary hearings, 950 F.Supp. 1545 (N.D.AL1996), the District Court denied relief. 957 F.Supp. 1505 (N.D. AL 1997). A panel reversed, 193 F.3d 1297 (11th Cir. 1999) but the en banc court decided that Chandler received effective assistance of counsel in a 6-5 vote. 218 F.3d 1305. On January 20, 2001, President Clinton granted clemency.

**Davis, Len; Hardy, Paul**
E.D. LA CR No. 94-381
Race: All B

An African- American New Orleans police officer, Len Davis, who was being investigated (and tape recorded) in a drug conspiracy case. Davis ordered the murder of a 32 year old mother of three, Kim Groves, who witnessed his beating of a witness in an unrelated incident. Groves had filed a brutality complaint against Davis. Paul Hardy, 27, carried out the killing. Murder for hire is alleged as an aggravating circumstance. Davis, then Hardy, were sentenced to death by a jury IN 1996, which heard sequential penalty phase presentations. Davis did not attend his. The Fifth Circuit reversed one of the convictions and ordered a new sentencing trial on the remaining convictions in 1999. 185 F.3d 407. On remand the District Court dismissed the Notice of Intent to Seek the Death Penalty based on Ring v. Arizona.

**McCullah, John Javilo**
E.D. OK CR No. 1:92-032-S
Race: W

Two white and one Hispanic defendants were tried jointly in connection with the drug- related intrastate kidnap/murder of a Muskogee, Oklahoma auto dealership employee. The two capitally-charged "managers" of the drug enterprise, co-defendants Hutching and Molina, received life sentences from the jury, while the third defendant, McCullah (who, unlike the bosses, had been present at the killing) was sentenced to death in 1993. United States v.

McCullah, 76 F.3d 1087 (10th Cir. 1996) ordered a new penalty hearing due to introduction of an involuntary statement and double counting of aggravating circumstances. Rehearing en banc was denied by a 6 to 6 vote, 87 F.3d 1136 (6/26/96), and the government declined to seek review in the Supreme Court. The government finally withdrew its request for the death penalty while McCullah's resentencing was pending. The victim was white

**Chanthadara, Bountaem**
D. KS CR No. 94-10129-01
Race: A

A "Hobbs Act" case, in which five defendants of Asian descent (Laotian and Vietnamese) were charged with the armed-robbery of a Chinese restaurant and killing co-proprietor Barbara Sun, in Wichita, Kansas in 1994. Federal jurisdiction was based on the Hobbs Act, 18 U.S.C. ' 1951, prohibiting obstruction of inter-state commerce. The Attorney General's approval of this capital prosecution for Chanthadara and Phouc Nguyen was announced in 1995. It marked the first time that the Hobbs Act was used to federalize as a capital case a prosecution for murder committed during a commercial robbery. Chanthadara beat and shot the victim in an attempt to get her to open a safe the female proprietor could not. Nguyen was present. Chanthadara's jury recommended the death penalty in 1996. After a separate trial, Phouc Nguyen's jury sentenced him to life imprisonment. The Eighth Circuit reversed Chanthadara's death sentence on November 1, 2000. 230 F.3d 1237. He was sentenced to life in prison in 2002.

Copyright (C) 2004 The New York Law Pub. Co.

9/4/00 NLJ A16, (Col. 2)
 9/4/00 Nat'l L.J. A16, (Col. 2)

The National Law Journal
Volume 23, Number 2
Copyright 2000 by The New York Law Publishing Company
The National Law Journal

Monday, September 4, 2000

Podium

## TECHNICAL ERRORS CAN KILL

James Liebman

Jeff Fagan

Valerie West
Mr. Leibman is a professor and Mr. Fagan a visiting professor at Columbia
University School of Law. Ms. West is a Ph.D. candidate in sociology at New
York University.
Special to The National Law Journal

 EARLIER THIS summer, we published a study of the death penalty in this country. Our findings were disturbing and have provoked strong reactions. Two months later, it is time to look at some of those reactions, clarify misunderstandings and underline our central claim that the death penalty system is deeply flawed.

Looking at thousands of death verdicts reviewed by courts in 34 states over 23 years, we found that nearly seven in 10 were thrown out for serious error, requiring 2,370 retrials. For cases whose outcomes are known, an astonishing 82% of retried death row inmates turned out not to deserve the death penalty; 7% were not guilty. The process took nine years on average. Put simply, most death verdicts are too flawed to carry out, and most flawed ones are scrapped for good. One in 20 death row inmates is later found not guilty.

Some criticisms of our study misstate our methods and findings. For example, we did not

count wholesale reversals in 1976, when the Supreme Court voided many states' capital statutes, but only those in states with valid statutes. We did not count reversals of verdicts that a higher court reinstated.

Liberal federal judges are not responsible for reversals: 90% were by elected state judges. Most federal reversals occurred when a majority of judges were Reagan and Bush appointees.

We did not manipulate statistics because we oppose the death penalty. We counted outcomes of all death sentences, asking a simple question: Was the verdict approved, or thrown out by the courts?

One critique focused on a single typographical error misreporting one Florida retrial outcome. But digging deeper for Florida data showed that we undercounted Florida reversals. This indicates that the error rates we report are likely conservative: If no errors are found, prisoners are executed. Their cases are easy to track. It's harder to find reversals that release people from death row.

## Significant errors

 Errors leading to reversal are not "technicalities." Virtually none were police seizures of reliable evidence. Where known, 80% were egregiously incompetent lawyering, police suppression of evidence of innocence, faulty jury instructions and biased judges and jurors-errors that courts and studies have found are likely to put the wrong people on death row.

Some readers ask valid questions. Capital cases can go through three stages of court review. Our data on how often retrial outcomes change cover verdicts thrown out at the second stage. What can be said about the other stages? The first level of court review catches the most glaring errors, so these reversals may lead to more, not fewer, changed outcomes. The third stage is similar to the second, so their retrial outcomes may be similar.

It took time to document all such reversals that occurred between 1973 and 1995. Have things changed in the meantime? There is evidence that our system of finding and curing errors has weakened, but there is no reason to think that cases reviewed in 1999 were less error-prone than those in 1995.

Finally, our critics say that focusing on high rates of seriously flawed capital verdicts (1) avoids the crucial issue of the morality of capital punishment, (2) shows that the system works or (3) is irrelevant absent proof that innocent people are being executed.

Our study aims to put aside moral dilemmas that can't be solved and ask a question managers, consumers and citizens answer every day: What do error rates say about whether a system does what it's supposed to do and avoids serious risk? If 68% of an airline's planes fail inspection and 82% sent for repairs are permanently grounded, the meaning is clear. The system is broken. No one would say, "The airline works. It's good at catching mistakes." And no one would fly the few planes that pass inspection-even though no one has yet turned up dead. The risk is too high.

Our current death penalty system does not "work" when two of three death verdicts are too flawed to serve their purpose, when most can't be salvaged and when the cost of each failed verdict is measured in hundreds of thousands of tax dollars, decades of time and untold anguish for victims needing closure.

Nor can death verdicts getting through the system be trusted. High error rates mean that all verdicts are suspect. They also overwhelm the review system. Forty percent of verdicts passing the first two judicial checkpoints prove flawed at the last one. What would a fourth check find?

Chronically high capital error rates are the warning light in the cockpit. We ignore them at our peril.

9/4/00 NLJ A16, (Col. 2)
END OF DOCUMENT

EX 90 - 1444

Copr. (C) West 2004 No Claim to Orig. U.S. Govt. Works

2/28/04 WASHPOST A22

2/28/04 Wash. Post A22
2004 WL 55842014

The Washington Post
Copyright 2004, The Washington Post Co. All Rights Reserved

Saturday, February 28, 2004

A Section

Review Ordered on McVeigh Ties

Associated Press

The FBI ordered a formal review yesterday of some aspects of the 1995 Oklahoma City bombing investigation, reopening the question of whether Timothy J. McVeigh may have had more accomplices in the worst domestic terrorist attack in U.S. history.  The FBI ordered agents to determine why some documents reached neither the bureau's Oklahoma City task force during the original investigation nor McVeigh's lawyers before he was executed in 2001, officials said.

The review of evidence and documents will also try to determine whether FBI agents in a separate investigation of white supremacist bank robbers may have failed to alert the Oklahoma City investigation of a possible link between the robbers and McVeigh, and allowed some of that evidence to be destroyed.

The Associated Press reported Wednesday that documents never introduced at McVeigh's trial indicated that FBI agents destroyed evidence and failed to share other information that raised the possibility that a gang of white supremacist bank robbers may have assisted McVeigh.

The evidence includes documents showing that the Aryan Republican Army bank robbers possessed explosive blasting caps similar to those McVeigh stole and a driver's license with the name of a central player who was robbed in the Oklahoma City plot.

The documents do not prove that additional accomplices were involved -- blasting caps are plentiful, and the gang was expert in document fraud. But the FBI agent who ran the Oklahoma City investigation, Dan Defenbaugh, said his team never had a chance to investigate the evidence. He called for the probe to be reopened.

The April 19, 1995, bombing killed more than 160 people, and McVeigh was put to death for it in 2001. His co-defendant, Terry Nichols, will stand trial in Oklahoma next week on state charges that could carry the death penalty.

Nichols's attorneys asked on Thursday for the trial to be delayed in light of the AP story, but the judge refused.

FBI officials and Nichols's attorneys declined to comment last night, citing a gag order in the case.

---- INDEX REFERENCES ----

NEWS SUBJECT:      (Crime/Courts (GCRIM); Political/General News (GCAT))

REGION:         (United States (USA); North American Countries (NAMZ))

Language:  EN

OTHER INDEXING:    NAT

EDITION:        FINAL

Word Count: 353

2/28/04 WASHPOST A22

END OF DOCUMENT

EX 91 - 1446