DIANE J. HUMETEWA
United States Attorney
District of Arizona

VINCENT Q. KIRBY
Assistant U.S. Attorney
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004
Arizona State Bar No. 6377
Telephone (602) 514-7500

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Mitchell,<br><br>                    Petitioner,<br><br>      v.<br><br>United States of America,<br><br>                    Respondent. | **CV-09-8089-MHM (JI**)<br><br>**GOVERNMENT'S CONSOLIDATED RESPONSE TO PETITIONER'S (1) MOTION FOR AUTHORIZATION TO INTERVIEW JURORS IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE; (2) MOTION FOR PROTECTIVE ORDER; AND (3) MOTION TO SEAL** |

The United States of America, by and through undersigned counsel, hereby responds to Petitioner's Motion for Authorization to Interview Jurors, Motion for Protective Order and Motion to Seal. The government respectfully requests that the Court deny Petitioner's Motion for Authorization to Interview Jurors for the reasons set forth in the attached Memorandum of Points and Authorities.

Respectfully submitted this 14th day of July, 2009.

DIANE J. HUMETEWA
United States Attorney
District of Arizona

S/ *Vincent Q. Kirby*

VINCENT Q. KIRBY
Assistant U.S. Attorney

### **MEMORANDUM OF POINTS AND AUTHORITIES**

Petitioner, without any legal authority, and directly in opposition of Federal Rule of Evidence 606(b), seeks leave of this Court to contact and interview the trial jurors based upon nothing more than speculation and conjecture. The courts have routinely rejected such requests and so should this Court.

### **I.    ANALYSIS**

#### **A.    Standard for Post Verdict Juror Interviews**

A litigant is entitled to a fair trial but not a perfect one. *United States v. Hard*, 870 F.2d 1454, 1460 (9th Cir. 1989). Even if it is shown that a juror was exposed to extrinsic material, Petitioner must still prove that a "reasonable possibility existed that the extrinsic evidence could have affected the verdict." *United States v. Keating*, 147 F.3d 895, 900 (9th Cir. 1998). It is true that a "writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290-91 (1969). However, it is not without its limitations. For example, there is no constititional right to counsel even for a habeas petitioner under a sentence of death. *Brown v. Vasquez*, 952 F.2d 1164, 1168 (9th Cir. 1992). Courts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation. *Calderon v. U.S.D.C. (Nicolaus),* 98 F.3d 1102, 1106 (9th Cir.1996) Moreover, even though the American Bar Association (ABA) may have guidelines for the courts to consider in death penalty cases, they are after all only a guide and not legal authority. *Wiggins v. Smith*, 539 U.S. 510, 546 (2003)(J. Scalia - dissent)

The controlling authority that bars Petitioner's request to interview the jurors is Fed. R. Evid. 606(b), which states:

> Upon an inquiry into the validity of a verdict or an indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any

statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

The Supreme Court has made it abundantly clear that verdicts are sacrosanct, and jurors are to be protected:

> [L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation- to the destruction of all frankness and freedom of discussion and conference.

*McDonald v. Pless*, 238 U.S. 264, 267-68 (1915).

The Supreme Court has also clarified that generalized post verdict investigations into juror misconduct are strongly disfavored:

> There is little doubt that post verdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts after irresponsible of improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupts the finality of the process . . . Moreover, full and frank discussion in the jury room, juror's willingness to return an unpopular verdict, and the communities trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct.

*Tanner v. United States*, 483 U.S. 107, 120-21 (1987).

The Ninth Circuit, as well as other circuit courts, has historically frowned upon discovery of juror identifying information and generally prohibits post verdict interviews of jurors absent a preliminary showing of juror misconduct. For example, in *Smith v Cupp*, 457 F.2d 1098 (9th Cir 1972), the Ninth Circuit found no constitutional violation where a state court denied the defendant's request to interview jurors for the purpose of discovering possible, but unspecified jury misconduct. *Id*. at 1100. Subsequently, relying on *Cupp*, the Ninth Circuit again affirmed the denial of a request to interview jurors based on failure of the defense to demonstrate any jury misconduct. *United States v. Stacey*, 475 F.2d 1119, 1121 & n. 1. (9th Cir. 1973).

Similarly, in *United States v. Davila*, 704 F.2d 749, 754 (5th Cir. 1983), the Fifth Circuit

3

upheld the denial of a motion to interview jurors post verdict to determine solely whether the acquittal of John Hinckley during the course of the trial had any impact on the jurors. The Court found the defendant failed to make any preliminary showing of misconduct. "The motion sought simply to discover what happened in the jury's deliberations in the hope of uncovering an impropriety." *Id.* at 754. Similar to the Ninth and Fifth Circuits' approach, the Fourth Circuit held that, despite statements of jurors in the press that they had rendered a decision under stress, the trial court properly denied the request to interview the jurors due to the defendant's failure to make a threshold showing of improper outside influences; the defendant's request to interview the jurors was nothing more than a fishing expedition. *United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988); *see also United States v. Eagle*, 539 F.2d 1166, 1170-71 (8th Cir.1976) (the trial court's denial of a motion to interview jurors upheld due to the defendant's failure to make specific allegations that any of the jurors engaged in "overt acts susceptible of proof").

Numerous district courts in the Ninth Circuit and other circuits have also held that a defendant may not interview jurors during the course of a post verdict investigation of juror misconduct absent specific, well-founded allegations of juror misconduct. For example, in *Muhammad v. Wofford*, 2008 WL 1734235, *2 (E.D.Cal.), the trial court denied a habeas petitioner's request to interview jurors to determine whether the jurors impermissibly discussed the case or engaged in any misconduct during an 11-day break in deliberations. *Id.* The court found that th petitioner failed to make any preliminary showing or specific allegation of juror misconduct. *Id.* The court stated further that "[h]abeas is an important safeguard whose goal is to correct real and obvious wrongs. It was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence.'" *Id.* (*citing Calderon v. U.S.D.C. (Nicolaus),* 98 F.3d 1102, 1106 (9th Cir.1996)); *see also Economou v. Little*, 850 F.Supp. 849, 852-53 (N.D.Cal.1994) (denying defendant's request to interview jurors for the purpose of discovering possible grounds for a new trial for lack of preliminary showing of likely juror misconduct); *Harris Corporation v. Independent Technologies*, 2002 WL 31006045, *1 (C.D.Cal.) (trial court refused request to interview jurors to assess impact of a closing statement

4

because the defendant failed to allege any extraneous influences on the jurors); *United States v. Allen,* 2008 WL 80061, *1 (E.D.Mo.) (the courts have "wide discretion" to protect jurors from "fishing expeditions" and absent a proper preliminary threshold showing a request to interview the jurors will be denied).

Petitioner relies primarily upon *McClesky v. Zant*, 499 U.S. 467 (1991), *Williams v. Taylor*, 529 U.S. 420 (2000), and *Woratzeck v. Stewart*, 118 F.3d 648 (9th Cir. 1997), in support of his claim that he is entitled to contact and interview jurors because courts have imposed upon post-conviction applicants an obligation to conduct a reasonable and diligent investigation to identify and raise all claims in the first habeas petition. However, Petitioner's reliance on these cases is misplaced because they do not address the issue in this case – whether Petitioner is entitled to contact and interview jurors. To the contrary, *McClesky*, *Taylor,* and *Woratzeck* address only the circumstances in which a petitioner is entitled to an evidentiary hearing or may bring a successive habeas petition where the petitioner has failed to fully develop or raise a claim in prior proceedings. While these cases involve records in which petitioners' counsel have contacted jurors, they do not provide any guidance concerning whether Petitioner is entitled to such an extraordinary remedy in this case. Plainly, *McClesky*, *Taylor,* and *Woratzeck* do not support Petitioner's request to embark upon a strongly disfavored "fishing expedition" concerning juror misconduct based upon mere speculation.

To allow a defendant to engage in interviews with jurors without so much as a scintilla of evidence is to allow a full scale assault on the jury system. Once a court allows a defendant to contact jurors for the purpose of discovering whether there are issues, the floodgates will open and all defendants convicted by a jury will demand the same access on predominately meritless claims.[1] *United States v. Dioguardi*, 492 F.2d 70, 79 (2d Cir. 1974). Petitioner is not entitled

---

[1] Moreover, the Supreme Court has ruled that a defendant's constitutional right to a fair and impartial and competent jury can be protected through *voir dire*, the court's observation of jurors as well as the jurors' observations of each other and the ability to report misconduct before the verdict and the use of non-juror evidence to impeach a verdict. *Tanner*, at 127. In the instant

(continued...)

5

to conduct post verdict juror interviews.

### B.    Petitioner Fails to Justify His Request to Interview Jurors

In this case, Petitioner raises several grounds in support of his request to interview the jurors, including whether (1) the prosecutor's comments in penalty phase closing arguments inflamed the jurors, and whether the jurors harbored racial or religious prejudice concerning his Navajo beliefs (Motion at 8-10); (2) jurors were exposed to publicity surrounding his trial (Motion at 10-11); and (3) jurors engaged in misconduct by considering extraneous information during deliberations or otherwise engaging in improper *ex parte* contact with non-jurors during the trial (Motion at 11-12).  However, Petitioner fails to allege any misconduct that rises to the requisite level of a preliminary showing of juror misconduct to justify post verdict juror interviews.

### 1.    The Prosecutor's Comments.

Petitioner argues that he is entitled to interview jurors to determine whether the prosecutor's statements made during the penalty phase closing argument improperly inflamed jurors' prejudices against his Navajo beliefs.  (Motion at 8-10.)  Such an attempt is clearly designed to examine the thought processes of the jurors, which is clearly prohibited by Rule 606(b). Moreover, contrary to Petitioner's claim, the prosecutor's statements are not extraneous information, but rather, were made before the jury during the course of the proceedings. *See, e.g., United States v. Bussell*, 414 F.3d 1048, 1055 (9th Cir. 2004).  Jurors may only testify to the existence of extraneous prejudicial information or outside influences, not the impact on thought processes or deliberations. *Hard,* 870 F.2d at 1461.

Moreover, in this case, the Ninth Circuit has already determined that the prosecutor's comments did not improperly inflame the jury.  In its review for plain error, the Court ruled:

Reversal is appropriate 'only if the prosecutor's improper conduct so affected the

---

[1] (...continued)
case, for over six years post verdict not a hint of impropriety has been reported about any misconduct of this jury.

6

jury's ability to consider the totality of the evidence fairly that it tainted the verdict and deprived [Mitchell] of a fair trial.'" *United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir.2005) (quoting *United States v. Smith*, 962 F.2d 923, 935 (9th Cir.1992)). The comments were not, in and of themselves, nearly as inflammatory as the graphic evidence of the murders, or as powerful as the extensive victim impact testimony, which was quite properly before the jury. The jury was clearly instructed on the burden of proof, and that the statements and argument of counsel were not evidence; that it must avoid any influence of passion, prejudice, or any other arbitrary consideration; and that whether or not the circumstances call for a sentence of death is a personal judgment that the law leaves entirely up to each member of the jury.

*United States v. Mitchell*, 502 F.3d 931, 995-96 (9th Cir. 2007).

Petitioner, without any legal authority, seeks to undermine the Ninth Circuit's ruling and establish new precedent that any time an appellate court finds harmless error, a defendant is entitled to make inquiries of the jury in order invalidate the court's conclusion.  Petitioner's argument is untenable.

In any event, the Ninth Circuit did not find, as Petitioner claims, that the prosecutor's comment that Petitioner had rejected the Navajo religion was error.  To the contrary, the Ninth Circuit noted the general prohibition against referencing religion in closing arguments described in *United States v Sandoval*, 241 F.3d 765, 777 (9th Cir.  2001), but proceeded to clarify that the prosecutor did not act improperly:

> However, the circumstances here are a far cry from those in *Sandoval*. Although the AUSA did, at least indirectly, allude to religion, it was in the same sense that the Navajo Nation's letter did when it stated:
>
> <u>As part of Navajo cultural and religious values we do not support the concept of capital punishment. Navajo hold life sacred. Our culture and religion teach us to value life and instruct against the taking of human life for vengeance</u>.
>
> As the letter was in evidence and was relied upon by Mitchell in mitigation, it was not plainly erroneous for the government to challenge the credibility of Mitchell's reliance.

*Id*. at 995 (emphasis added).

Plainly, Petitioner should not be permitted to question jurors concerning the effect of the prosecutor's statements made during the course of trial, which the Ninth Circuit has already determined did not prejudice the jury. *See Reed v. Farley*, 512 U.S. 339, 358 (1994)("[C]laims

7

will ordinarily not be entertained under § 2255 that have already been rejected on direct review.")

2.      Potential Juror Bias

Petitioner also seeks to interview the jurors to determine whether racial and religious prejudice played any part in their decision to impose a sentence of death.  (Motion at 8-10.) Petitioner's request is based upon mere speculation and is belied by the record.

During Petitioner's trial, in accordance with 18 U.S.C. § 3593(f), entitled "Special Precaution to Ensure Against Discrimination," this Court instructed the jurors:

> Finally -- finally, in your consideration of whether the death sentence is appropriate, you must not consider the race, color, religious beliefs, national origin, or sex of either the defendant or the victims.  You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to race, color, religious beliefs, national origin or sex of either the defendant or any victim.
>
> To emphasize the importance of this consideration, Section VII of the Special Verdict Forms contains a certification statement. Each juror should carefully read the statement and sign your name in the appropriate place if the statement accurately reflects the manner in which you reach your individual decision.

(RTT 4103-04.)

Here, each of the jurors signed the form avowing an absence of any prejudice against Petitioner.  Moreover, Petitioner has failed to provide any evidence whatsoever that any juror harbored any racial or religious prejudice.  (RTT 4201, 4206.)  This issue is foreclosed by the jurors' signatures on this form and the absence of any evidence whatsoever that jurors misled the parties about their lack of prejudice.  Consequently, Petitioner is not entitled to embark upon a fishing expedition in search of juror prejudice.

3.      Publicity

While this case generated some media interest primarily at the times of the crimes and arrests in late 2001, by the time jury selection began it was no longer of interest to the press. While Petitioner claims the publicity was widespread, the record belies Petitioner's suggestion that jurors were exposed to media coverage prejudicial to him.  In fact, only one of the jurors who sat in judgment recalled reading something about the case, but could not remember any

details.  The other 11 jurors had not heard anything of the case except what they had learned during the jury selection process.  (RTT 150, 476-77, 497, 1162, 1331, 1339, 1349, 1425, 1490, 2052, 2235, 2246.)  There is not a shred of evidence that the jurors were exposed to any outside information related to the case, including media coverage.

Petitioner is not entitled to interview jurors concerning their exposure to media coverage of the case because his claim is purely speculative and he fails to make a preliminary showing of juror misconduct.

### 4.    Alleged Juror Misconduct

Petitioner contends that he is entitled to interview jurors concerning (1) a juror's question concerning whether the juror may reference a more detailed map during deliberations and (2) another juror's advisement to the Court, by written note, that the juror had heard some non-jurors mention the name of the case. (Motion at 11-12.)

As to the map question, a juror sent a note to the Court asking, "are we allowed to consult detailed maps of this location to familiarize ourself (sic) with the aspects of this case?"  (RTT 2769.)  The Court advised the parties that it intended to remind the jury of the prohibition against accessing information outside of the trial, and defense counsel stated "that's fine, other than possibly referring them to their duty to consider the evidence presented in court."  (RTT 2769-70.)  The court properly instructed the jury:

> I want to remind you all again, ladies and gentlemen of the jury, of the admonition not to do any research, to consult dictionaries, or other reference materials, including <u>maps</u> or to use the Internet to answer any questions you might have concerning this case.
>
> I also want to remind you that in deciding this case, you may consider only the sworn testimony of any witnesses, the exhibits which are admitted into evidence, and any facts to which the lawyers stipulate or agree to.

(RTT 2907-08 ) (emphasis added).

Here, Petitioner has not even remotely alleged juror misconduct, much less offered evidence of misconduct sufficient to justify post verdict interviews of jurors.  A juror simply asked the Court whether it was permissible to consult a map.  In response to the question, the

9

Court timely and unambiguously reminded the jury that it may not consider any evidence outside the record, including maps. Jurors are presumed to follow the court's instruction. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). There is no reason to assume that the jurors failed to follow the Court's instructions or otherwise engaged in any misconduct.

Likewise, during a break in the trial, one of the jurors overheard non-jurors mention the name of the case. At the request of the defense, the Court questioned the juror, who eventually was designated an alternate, outside the presence of the jury. (RTT 2770.) The alternate advised the Court that he had heard several men mention the name of the case, but they said nothing more. The defense did not ask any questions at the time, nor did they seek the alternate's removal. (RTT 2909-10.) Now, Petitioner asserts that he is entitled to conduct a post verdict interview of the jurors to determine whether the alternate, who *sua sponte* brought to the Court's attention that he overheard other non-jurors mention the name of the case, may have concealed the fact that he engaged in some other prohibited, prejudicial *ex parte* contact with non-jurors. Once again, Petitioner fails to point to any articulable facts to support his request to interview jurors and, instead, relies upon mere speculation concerning alleged juror misconduct. Petitioner's claims fail as a matter of fact and law.[2]

**C.    Local Rule 39.2 District of Arizona**

District of Arizona Local Rule 39.2 prohibits contact between counsel and the jury post verdict except:

---

[2]    Moreover, Petitioner is procedurally barred from pursuing these alleged juror misconduct claims because he failed to raise these issues in his direct appeal. Failure to raise a claim on direct appeal ordinarily results in a procedural default of the claim. *See, e.g., United States v. Guess*, 203 F.3d 1143, 1145 (9th Cir. 2000); *United States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) ("Section 2255 is not designed to provide criminal defendants repeated opportunities to overturn their convictions on grounds which could have been raised on direct appeal."). To overcome such default, a defendant must show either cause and actual prejudice to explain the default, or that he was actually innocent of the charged crime. *Guess*, 203 F.3d at 1145. Petitioner fails to establish any reason to excuse his failure to raise these alleged juror misconduct claims concerning the map or *ex parte* contact in his direct appeal. He was fully aware of these matters because they were part of the record. This Court should not allow Petitioner an opportunity to revisit these issues in light of his failure to raise them on direct appeal.

10

on condition that the attorney or party involved desiring such an interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial. Approval for the interview of jurors in accordance with the interrogatories and affidavit so filed will be granted only upon a showing of good cause. See Federal Rules of Evidence, Rule 606(b).

Here, Petitioner failed to comply with the Local Rule within the time prescribed and no affidavit or proposed interrogatories have ever been filed.

The Court advised the jury, just prior to discharge, that they were free to discuss the case with anyone if they desired. Further, the Court told the jurors that the lawyers would be standing in the hallway as the jurors left and they could approach and talk to the jurors if they wished. (RT 5/20/03 7.) Apparently, no one contacted the defense at that time to report any juror misconduct or other inappropriate conduct on behalf of any juror. In fact, given the nature of Petitioner's fishing expedition request, it is apparent that no juror has contacted the defense in the over six years since the trial ended. Under Local Rule 39.2, jurors may not be questioned on the basis of mere suspicion. *TIG Insurance Company v. Liberty Mutual Insurance Company*, 250 F.Supp.2d 1197, 1199 (D. Ariz 2003).

In *TIG*, counsel were permitted to speak with jurors about the effectiveness of their presentations, not for inquiry into the jury's deliberative process. *TIG Ins. Co.*, 250 F.Supp.2d at 1198. Defense counsel later filed an affidavit alleging that a juror had advised that she had brought a "dictionary" into the jury room. *Id.* The defense sought permission to interview at least two other jurors to determine the extent of any possible use of the dictionary. *Id.* The request was denied by Judge Silver on the basis that, despite their claim that they were in the investigative phase, they did not possess sufficient information to meet their burden of proving, by a preponderance, that the outcome would have been different. *Id.* at 1198-99. Local Rule 39.2, as well as Rule 606(b), plainly support the well-settled principle that fishing expeditions in search of juror misconduct simply are not authorized. *See, e.g., Gravely*, 840 F.2d at 1159 (applying Rule 606(b)). Petitioner fails to establish "good cause" within the meaning of Local

11

Rule 39.2 to justify his request to conduct post verdict juror interviews.[3]

## II.    PROTECTIVE ORDER

Petitioner requests that this Court enter a protective order.  The government agrees that Petitioner is entitled to a protective order.  *See Bittaker v.  Woodford*, 331 F.3d 715 (9th Cir. 2003).  However, rather than adopt the lengthy order proposed by Petitioner, the government requests that the Court use the following concise order approved in *Bittaker*:

> All discovery granted to respondent pursuant to respondent's motion to discover trial counsels' files and conduct depositions of trial counsel, petitioner's defense team and petitioner, shall be deemed to be confidential. These documents and material (hereinafter "documents") may be used only by representatives from the United States Attorney's Office and only for purposes of any proceedings incident to litigating the claims presented in the petition for writ of habeas corpus pending before this Court. Disclosure of the contents of the documents and the documents themselves may not be made to any other persons or agencies, including any other law enforcement or prosecutorial personnel or agencies, without an order from this Court. This order shall continue in effect after the conclusion of the habeas corpus proceedings and specifically shall apply in the event of a retrial of all or any portion of petitioner's criminal case, except that either party maintains the right to request modification or vacation of this order upon entry of final judgment in this matter.

## III.    MOTION TO SEAL

Petitioner seeks to seal three documents – Exhibits 92, 93 and 94 – that he desires to file in connection with his habeas petition.  *Bittaker v.  Woodford*, 331 F.3d 175 (9th Cir 2003), allows the court to fashion a protective order that permits the disclosure of attorney client communications or the work product only to the extent necessary to ensure the fairness of the

---

[3]    In an effort to circumvent Local Rule 39.2's "showing of good cause" standard, Petitioner cites *United States v. Griek*, 920 F.2d 840, 842 (11th Cir. 1991), for the proposition that he is entitled to conduct post verdict juror interviews merely if he satisfies the Rule 606(b) exception, namely, that the jury was improperly subjected to outside influence. (Motion at 16.) However, Petitioner's reliance upon *Griek* does advance his claim because, even under the *Griek* standard, Petitioner must actually demonstrate that the jury was subjected to outside influences. *Id.* at 843-44 (affirming the district court's order denying the defendant's request to question jurors concerning the verdict where a juror contacted the defendant's counsel the day after the verdict and said, "[w]e were pressed into making our decision and I want to let you know that I am sorry"). *Griek* simply clarifies that a defendant is not entitled to conduct post verdict juror interviews unless he can demonstrate that the jury was subject to outside influences.  In any event, unlike this case, *Griek* actually involved a juror's *sua sponte* claim that the deliberative process was marred by irregularities.  In this case, there is no such evidence of juror misconduct.

proceedings. *Id.* at 721-22.  While the government is not in possession of Exhibits 92-94, and therefore can not accurately assess the nature of the material, it appears the listed exhibits involve some type of doctors' reports and a social history.  It is not clear from Petitioner's motion to seal why these documents must be sealed.  In fact, there are numerous references in his Petition, which is a public record, to information contained in these reports.  (See Petition at 28, 29, 34 and 58.)  Consequently, Petitioner has failed to demonstrate that any additional harm would result if the rest of the reports were placed in the public purview.  Moreover, most of that material will find its way into the public record as these proceedings progress.

## IV.    CONCLUSION

Petitioner has failed to make any preliminary showing of juror misconduct. Consequently, Rule 606(b) and the many cases interpreting the rule require that this Court deny Petitioner's request to interview jurors.

Respectfully submitted this 14th day of July, 2009.


DIANE J.  HUMETEWA
United States Attorney
District of Arizona

S/ *Vincent Q. Kirby*

VINCENT Q. KIRBY
Assistant U.S. Attorney

13

Certificate of Service

I hereby certify that on July 14, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing  and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sean K. Kennedy
Federal Public Defenders Office

Statia Peakheart
Federal Public Defenders Office


*s/Joyce Stern*

14