SEAN K. KENNEDY (145632)
(Sean_Kennedy@fd.org)
Federal Public Defender
STATIA PEAKHEART (200363)
Deputy Federal Public Defender
(Statia_Peakheart@fd.org)
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone   (213) 894-2854
Facsimile    (213) 894-0081

Attorneys for Defendant-Movant
LEZMOND CHARLES MITCHELL

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| LEZMOND CHARLES MITCHELL, | Case No. CV 09-8089-MHM |
| Movant, | **CAPITAL CASE**<br>28 U.S.C. § 2255 |
| v. | |
| UNITED STATES OF AMERICA, | **MOVANT'S REPLY TO GOVERNMENT'S CONSOLIDATED RESPONSE TO MOVANT'S MOTIONS TO SEAL, FOR A PROTECTIVE ORDER, AND INTERVIEW JURORS** |
| Respondent. | |
| | ORAL ARGUMENT REQUESTED |

Movant, Lezmond Mitchell, through his counsel, the Office of the Federal Public Defender, replies to the Government's responses to his motions.  As shown in the Motion and below, Movant is entitled to the relief he requested:  the Court should authorize counsel to interview the jurors who deliberated in his case, issue Movant's proposed protective order, and direct the Office of the Clerk to file the three exhibits under seal.

I.      **MITCHELL'S MOTION TO INTERVIEW JURORS**

Throughout its Response, the Government cites "fishing expeditions," "good cause," and Mitchell's preliminary showing required to warrant post-verdict juror interviews.  The government, however, never defines what constitutes "good cause."  This is a curious omission given that this Court must decide whether

1

Mitchell has shown "good cause" under Local Rule 39.2 to warrant interviewing the jurors in his case.

Mitchell's burden is to show that the anticipated juror statements would be admissible under Federal Rule of Evidence 606(b). *See United State. v. Griek*, 920 F.2d 840 (11th Cir. 1991) ("good cause under the local rule [of the District of Florida, which is equivalent to this Court's Local Rule 39.2] may be shown only by satisfying the requirements of the exception stated in the Federal Rule [606(b)]"). The government's position on this view is unclear and contradictory: It cites 606(b) as the "controlling authority that bars MOVANT's request to interview the jurors" (Response at 2) but also states that 606(b) alone does not control the present situation (Response at 12n.3). The government further states that Mitchell's request to interview jurors is "directly in opposition of Federal Rule of Evidence 606(b)." This is incorrect. To be clear, Rule 606(b) is a rule of *admissibility*, it does not speak to the issue of interviewing jurors post-verdict. *See* Fed. Rule of Evid. 606(b). Local Rule 39.2 simply requires a showing of "good cause" before allowing juror interviews. Neither the Ninth Circuit nor the District of Arizona has clearly defined what constitutes "good cause" in this scenario. (Motion at 12-14). Mitchell advances the approach taken by the Eleventh Circuit and urges this Court to link Local Rule 39.2's "good cause" requirement to Rule 606(b), and require that Mitchell show that the evidence or information he obtains from the jurors would be admissible under 606(b).

Additionally, Mitchell advances that "good cause" can be shown by the burden placed on habeas counsel to conduct a thorough and complete investigation for constitutional error, and that interviewing the jurors furthers that constitutional requirement. (Motion at 5n1.) And finally, because 606(b) cannot be used to deny Mitchell due process, and because the Ninth Circuit has required

Mitchell to meet a burden that requires his representatives to interview the jurors[1] then he must be allowed to do so.

In its response, rather than defining the standard for post verdict juror interviews, namely "good cause," the government cites several easily-distinguishable cases where the courts have rejected post-verdict requests to interview jurors. In *Smith v. Cupp*, 457 F.2d 1098 (9th Cir. 1972), the movant was denied the opportunity to interview jurors because he advanced no specific jury misconduct, but rather sought *carte blanche* in interviewing jurors. *Id.* at 1100. In *United States v. Stacey*, 475 F.2d 1119 (9th Cir. 1973), the conduct the movant sought to investigate via juror interviews did not involve extraneous prejudicial information, outside influence, or mistake in filling out the jury form and therefore was plainly inadmissible under 606(b). *Id.* at 1120-21. The government then lists a series of cases that echo the point that the movant must specifically allege juror misconduct or some extraneous influence on the jury. (Response at 4-5.) Mitchell has met this burden by clearly articulating specific areas of likely misconduct, all of which are admissible under 606(b).

**1.    The Prosecution's Inappropriate Racial and Religious Comments**

In response to Mitchell's request to interview jurors concerning racial bias in light of the prosecutor's racially charged closing argument, the government states that such information is banned by 606(b). (Response at 6). As Mitchell clearly laid out in his original motion on this issue, this is not the case. The Ninth Circuit held in *United States v. Henley*, 238 F.3d 1111 (9th Cir. 2001) that "racial bias is a mental bias that is unrelated to the specific issues that the juror was called upon to decide" and thus that "racial bias is generally not subject to Rule 606(b)'s prohibitions against juror testimony." *Id.* at 1120. The fact of the matter is that if the prosecutor's closing argument incited racial bias amongst the jurors, which it

---

[1]    *See United States v. Mitchell*, 502 F.3d. at 995-96 (citing *Henley,* 238 F.3d at 1120).

very likely did, then a juror may testify to such, pursuant to *Henley*. The government argues that its argument was not extraneous information, which is true, but the mental bias that the argument incited is indeed extraneous information. *Id*.

The government is correct that the Ninth Circuit has already commented on the prosecutor's comments. (Response at 6, Motion at 8.)  While the Ninth Circuit appeared to consider the comments improper, they did not arise to the level of plain error to warrant relief. *Mitchell,* 502 F.3d 931, 995-996 (9th Cir. 2007). The Ninth Circuit thus put an affirmative duty on Mitchell to "show that the misconduct tainted the verdict." *Id*. at 996.  The government suggests that Mitchell now seeks to undermine that ruling (Response at 7), but this is simply not the case.  Rather than challenge the Ninth Circuit's decision, Mitchell is abiding by it and seeks to meet the burden the Ninth Circuit has set.  The only direct evidence available to Mitchell to meet this burden is post-verdict juror interviews. Given that the Ninth Circuit has explicitly ruled that 606(b) cannot be used to deny due process, *Henley,* 238 F.3d at 1120, the Ninth Circuit has implicitly required juror interviews in this case, and it is the government who seeks to undermine the Ninth Circuit's ruling by opposing Mitchell's request to meet his Ninth Circuit mandated burden. *Mitchell*. 502 F.3d at 996.

**2.    Publicity and Alleged Juror Misconduct**

With respect to the publicity surrounding this case, the government correctly responds that prospective jurors were asked during voir dire whether they had read anything about the case. (Response at 8-9.)  Most jurors responded that they had not.  Mitchell seeks to discover whether, after being directly involved in the case, jurors sought out or were exposed to any information on this case.  This was a highly publicized case for a period of time, and highly inflammatory articles were readily available to the jurors (a computer search for "Lezmond Mitchell" yields over 300 results).  There is a strong likelihood that

4

jurors accessed this information, and Mr. Mitchell seeks to inquire as to the effect these articles had on any juror who later deliberated his case.

Generally speaking, the government is correct that jurors are presumed to follow the courts instructions. *Richards v. Marsh*, 481 U.S. 200, 211 (1987).  This is, however, only a presumption.  Mitchell points to a note from the jurors querying a simple instruction on outside information.  Motion at 12.  This note indicates that the jurors either did not understand the most basic of instructions or that they were not following the instructions.  In light of such evidence, the *Richards* presumption is rebutted and the possibility of misconduct reaches the level successful to satisfy Mitchell's required burden.  This point is further emphasized by Prospective Juror Murphy's comments to the court illustrating his willingness to speak about the case to outside sources.  (RT 2909.)  Perhaps the most basic of admonitions is for jurors to avoid discussing the case with outside sources.  In the present case, Murphy indicated a willingness to do just that.  Clearly there is a strong likelihood of misconduct.  Furthermore Mitchell is concerned, if not baffled, by the government's strong opposition to his motion to request post-verdict interviews with these jurors.  First of all, Mitchell's representatives do not seek confidential information, but rather simply the court's permission to use publicly available information to contact these citizens.  Secondly, these interviews would be entirely voluntary. As indicated in the Giner declaration (attached to the Motion), counsel's investigators do not compel jurors to submit to an interview; if a juror refuses, s/he is thanked and no longer contacted.  Third, the Court could ensure the citizens are not harassed by approving juror questions in advance in accordance with Local Rule 39.2, thus jurors could refuse to answer the court's approved questions or even take part in this process.  All Mitchell seeks is to ensure that in the face of likely juror misconduct, he was afforded the fair trial to which he is entitled.

Lezmond Mitchell is awaiting the most dire and severe punishment this country can inflict. It would behoove all involved to ensure that he was afforded all of his rights before this country moves forward with a penalty that it can not change once inflicted. The government should welcome the opportunity to test the reliability of Mitchell's conviction. Prosecutors have a "unique responsibility" in the criminal justice system. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803, 107 S. Ct. 2124, 2137 (1987). That unique responsibility is the prosecutor's "duty to seek justice, not merely convict." *Id*. at 803 (quoting Ethical Consideration 7-13 of Canon 7 of the ABA Model Code of Professional Responsibility (1982)). If the United States Attorney's Office for the District of Arizona is going to adhere to this duty, then they should relish the opportunity to ensure justice before hurrying Mitchell towards the execution chamber.

## II.    MITCHELL'S PROTECTIVE ORDER

The government apparently concedes that Mitchell is entitled to a protective order. It appears that for brevity alone the government advocates an edited version of the protective order be granted. Mitchell would request, however, that his originally proposed order be granted and not edited in the manner in which the government suggests. Mitchell's version does not afford him additional rights or privileges, but rather simply explains certain points in more detail. For example, the government's version cites "Movant's defense team" without explaining who that team includes. Mitchell's proposed language, while considerably longer, is much clearer in specifically naming who is included in this order. (See Proposed Order at 1 referring to "Movant and the members of the legal team, i.e., lawyers, paralegals, investigators, and support staff assigned to *Mitchell v. United States*, and persons retained by Movant's counsel to assist in 2255 proceedings involving the Movant, including but not limited to outside investigators, consultants and expert witnesses".) Mitchell's proposed protective order also extends to clemency proceedings, while the government's proposed language does not. While these

issues may seem trivial, *Bittaker* recognized the valid protection of a habeas Movant's attorney-client relationship, and Mitchell only seeks to protect this right with unambiguous language.

## III.    MITCHELL'S MOTION TO SEAL

A motion to seal is the appropriate medium to protect Mitchell's confidentiality. *See Bittaker*, 331 F.3d at 728. The government contends that Mitchell has failed to show the harm that would result if the portions of the report that Mitchell has kept confidential were to be made public. Obviously, Mitchell will not clearly spell out the contents of this report as that would run contrary to his interests and the purpose behind his Motion to Seal. The fact of the matter is that there is no question that the documents in question were prepared for the purpose of litigation, and thus qualify as work product. Fed. Rules of Evid. 502. Work product is protected under *Bittaker*, 331 F.3d at 722. Mitchell urges this Court to simply review the documents *in camera* and, in accordance with *Bittaker*, seal these exhibits.

## IV.    CONCLUSION

For all the foregoing reasons, there is good cause to authorize counsel for Mitchell to conduct a thorough investigation, which includes interviewing trial jurors, and therefore the motion should be granted. Furthermore for the foregoing reasons, and in accordance with *Bittaker*, Mitchell's motion to seal exhibits and request for protective order in its original form should be granted.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

Dated: July 21, 2009

By: */s/  Statia Peakheart*
STATIA PEAKHEART
Deputy Federal Public Defender

Counsel for Movant
LEZMOND CHARLES MITCHELL

## CERTIFICATE OF SERVICE

X   I hereby certify that on __July 21, 2009__, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

VINCENT Q. KIRBY, AUSA

X   I hereby certify that on __July 21, 2009__, I served the attached document by

MAIL

(insert service method: mail, courier service, in-person delivery, e-mail)
on the following, who are not registered participants of the CM/ECF System:

CAPITAL CASE STAFF ATTORNEY, EVO A. DECONCINI COURTHOUSE

405 W. CONGRESS, SUITE 1500, TUCSON, AZ 85701-5010

s/ JENNIFER BYRD