1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Mitchell, | No. CV-09-8089-PCT-MHM |
| Petitioner, | <u>DEATH PENALTY CASE</u> |
| vs. | |
| | **ORDER** |
| United States of America, | |
| Respondent. | |

Petitioner seeks authorization to interview jurors, moves for a protective order for privileged materials, and requests that a number of exhibits lodged in support of his § 2255 petition be filed under seal. (Dkts. 1, 13, 16.) He has also filed an *ex parte* motion to modify the scheduling order entered by the Court to provide for the filing of an amended petition. (Dkt. 20). The Court addresses these motions in turn.

<u>Motion to Interview Jurors</u>

Petitioner requests authorization to interview the jurors in his case to ascertain whether any member of the panel engaged in improper *ex parte* contacts, considered extrajudicial evidence, allowed bias or prejudice to cloud their judgment, or intentionally concealed or failed to disclose material information concerning his or her qualifications to serve as a juror. (Dkt. 1 at 2.)

"District courts have 'wide discretion' to restrict contact with jurors to protect jurors from 'fishing expeditions' by losing attorneys." *United States v. Wright*, 506 F.3d 1293,

1303 (10th Cir. 2007) (quoting *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986)). Rule 39.2 of the District of Arizona's Local Rules Civil, made applicable to criminal cases by Local Rule Criminal 24.2, provides as follows:

> Interviews with jurors after trial by or on behalf of parties involved in the trial are prohibited except on condition that the attorney or party involved desiring such an interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial. Approval for the interview of jurors in accordance with the interrogatories and affidavit so filed will be granted only upon the showing of good cause. See Federal Rules of Evidence, Rule 606(b).

LRCiv 39.2(b). The rationale for this rule comes from Federal Rule of Evidence 606(b), which states that

> a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment concerning the juror's mental processes in connection therewith.

Strong policy considerations underlie this limitation on juror testimony. *See McDonald v. Pless*, 238 U.S. 264, 267-68 (1915) (noting that public investigation of juror deliberations would lead to "the destruction of all frankness and freedom of discussion and conference"); *Tanner v. United States*, 483 U.S. 107, 120-21 (1987) ("Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process."). Consequently, juror testimony is permissible only in limited circumstances to show that (1) extraneous prejudicial information was improperly brought to the jury's attention, (2) an outside influence was improperly brought to bear upon any juror, or (3) there was a mistake in the verdict form. Fed. R. Evid. 606(b).

In their opposition to Petitioner's motion, Respondents correctly note that Petitioner has not attempted to comply with this Court's local rule pertaining to juror interviews. (Dkt. 18 at 11.) He did not proffer proposed interrogatories or an affidavit and did not submit the instant request within the prescribed time limit. These failures are grounds for denial. Even if the Court overlooks the motion's procedural deficiencies, Petitioner has failed to establish

good cause.

*Duty Under ABA Guidelines*

Petitioner argues that good cause is established simply because counsel has an obligation under the American Bar Association's Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases to conduct a reasonable and diligent investigation, which includes interviewing jurors to uncover claims of possible jury misconduct. (Dkt. 1 at 4-7.) Petitioner cites no authority to support his contention that an exception to the strong policy against post-verdict juror investigation exists solely for capital cases, and the Court declines to so find. Petitioner must, at a minimum, make a preliminary showing of juror misconduct to establish good cause to conduct juror interviews. *See United States v. Stacey*, 475 F.2d 1119, 1121 & n.1 (9th Cir. 1973); *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972).

*Alleged Prosecutorial Misconduct*

Petitioner asserts as good cause a statement by the prosecution during closing arguments that suggested Petitioner had "turned his back on his religious and cultural heritage." *United States v. Mitchell*, 502 F.3d 931, 994-95 (9th Cir. 2007). Petitioner asserts that the Ninth Circuit found this comment to be inappropriate but nonetheless denied relief because Petitioner had failed to meet his burden of showing that the prosecutor's comments tainted the verdict. (Dkt. 1 at 9-10.) Petitioner therefore seeks the "opportunity" to meet this burden by interviewing the jurors "to see whether Mitchell's Navajo beliefs, or the allegation that the crime violated his Navajo beliefs, played any part in his death sentence." (*Id.* at 10.) The Court rejects this argument on several grounds.

First, the inquiry Petitioner proposes clearly concerns the subjective effect of the prosecutor's statements on the jury's sentencing deliberation and is thus plainly prohibited by Rule 606(b). Petitioner's reliance on *United States v. Henley*, 238 F.3d 1111, 1120 (9th Cir. 2001), to argue otherwise is misplaced. In *Henley*, the court determined that Rule 606(b) did not prohibit examination of a juror's racial bias because such bias "is unrelated to any specific issue that a juror in a criminal case may legitimately be called upon to determine."

*Id.* However, in that case, a juror made racist statements "*before* deliberations began and *outside* the jury room." *Id.* (emphasis in original). Here, the statements at issue were made by the prosecutor during closing arguments. Such statements are clearly not "outside" or "extraneous" influences that can be used to impeach the jury's verdict under Rule 606(b). *See United States v. Bussell*, 414 F.3d 1048, 1055 (9th Cir. 2005) (finding court's jury instruction raising speculation among jurors not extraneous because "[i]t did not enter the room through an external, prohibited route, but rather was part of the trial") (internal quotation omitted); *United States v. Rodriquez*, 116 F.3d 1225, 1227 (8th Cir. 1997) (finding fact defendant did not testify as part of trial, "not a fact jurors learned through outside contact, communication, or publicity").

Moreover, contrary to Petitioner's assertion, the Ninth Circuit did not find the prosecutor's comments during closing argument concerning Petitioner's religious and cultural heritage to be improper. The court noted that while the prosecutor "at least indirectly" alluded to religion, it was in the same sense as a letter from the Navajo Nation proffered by the defense as mitigation that described Navajo values and the Nation's lack of support for capital punishment. *Mitchell*, 502 F.3d at 995. Because Petitioner had relied on this letter in mitigation, "it was not plainly erroneous for the government to challenge the credibility of Mitchell's reliance." *Id.*

*Publicity*

Petitioner asserts as good cause the bare fact that his case was publicized in the newspaper. He postulates that because some articles were "highly prejudicial," jurors must be questioned to determine whether any of the articles "were improperly brought to the jury's attention." (Dkt. 1 at 11.) Petitioner has not demonstrated any factual basis to support his claim that jurors may have been exposed to prejudicial newspaper articles in the jury room. Rather, he states summarily that there is a "strong likelihood" jurors sought out or were exposed to publicity despite acknowledging that during voir dire most of the jurors stated they had read nothing about the case. (Dkt. 19 at 4.) In addition, Petitioner states there were "many articles" but fails to provide citation to the articles to assist the Court in determining

1  where and when these articles were published. Nor has Petitioner provided any copies of the
2  articles to support this request. It appears to the Court that this is nothing more than a fishing
3  expedition and not an appropriate ground for post-verdict juror interviews.

*Alleged Juror Misconduct*

Petitioner contends that he has good cause based on "at least two acts of potential juror misconduct that occurred during the guilt phase portion of the case." (Dkt. 1 at 11.) The first involved an unsigned juror note during trial asking, "Are we allowed to consult detailed maps of this location to familiarize ourself [sic] with the aspects of this case?" (RT 4/30/03 at 2769.) With counsel's acquiescence, at the conclusion of evidence that day, the Court reiterated to the jury the "admonition not to do any research, to consult dictionaries, or other reference materials, including maps or to use the Internet to answer any questions you might have concerning this case." (*Id.* at 2907.) The Court further reminded the jury that the case had to be decided solely on the evidence admitted during trial. (*Id.* at 2908.) Based only on the juror's note, Petitioner speculates that one or more jurors may have improperly consulted outside sources. (Dkt. 1 at 11.)

The second alleged instance of misconduct involved a note from an alternate juror who relayed during trial that he had been in an elevator with three men who mentioned Petitioner's case. (RT 4/30/03 at 2770.) In response to questioning by the Court, the juror stated that none of the individuals were in the courtroom and that the only thing he heard was the name of the case. (*Id.* at 2909.) He then remarked, "Yeah, that's all that was said. I was kind of glad because I didn't want to say anything about it either." (*Id.*) From this remark, Petitioner hypothesizes that the juror was "inclined" to discuss the case had the men spoken further; therefore, he must be interviewed "to ensure that no such indiscretions took place." (Dkt. 1 at 12.)

Petitioner's arguments are based on wholesale speculation and fail to establish good cause. With regard to the alternate juror, the Court twice affirmed that the only thing he heard was the name of the case. The juror responded, "Yes, ma'am. I just wanted to report it because I thought I was supposed to." (*Id.*) The Court finds neither alleged instance of

"misconduct" sufficient to overcome the strong policy against post-verdict juror interviews.

*Conclusion*

Petitioner has failed to comply with the requirements of Local Rule Civil 39.2. Moreover, he has not established good cause to substantiate his request to interview jurors. Therefore, this motion is denied.

<u>Motion for Protective Order and to Seal Exhibits</u>

Petitioner has appended numerous exhibits to his § 2255 motion. Three are items from trial counsel's file offered in support of claims alleging ineffective assistance of counsel: Exhibit 92 is an internal memo to defense counsel from their mitigation specialist; Exhibit 93 is a comprehensive social history of Petitioner prepared by the mitigation specialist; and Exhibit 94 is a psychiatric report of Petitioner prepared prior to trial. Because these items constitute privileged attorney-work product, Petitioner requests that the Court enter a protective order limiting their use to the instant habeas proceeding, pursuant to *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003). (Dkt. 13.) Petitioner further requests that these documents, and any future privileged materials revealed through discovery, be maintained under seal "to ensure compliance" with the Court's protective order. (Dkt. 16 at 1.) Respondent concedes that issuance of a protective order is appropriate, but requests that the protective order be styled after that approved in *Bittaker* in lieu of Petitioner's proposed language. (Dkt. 18 at 12.) Respondent opposes the motion to seal, stating that it is not in possession of the relevant exhibits and that Petitioner has failed to demonstrate harm from public dissemination of the information contained therein. (*Id.* at 12-13.)

In *Bittaker*, the court held that the scope of a prisoner's waiver of the attorney-client privilege arising from a claim of ineffective assistance of counsel is limited to the extent necessary to litigate the claim in postconviction proceedings. 331 F.3d at 721-27. Here, Petitioner has raised numerous ineffectiveness claims and has proffered privileged attorney-client work product in support. (Dkt. 9.) Thus, he is entitled to an order of protection to ensure that his limited waiver is not extended to any future proceedings that may become necessary should he prevail on his § 2255 petition. *Bittaker*, 331 F.3d at 722-26. However,

Petitioner's proffered protective order goes further than the Court finds is necessary to carry out the mandate of *Bittaker*. Specifically, Petitioner seeks a blanket order mandating that all privileged attorney-client work product and communications proffered to the court or disclosed to opposing counsel during these proceedings be automatically maintained under seal. He argues that sealing privileged materials is "the only way to ensure compliance" with the limitations imposed by the Court through its protective order. (Dkt. 16 at 1.) The Court disagrees.

It is well settled that the public has a common law right of access to judicial documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999). However, this right is not absolute. A party seeking closure can overcome the presumption of access by showing "sufficiently compelling reasons for doing so." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). This standard has been described as a "balancing test," *San Jose Mercury News, Inc.*, 187 F.3d at 1102, in which the court must weigh such factors as the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (citing *E.E.O.C. v. Erection Co.*, 900 F.2d 168, 170 (9th Cir. 1990)).

Although the Court agrees that a protective order limiting future use of attorney-client materials is necessary, it declines to allow blanket sealing of such materials without consideration of the public's right of access. In this case, Petitioner has proffered privileged materials as exhibits to his motion for relief from judgment. When discovery materials are attached to a motion seeking action by the court, they become subject to the presumption of access. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988) (holding that even documents specifically covered by a protective order during discovery must be unsealed, absent an overriding interest, when attached to a dispositive motion). Thus, the Court must balance competing interests to determine if the public right of access has been overcome before it will allow Petitioner's exhibits to be filed under seal. Because Petitioner

did not specifically address the public's right of access in his motion to seal, the Court will deny the motion without prejudice to refiling. In his renewed motion, Petitioner shall expressly address the prejudice he could suffer should the exhibits, in whole or in part, be filed in the public record. Furthermore, in light of the protective order issued this same date, Petitioner shall also provide unredacted copies of the exhibits to Respondent so that Respondent may file an informed response to Petitioner's renewed motion to seal.

Motion to File Amended Petition

Petitioner has filed an *ex parte* motion to vacate the impending due date for Respondent's answer to Petitioner's § 2255 motion and for leave to file an amended petition no later than November 18, 2009, or 90 days after this Court rules on his motion for authorization to interview jurors. (Dkt. 20 at 1.) The impetus behind Petitioner's motion is the one-year statute of limitations for seeking relief from judgment imposed on federal criminal defendants by 28 U.S.C. § 2255(f). In essence, he is asserting that one year was an insufficient period of time to complete his investigation and prepare his application. He also suggests that the filing of an amended petition is necessary because the Court has yet to rule on his motion to interview jurors. Therefore, he seeks to postpone the filing of the Government's response, presently due on September 28, 2009, and requests leave to file an amended petition. The Court is unpersuaded.

Counsel was appointed to represent Petitioner on April 25, 2008, more than thirteen months prior to expiration of Petitioner's limitations period. However, counsel did not move for permission to interview jurors until May 22, 2009, less than three weeks before the statute of limitations expired. On June 8, 2009, Petitioner filed a substantial 215-page petition to vacate judgment. (Dkt. 9.) On June 29, the Court directed Respondent to file an answer to the petition and to respond to the instant motions for juror interviews and a protective order (Dkt. 17). The Court finds no good cause for the delay in seeking permission to file an amended petition. Even were the request timely, the Court is disinclined to rule in an advisory fashion on a request to amend.

Pursuant to Local Rule Civil 15.1(a), "A party who moves for leave to amend a

pleading must attach a copy of the proposed amended pleading as an exhibit to the motion, which shall indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added." Petitioner has not proffered a proposed amendment and granting permission prospectively to file an amended petition past expiration of § 2255's limitations period is tantamount to an advisory ruling that such amendment is proper. The Court cannot make a determination as to whether amendment is appropriate unless and until Petitioner actually proffers an amended pleading. Consequently, Petitioner's motion to amend the Court's scheduling order and for time to file an amended petition is denied.

On a separate note, the Court observes that Petitioner titled the instant motion an "ex parte" request. It is unclear to the Court why Petitioner would proffer such a motion on an *ex parte* basis. In a declaration attached to the motion, Petitioner's counsel states that she emailed a copy of the motion to Respondent's counsel, who replied by email that he would oppose such a motion. (*Id.* at 6.) To the extent Petitioner seeks permission to proceed on this motion *ex parte*, that request is denied. The Court does not favor *ex parte* applications except when specifically authorized by law. *See, e.g.*, 18 U.S.C. § 3599(f) (providing for *ex parte* consideration of investigative and expert funding requests if need for confidentiality is demonstrated). Therefore, the Court will direct the Clerk of Court to docket Petitioner's motion as an ordinary filing. Because the Court has deemed it most expeditious to rule on Petitioner's motion forthwith, Respondent is relieved from Local Rule Civil 7.2(c) from filing a responsive memorandum.

Based on the foregoing,

**IT IS HEREBY ORDERED** that Petitioner's Motion for Authorization to Interview Jurors in Support of Motion to Vacate, Set Aside, or Correct the Sentence (Dkt. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Protective Order (Dkt. 13) is **GRANTED**. Pursuant to *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003), all information that is privileged under the attorney-work product doctrine and is attorney-client

communication produced or presented in this action may be used only by the parties, members of their legal teams (i.e., lawyers, paralegals, investigators, support staff), and all persons retained by the parties (i.e., outside investigators, consultants, expert witnesses) only for the purpose of litigating Petitioner's claims under 28 U.S.C. § 2255. Neither party shall disclose these materials or the content of these materials to any other persons or agencies without prior Court order. This order shall continue in effect after the conclusion of the proceedings in *Mitchell v. United States*, and specifically shall apply in the event of any retrial of all or any portion of Petitioner's criminal case or in any clemency proceeding. Any modification or vacation of this order shall only be made upon notice to, and an opportunity to be heard from, both parties.

**IT IS FURTHER ORDERED** that Petitioner's *Ex Parte* Application to File Under Seal Exhibits 92, 93, and 94 (Dkt. 16) is **DENIED WITHOUT PREJUDICE**. Pursuant to the discussion herein, Petitioner shall file a renewed motion to seal no later than **ten (10) days** after the filing of this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall file Petitioner's Ex Parte Application for Schedule to File Amended § 2255 Motion (Dkt. 20) as an ordinary filing on the public docket.

**IT IS FURTHER ORDERED** that Petitioner's Ex Parte Application for Schedule to File Amended § 2255 Motion (Dkt. 20) is **DENIED**.

DATED this 1st day of September, 2009.

_____
Mary H. Murguia
United States District Judge