SEAN KENNEDY (Calif. Bar No. 145632)
Federal Public Defender
STATIA PEAKHEART (Calif. Bar No. 200363)
Deputy Federal Public Defender
Office of the Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:   (213) 894-2854
Facsimile:   (213) 894-0081

Attorneys for Defendant-Movant
LEZMOND CHARLES MITCHELL

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LEZMOND CHARLES MITCHELL,<br><br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No.: CV-09-8089-MHM<br><br>Mitchell's Motion to Alter or Amend the Judgment, Pursuant to Federal Rule of Civil Procedure 59(e) |

# TABLE OF CONTENTS

A.   Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.   This Court's Finding That "Further Evidentiary Development Is Neither
Required Nor Warranted" Was Clear Error. . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.   The Court Should Reconsider its Judgment and Proceed According to
Section 2255 and the Applicable Supreme and Appellate Case Law, the
Rules Governing Section 2255 Cases, and Local Civil Rule 7.2.1. . . . . . . . 7

        Issues A & B.  Counsel's failure to investigate, prepare
and present evidence of intoxication resulted in
ineffective assistance at the guilt and penalty phases. . . . . . . . . . . . 8

        Issue C.  Trial counsel's conflict of interest deprived
Mitchell of the right to effective assistance. . . . . . . . . . . . . . . . . . . 14

        Issue D.  Trial counsel was ineffective with respect to the
penalty imposed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        Issue G.  Counsel's failure to investigate and challenge
DNA evidence and testimony comprised ineffective
assistance.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        Issues H-L, O & P.  Jury and Jury-Selection Issues.. . . . . . . . . . . . 26

        Issue Q.  The prosecution's failure to produce
exculpatory evidence violated Mitchell's constitutional
rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        Issue R.  The Government's collusion with the Navajo
Nation violated Mitchell's constitutional rights.. . . . . . . . . . . . . . . 29

            (1)    Mitchell's extended detention (November 7-
29) in tribal custody violated Navajo Law.  . . . . . . . . . 31

            (2)    A factual dispute exists whether the tribal
prosecutor's decision to not pursue the
charged robbery offense was influenced by
the federal government.. . . . . . . . . . . . . . . . . . . . . . . . . 32

            (3)    A factual dispute exists whether the federal
agent's testimony that there was insufficient
evidence to arrest Mitchell on federal
charges was credible.  . . . . . . . . . . . . . . . . . . . . . . . . . . 33

(4)    A factual dispute exists whether the collaborative efforts between the federal government and tribal authorities result in an abuse of the Navajo Nation court system, and a violation of the defendant's federal constitutional rights. . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Issue T. Mitchell's conviction and sentence should be reversed because the victims' family's conduct unduly prejudiced Mitchell at the guilt and penalty phases. . . . . . . . . . . . . 40

D.    Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

# TABLE OF AUTHORITIES

*389 Orange St. Partners v. Arnold*,
   179 F.3d 656 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Bean v. Calderon*,
   163 F.3d 1073 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Beardslee v. Woodford*,
   358 F.3d 560 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Blockburger v. United States*,
   284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).. . . . . . . . . . . . . . . . . . 34

*Boyde v. California*,
   94 U.S. 370, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990). . . . . . . . . . . . . . 14

*Brady v. Maryland*,
   373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). . . . . . . . . . . . . . . . 27

*Brown v. Peyton*,
   435 F.2d 1352 (4th Cir.1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Caro v. Calderon*,
   165 F.3d 1223 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*Correll v. Ryan*,
   539 F.3d 938 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cunningham v. Estelle*,
   536 F.2d 82 (5th Cir.1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Duren v. Missouri*,
   439 U.S. 357, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979). . . . . . . . . . . . . . . . 26

*Dziurgot v. Luther*,
   897 F.2d 1222 (1st Cir. 1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Earp v. Ornoski*,
   431 F.3d 1158 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Egger v. United States*,
   509 F.2d 745 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Haacks v. Wainwright*,
   387 F.2d 176 (5th Cir. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jones v. Ryan*,
   583 F.3d 626 (9th Cir. 2009), *petition for cert filed*,
   78 U.S.L.W. 3652 (U.S. Apr. 26, 2010). . . . . . . . . . . . . . . . . . . . 13, 14, 19, 22

*Lambright v. Schriro*,
   490 F.3d 1103 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Libberton v. Ryan,*
583 F.3d 1147 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Lonberger v. Marshall,*
808 F.2d 1169 (6th Cir.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Louis v. Blackburn,*
630 F.2d 1105 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*McDowell v. Calderon,*
197 F.3d 1253 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Medrano v. United States,*
315 F.2d 361 (9th Cir. 1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Molina v. Rison,*
886 F.2d 1124 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*Musladin v. Lamarque,*
427 F.3d 653 (9th Cir. 2005), *vacated on other grounds,*
*Carey v. Musladin,* 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006).. 41

*Nash v. Ryan,*
581 F.3d 1048 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Polizzi v. United States,*
550 F.2d 1133 (9th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . 28, 37

*Poller v. Columbia Broadcasting System, Inc.,*
368 U.S. 464, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962). . . . . . . . . . . . . . . . . 9

*Raulerson v. Wainwright,*
753 F.2d 869 (11th Cir.1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Reed v. Farley,*
512 U.S. 339, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994). . . . . . . . . . . . . 37

*Rompilla v. Beard,*
545 U.S. 374, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). . . . . . . . . . 16, 41

*Sanders v. United States,*
373 U.S. 1, 83 S. Ct. 1068, 10 L. Ed. 2d (1963), which.. . . . . . . . 36, 37, 38

*Schad v. Ryan,*
595 F.3d 907 (9th Cir 2010), as amended,
606 F.3d 1022 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1313

*Schriro v. Landrigan,*
550 U.S. 465, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007). . . . . . . . . . . . . 5

*In re Shriner,*
735 F.2d 1236 (11th Cir.1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Stanley v. Schriro,*
598 F.3d 612 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stead v. United States*,
    67 F. Supp. 2d 1064 (D.S.D. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Strickland v. Washington*,
    466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 2674 (1984). . . . . . . . . . . . . . 8

*Townsend v. Sain*,
    372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963). . . . . . . . . . . . . . 2, 4, 5

*United States v. Allen*,
    157 F.3d 661 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Blaylock*,
    20 F.3d 1458 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Doe*,
    155 F.3d 1070 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Griffin*,
    699 F.2d 1102 (11th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*United States v. Michaud*,
    268 F.3d 728 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Mitchell*,
    502 F.3d 931 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*United States v. Withers*,
    618 F.3d 1008 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*White v. New Hampshire Department of Employment Security*,
    455 U.S. 445, 102 S. Ct. 1162, 71 L. Ed. 2d 325 (1982). . . . . . . . . . . . . . 1

*Wiggins v. Smith*,
    539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). . . . . . . . 10, 18, 20

*Williams v. Ryan*,
    --- F.3d -- 2010 WL 4188304 (9th Cir. 2010). . . . . . . . . . . . . . . . . . 9, 41

*Williams v. United States*,
    731 F.2d 138 (2d Cir.1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Withrow v. Williams*,
    507 U.S. 680, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993). . . . . . . . . . . . 37

*Yniques v. Cabral*,
    985 F.2d 1031 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Zimmerman v. City of Oakland*,
    255 F.3d 734 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**DOCKETED CASES**

*Martin v. Antone*,
No. SC-CV-48-02 (Navajo Supreme Court, August 13, 2003). . . . . . . . . . 32

*Navajo Nation v. Rafael Rodriguez*,
No. SC-CR-03-04 (Supreme Court of the Navajo Nation 2004). . . . . . . . . 35

**FEDERAL CODES, RULES, AND STATUTES,**

Title 18, United States Code

Section 2111. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 34

Section 3041. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Title 28, United States Code

Section 2254. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Section 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Federal Rule of Criminal Procedure

Rule 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Rules Governing Section 2255 Cases in District Courts

Generally. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Rule 4(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rule 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rule 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 41

Rule 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rules of Civil Procedure

Rule 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rule 59(c)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

Rule 59(e)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

**NAVAJO NATION CODES, RULES, AND STATUTES,**

Title 1, Navajo Nation Code,

Section 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Section 380.A.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Section 380.B. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Section 491. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 34

Section 491.B.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Section 492. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Section 492.B. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Section 1803. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Section 1804. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 59(e), Petitioner, Lezmond Mitchell, through undersigned counsel, respectfully moves the Court to alter or amend the judgment denying and dismissing his amended § 2255 motion.  (Dkt. 57, Final Judgment.)

This Court entered its final order and judgment on September 30, 2010. (Dkts. 56, 57.)  Rule 59(e) provides that a motion to alter or amend the judgment "must be filed no later than 28 days after the entry of the judgment."  Mitchell's motion is timely.[1]

**A.    Introduction**

As the Supreme Court has stated, Rule 59(e) was adopted to "make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment."  *White v. New Hampshire Dep't of Employment Security*, 455 U.S. 445, 450, 102 S. Ct. 1162, 71 L. Ed. 2d 325 (1982) (internal quotations omitted).  A Rule 59(e) motion properly lies where "the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'"  *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)); *see also Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (Besides the newly-discovered-evidence and change-in-controlling-law factors, a Rule 59(e) motion is proper where "the district court committed clear error or made an initial decision that was manifestly unjust").

---

[1]   A timely Rule 59(e) motion "affect[s] finality [of the judgment] and accordingly suspend[s] the running of the time permitted for the filing of a notice of appeal."  *Yniques v. Cabral*, 985 F.2d 1031, 1033 (9th Cir. 1993), *clarified on other grounds*, *McDowell v. Calderon*, *supra*.

1

Mitchell's amended § 2255 motion and exhibits provided evidence that contradicted trial counsel's deposition testimony and further shows that counsel offered specious, perhaps *post hoc*, and, more importantly, unsupportable reasons in arguing their purported effective assistance. Where the record reveals a factual dispute, the court must give the parties "the opportunity to present other testimonial and documentary evidence relevant to the disputed issues." *Haacks v. Wainwright*, 387 F.2d 176, 178 (5th Cir. 1968) (quoting *Townsend v. Sain*, 372 U.S. 293, 322, 83 S. Ct. 745, 762, 9 L. Ed. 2d 770 (1963)); *see also Dziurgot v. Luther*, 897 F.2d 1222, 1226 (1st Cir. 1990) ("the source of our concern about the lack of an evidentiary hearing is that [Petitioner] was never given an opportunity to present medical or other evidence in an attempt to prove his claim that drugs had impaired his mental faculties so severely as to call his waiver into question"). This Court's dismissal and denial of Mitchell's amended § 2255 motion, without affording him discovery and an evidentiary hearing, was an error of law. And, its *unilateral* grant of discovery to the Government, which it used in denying the motion, was manifestly unjust.

Mitchell is not re-presenting here each and every allegation of error, although all claims in his amended § 2255 motion are meritorious. The decision not to address any particular claim in this motion constitutes neither a waiver nor a withdrawal of a claim.

**B.     This Court's Finding That "Further Evidentiary Development Is Neither Required Nor Warranted" Was Clear Error**

This Court's grant of the Government's request to depose trial counsel was premised on allowing the Government "a fair opportunity to defend against Petitioner's claims." (Dkt. 39, Order at p. 1 of 2.) The Court provided no such

opportunity to Mitchell, although his motions stated that discovery was necessary.[2] It then denied further fact development or an evidentiary hearing because there was no controversy in the "[motions and the] files and records of the case [which] conclusively show that [the prisoner] is entitled to [] relief." (Dkt. 56, Order at p. 5 of 62.)  This finding however seems to disregard that the "motions and the files and records" did not include the same allowance for Mitchell to supplement the "files and records" with product from his own discovery.  Unilateral discovery to one party is not the procedure Congress left in place after it enacted the AEDPA, and it is not provided for in Congress' Rules Governing Section 2255 Cases.  Then, although Mitchell requested an evidentiary hearing in his amended § 2255 motion, this Court denied the request without the benefit of briefing.  This Court's irregular procedure manifested a clear error of law and was unjust.

The standard for granting an evidentiary hearing in a § 2255 case is set out in 28 U.S.C. § 2255, which states:  "Unless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  As the plain text of the statute makes clear, there is a presumption in favor of holding an evidentiary hearing in a § 2255 proceeding:  "*Unless* the motion and the files and the records of the case *conclusively* show that the prisoner is entitled to no relief, the court *shall . . . grant a prompt hearing thereon . . . .*" (emphasis added).

---

[2]   While Mitchell took what advantage he could of the opportunity to cross-examine counsel, the depositions were incomplete because Mitchell did not have the benefit of his own discovery product to use at the depositions.  For example, had he been permitted to issue subpoenas duces tecum and conduct the necessary depositions, he would have established facts that prove the Government and the Navajo Nation colluded in depriving him of his Sixth Amendment right to counsel.

Congress intended that the standard for obtaining an evidentiary hearing in a § 2255 proceeding be a liberal one, a fact borne out by the legislative history of this statute. Before the passage of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the standard governing the granting of evidentiary hearings in federal court for both §§ 2254 and 2255 proceedings[3] was set out in *Townsend*, 372 U.S. at 312: "Where the facts are in dispute, the federal court in habeas corpus *must* hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." (Emphasis added).[4] When Congress passed AEDPA, it revised both § 2255 and § 2254, but those revisions differed as to the evidentiary hearing provisions of the respective statutes. With respect to § 2254 proceedings, Congress modified the *Townsend* standard and limited a federal district court's discretion to grant an evidentiary hearing on a § 2254 petition. *See* 28 U.S.C. § 2254(e). The stated rationale for this change was that a § 2254 petitioner has purportedly already had the opportunity for an evidentiary hearing during his state court post-conviction proceedings, so the principles of comity and federalism required deference to findings of fact made by the state courts.

Congress, however, placed no similar limitations on the standard for granting an evidentiary hearing in § 2255 proceedings, as is evident by comparing the text of § 2254(e) with § 2255. *See Stead v. United States*, 67 F. Supp. 2d 1064, 1074 n.5 (D.S.D. 1999) ("Although the AEDPA modified, to some extent,

---

[3]   28 U.S.C. § 2254 governs post-conviction motions filed in federal court arising out of *state* convictions, whereas 28 U.S.C. § 2255 governs post-conviction motions filed in federal court arising out of *federal* convictions

[4]   The *Townsend* factors are not relevant to a § 2255 proceeding, as they address circumstances regarding a § 2254 petitioner's state postconviction proceedings. Thus, even pre-AEDPA, there were still significant differences between §§ 2254 and 2254 proceedings regarding the showing necessary to obtain an evidentiary hearing in federal court, due to concerns of comity and deference to state-court fact-finding.

the *Townsend* standard for obtaining evidentiary hearings in 28 U.S.C. § 2254 cases, Congress made no parallel changes in § 2255 practice, leaving intact the *Townsend* standard, creating a discrepancy between the right to a hearing in § 2254 and § 2255 cases."). As a result, Mitchell's request for an evidentiary hearing is governed by the more liberal (and pre-AEDPA) standard articulated in *Townsend*, which states the court *must* grant the petitioner an evidentiary hearing if there are disputed issues of fact.

Given that courts should grant evidentiary hearings in § 2255 cases following the liberal standard that Congress has maintained, in determining whether an evidentiary hearing was warranted, this Court should have asked whether, "accepting the truth of [Mitchell's] factual allegations, could [Mitchell] have prevailed . . . ." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994). If the answer is in the affirmative (and it is), an evidentiary hearing is warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) ("[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.")

Mitchell's first discovery request was for leave to interview the jurors, which this Court denied. (Dkts. 1, 20.) Then, Mitchell filed his first § 2255 motion, followed by his amended § 2255 motion, which became his operative pleading.[5] All the issues in Mitchell's amended § 2255 motion survived the

---

[5] As evidenced by the attached exhibits, the investigation into developing his right to a hearing and relief was on-going. When this Court entered its final order and judgment, Mitchell was preparing to move to amend his first amended § 2255 motion and/or for an evidentiary hearing. *See* LRCiv 72.1 (stating that §§ 2254 and 2255 matters "shall proceed in accordance with the Rules Governing Section 2254 Cases In The United States District Courts, or *the Rules Governing Section 2255 Proceedings For The United States District Courts*, as the case may be . . . .) (emphasis added).

In any event, the Ninth Circuit recently held that the petitioner who failed to

"preliminary review" phase described in the Rules Governing Section 2255 Cases. Satisfying the preliminary review stage indicates that the issues were neither "palpably incredible [n]or patently frivolous." *United States v. Withers*, 618 F.3d 1008, 1016 (9th Cir. 2010) (District Court's summary dismissal of § 2255 claim reversed and remanded for evidentiary hearing because claim was "supported by non-incredible and non-frivolous allegations which, if true, would warrant habeas relief."), *Gov't reh'g pet. pending*, 9th Cir. No. 05-56795; Rule 4(b), Rules Governing Section 2255 Cases. Next, the Court ordered the Government to answer the motion. Had the Court followed the established procedure for adjudicating § 2255 motions, Mitchell would have moved for discovery under Rule 6 and/or the Court would have permitted expansion of the record under Rule 7. Then, because the Court did not dismiss the motion at the outset, the § 2255 Rules provide that, for the Court to "[d]etermin[e] whether to hold a hearing," it must "review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Rule 8(a), Rules Governing Section 2255 Cases. Clearly, Congress meant that, once the § 2255 motion survived the preliminary review phase, courts should provide *bipartite* fact development, *then* determine whether a hearing is warranted – not decide whether to order a hearing before fact development or expansion of record, and certainly not after only unilateral discovery for the Government.

---

request an evidentiary hearing below has not waived his right to hearing where he has established nonetheless facts necessitating a hearing, because a subsequent hearing on remand "will afford the State the opportunity to offer all relevant evidence and fully litigate the [contested] issue[s]." *Nash v. Ryan*, 581 F.3d 1048, 1058-59 (9th Cir. 2009); *see also id.* ("[O]ur procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.").

However, after it granted the Government unilateral discovery, the Court entered judgment against Mitchell, thus determining that Mitchell could not meet the generous evidentiary hearing standard described in § 2255.  In denying an evidentiary hearing at this stage of its irregular procedure, this Court relied almost wholly on the product of its unilateral grant of discovery to the Government – *i.e.,* the depositions of trial counsel – before finding that counsel "did not perform ineffectively at trial." (Dkt. 56, Order at p. 6 of 62.)  The Court's irregular procedure violated Congressional intent, § 2255 and applicable case law, and resulted in an unfair proceeding.  *See United States v. Griffin*, 699 F.2d 1102, 1109 (11th Cir. 1983) ("Where, as here, a perfectly adequate, indeed superior, judicial procedure agreeable to the Constitution has been established for presentation and determination of an issue, our duty to all of the interests involved lies not in devising or permitting a fugitive procedure of our own design but in requiring adherence to the procedure established.").

**C.      The Court Should Reconsider its Judgment and Proceed According to Section 2255 and the Applicable Supreme and Appellate Case Law, the Rules Governing Section 2255 Cases, and Local Civil Rule 7.2.1**

Here, Mitchell shows how the Court's order and judgment, including its one-sided grant of discovery to the Government, were clear error or manifestly unjust.  Consistent with Rule 59(c), which permits a litigant to submit affidavits in support of a Rule 59(e) request that the court reconsider its judgment, Mitchell cites additional exhibits which further establish that he is entitled to an evidentiary hearing, and to relief.  *See also* footnote 5, *supra*.

///

///

///

***Issues A & B. Counsel's failure to investigate, prepare and present evidence of intoxication resulted in ineffective assistance at the guilt and penalty phases***[6]

The Court's findings that counsel provided effective assistance necessarily means that the Court determined that Mitchell's declarants – whose facts were contrary to counsel's subsequent testimony – and Mitchell's exhibits – many of which contradicted counsel's conclusory testimony – were all incredible.  What is apparent from this Court's final order and judgment, even considering the "highly deferential" review required of counsel's performance (*Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 2674 (1984)), is that this Court's piecemeal evaluation of the reasonableness of counsel's performance, by searching the record and exhibits for a cite to support counsel's self-interested testimony, and entirely disregarding Mitchell's proffered evidence in turn, failed to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id*.  Put another way, the Court's adoption of counsel's excuses was beyond the post-trial deference to counsel's performance mandated by *Strickland v. Washington*.

In light of the evidentiary support Mitchell provided with his § 2255 motions and here, this Court must resolve the facts only through a thorough

---

[6]  Here, Mitchell discusses counsel's deficient performance at both phases. The ABA Guidelines state,

> During the investigation of the case, counsel should begin to develop a theme that can be presented consistently through both the first and second phases of the trial.  Ideally, 'the theory of the trial must complement, support, and lay the groundwork for the theory of mitigation. . . . First phase defenses that seek to reduce the client's culpability for the crime (e.g., by negating intent) rather than to deny involvement altogether are more likely to be consistent with mitigating evidence of mental illness, retardation, domination by a co-defendant, substance abuse, or trauma.

Commentary to Guideline 10.11, ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, pp. 106-07 (Rev. Ed. February 2003).

evaluation of counsel's performance at an evidentiary hearing, where "the witnesses are present and subject to cross-examination [by this Court and] their credibility and the weight to be given their testimony can be appraised." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962); *Earp v. Ornoski*, 431 F.3d 1158 (9th Cir. 2005); *Griffin*, 699 F.2d at 1109 ("the government has a full opportunity to present evidence to the contrary, the district court hears spoken words . . . and sees expressions . . . , and a factual record bearing precisely on the issue is created.") *See also Williams v. Ryan*, --- F.3d ----, 2010 WL 4188304 (9th Cir. 2010) (The district court abused its discretion in determining these issues on the basis of the documentary evidence alone. This case is not one of the "rare instances" where "credibility may be determined without an evidentiary hearing.") (quoting *Earp v. Ornoski*, 431 F.3d 1158, 1169-70 (9th Cir. 2005)).

In deciding that an evidentiary hearing was not warranted on Issues A and B, although it did not say it when it rejected the claims, the Court necessarily discounted the social history in which the mitigation investigator recorded Mitchell's statements to her that he used significant quantities of drugs "in and around the date of this incident" (Mitchell's Exhibit 93, p. 1486), and her declaration where she relates that, after counsel told her that Mitchell purportedly denied to them that he was intoxicated, she attempted to engage them with facts in support of a voluntary intoxication defense, including why a defendant (particularly a Native American) would initially deny his drug use to counsel. (Mitchell's Exhibit 131, pp. 1664-65.) The Court's disposition by summary rejection of Ockenfels' declaration and the social history she gave counsel ignored the statutory presumption in favor of granting an evidentiary hearing in a § 2255 proceeding when there are disputed issues of fact and demonstrable need for further factual development.

Another example where this Court ignored Mitchell's evidence was in giving full credit to counsel's testimony that they declined to present the intoxication evidence because they were "concerned about losing credibility with the jury," (Dkt. 49, Ex. 1 at p. 34 of 109); an intoxication presentation did not fit with their "defense" that Mitchell was a "good person" and Orsinger committed the substantial parts of the crimes; and, because juries had rejected such evidence after 9/11. (Dkt. 49, Ex. 3 at pp. 17& 37-38 of 86.)[7] The Court's findings likewise summarily rejected his psychiatric expert's declaration about the genesis of Mitchell's substance abuse. (Mitchell's Exhibit 135.)

In fact, by their own device, counsel had little to no credibility at the outset, and it is insurmountable to surmise what, exactly, was their theory. First, trial counsel questioned potential jurors about intoxication, then told the jury, during the opening statement, that Mitchell had no "premeditated plan to steal a truck and kill the occupants." Yet, counsel did not present any evidence whatsoever about Mitchell's lack of premeditation. This is not stop them however from requesting an instruction on intoxication. Then, at the penalty phase, they cross-examined an FBI special agent about Mitchell's intoxication. Not surprisingly, this maneuver was fell flat because it permitted the agent to testify that Mitchell's report to the FBI that "he had been so drunk during the killings that he 'blacked out'" was a lie because "the sale of alcohol is banned on Sundays."[8] Thus, counsel's testimony

---

[7] Counsel's explanations resemble the "*post hoc*" assessment found constitutionally wanting in *Wiggins v. Smith*, 539 U.S. 510, 526-27, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (cautioning against courts invoking "strategy" as a "post-hoc rationalization of counsel's conduct, [rather] than an accurate description of their deliberations."). An evidentiary hearing would permit Mitchell to develop fully the circumstances of counsel's decision making on this point.

[8] This assertion is as spurious as counsel's testimony that Mitchell, as an inmate in the County Jail, could not have obtained illicit substances in the Maricopa County Jail. (Dkt. 49, Ex. 2 at pp. 28 & 66-67 of 92.) In any event, Mitchell's declarations to the contrary present a contested issue of fact, thus,

on this point was entirely undermined by their lack of any strategy for the case, including their failure to thoroughly investigate a defense.

Moreover, a voluntary intoxication defense is not only entirely consistent with counsel's "good person  theory," but it explains why a "good person" did not *choose* to "fall in with the wrong crowd."  As it was, counsel's investigation was incomplete and, in significant part, inaccurate.  Thus, counsel's decision to present a "good person" theory was based on incomplete and inaccurate life history investigation.

As described more fully in Issue D, *infra*, counsel's life history investigation did not uncover the physical and psychological abuse, neglect and abandonment Mitchell suffered at the hands of his "educated" family.  (*Compare* Exhibit 93 (social history) *with* Exhibits 143 & 169 (declaration and supplemental declaration of Hilary Weaver, D.S.W.)  Thus, Mitchell's jury "did not 'have the benefit of expert testimony to explain the ramifications of [this background] on [the defendant]'s behavior')." *Stanley v. Schriro*, 598 F.3d 612, 624 (9th Cir. 2010) (quoting *Caro v. Calderon*, 165 F.3d 1223, 1227 (9th Cir. 1999), *as amended*; reversing and remanding for an evidentiary hearing on ineffective assistance of counsel at the penalty phase).  His fact development and evidentiary hearing presentation would have demonstrated how counsel's "good guy theory" was not a strategy that a "'reasonable lawyer at the trial [w]ould have [presented]' . . ."  (Dkt. 56, Order at p. 6 of 62.)[9]

This Court also found that "Petitioner's own detailed recollection of the crime (including his recitation to Dr. Morenz)," and other facts, "severely undercut the argument that he was too intoxicated to understand the nature of his actions or

additional reasons why this Court should have held an evidentiary hearing.

[9] Mitchell's expert testimony at an evidentiary hearing would show that trial counsel's belief about juries' distaste for mitigation "after September 11" is patently incredible and unsupportable.

11

to control his conduct." (Dkt. 56, Order at p. 42 of 62.)  This too means that the Court, even without considering counsel's depositions, rejected Mitchell's psychiatric expert's statement that

> considering the significant amounts of various psychoactive substances [Mitchell] used before his arrest, and because we know that *methamphetamine and cocaine/crack intoxications resolve over a period of twenty four to forty eight hours,* had trial counsel provided me with the foregoing information, including the *many* interrogations he underwent without counsel, I would have recommended they question and investigate his ability to knowingly, intelligently and voluntarily waive his right to counsel.

(Mitchell's Exhibit 135, p. 1770 (emphasis added).)[10]  It also indicates that this Court has conflated Mitchell's actions after the crime with his actions during the crime (by suggesting that, because he cleaned out the car, etc., he could not have been intoxicated at the time of the crimes).  The Court's resolution of this factual dispute, without an evidentiary hearing, was clear error and manifestly unjust.

Had the Court held an evidentiary hearing, it would have heard evidence reconstructing the circumstances of counsel's performance and from counsel's perspective.  For starters, it would have heard from Johnny Orsinger's counsel (Mitchell's Exhibit 157) and from Orsinger (Mitchell's Exhibit 109) that Orsinger could have provided evidence about his and Mitchell's drug use on the day of the crime.  Doubtless, evidentiary hearing testimony by Orsinger's counsel and Orsinger would have been "probative of [Mitchell's] mental state on the day in question." (Dkt. 56, Order at p. 12 of 62.)  Likewise, the Court discounted the declarations of the denizens from the Nakai household too handily.  Since Orsinger was not death-eligible, nor were those indicted for the "Cowboy" or Lake

---

[10]  Thus, even if counsel could not *prove* that Mitchell used drugs before and during the offenses, because it is known (from Mitchell's declarants) that he used methamphetamine and cocaine/crack intoxicants shortly before the offense, counsel could have presented testimony that Mitchell was still under the influence of these substances at the time of the offenses.  The Court ignored these facts as well.

murders, had Mitchell's counsel investigated Mitchell's voluntary intoxication competently, it is not unlikely that counsel could have obtained valuable testimony about Mitchell's drug use.  (*See, e.g.*, Mitchell's Exhibit 157.)  However, the Court's dismissal before an evidentiary hearing has precluded Mitchell from obtaining that evidence.  This Court particularly ignored the unchallenged declaration of Padrian George, who had no criminal liability whatsoever, and who declared what substances Michell had ingested.  (Mitchell's Exhibit 100.)  Not surprisingly, none of these declarants were interviewed by counsel.[11]

As noted *supra*, this Court also ignored the declarations of Mitchell's mental health experts, Drs. Stewart and Weaver, as well as those retained by trial counsel, Drs. Herring and Morenz.  (Mitchell's Exhibits 135, 143, 144 & 145.)  All declare facts about Mitchell's intoxication and substance abuse that would support a defense of voluntary intoxication.[12]  Drs. Stewart and Weaver would have further testified *how* and *why* Mitchell's drug use was "[t]he missing link" from his past that could have shown the jury what "prompted him to commit this aberrant violent act"[13] – the link this Court erroneously found lacking in Mitchell's § 2255 presentation.  *See Jones v. Ryan*, 583 F.3d 626, 642 (9th Cir. 2009), *petition for cert filed*, 78 U.S.L.W. 3652 (U.S. Apr. 26, 2010)(No. 09-1314) (finding prejudice where counsel "did present evidence to the court regarding [the

---

[11]   On this point, the Court also discounted the trial investigator's recollection that he did interview Orsinger, in favor of counsel's testimony that the investigator actually only served a subpoena on Orsinger, never mind that the investigator was experienced enough to know the difference between an interview and personal service of a subpoena. (Dkt. 49, Ex. 2 at pp. 77-78 of 92); Dkt. 56, Order at p. 9 of 62.) This is another example of the Court simply taking counsel's word on the contested issues, and ignoring the contrary facts.

[12]   Of course, Mitchell's present and trial mental health experts would have testified within the limits imposed by the Rules of Evidence limiting expert testimony on ultimate issues.  For this reason, the Court's rejection of the experts' declarations on this point is perplexing.  (Dkt. 56, Order at p. 42 of 62.)

[13]   *Schad v. Ryan*, 595 F.3d 907, 923 (9th Cir 2010), as amended, 606 F.3d 1022 (9th Cir. 2010) (remanding for evidentiary hearing), *warden's cert. pending*.

defendant's] drug induced impairment on the night of the murders, but he did not take the next critical step:  to explain why [the defendant's] had pursued a life of substance abuse."); *see also id*. at 643 ("In *Boyde v. California*, [494 U.S. 370, 382, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990),] the Supreme Court recognized that 'evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.'").

For the same factual disputes indicated in these claims, counsel's failure to challenge the voluntariness of Mitchell's waiver was ineffective assistance.  (Issue E.)  The Government's case against Mitchell hinged largely on Mitchell's statements during the multiple interrogations.  Counsel's ignorance of their client's life history, including his brain damage (as cited in the exhibit-declarations of Drs. Herring (a neuropsychologist), and Morenz and Stewart (physicians)) was ineffective assistance.  As described *supra*, this Court's disregard of the factual disputes was clear error and manifestly unjust.

### Issue C.  Trial counsel's conflict of interest deprived Mitchell of the right to effective assistance

The Court rejected this claim, stating that Mitchell "failed to allege specifically how Rumann's performance was adversely affected by the alleged conflict with Wilkinson's client." (Dkt. 56, Order at p. 54 of 62.)  Again, the Court accepted counsel's testimony wholesale, and rejected the Rumann declaration (and declaration of O'Connor), for the dispositive and disputed facts that the "conflict did not arise until *after* Petitioner was convicted, and Petitioner has proffered no evidence to the contrary." (Dkt. 56, Order at p. 54 of 62 (emphasis in original.).)  In doing so, the Court also countenanced Bartolomei's invocation of the attorney-client privilege (arguably in violation of his ethical duty to Mitchell), further prohibiting Mitchell from learning the nature of the conflict.

14

Indeed, since he does not know even the identity of Wilkinson's client, it is uncertain how Bartolomei, as Mitchell's zealous advocate, can reliably state *when* the conflict arose without simply taking the word of another attorney who has no ethical duty toward Mitchell.

Then, in further support of its decision, the Court noted that "Jon Sands was not appointed as Federal Public Defender until . . . . months after Petitioner's conviction[] and, therefore, could not have prohibited Wilkinson from disclosing information about her former client 'before trial' as alleged by Petitioner in this claim." (Dkt. 56, Order at p. 54 of 62.)  Here, the Court's *own* fact finding is insufficient because Sands was the Chief Deputy Federal Public Defender before he was the Federal Public Defender, thus, he certainly was in the position to erect the ethical wall around Rumann and Wilkinson.  For these reasons, the Court's conclusions that Rumann's and O'Connor's representation could not have affected Mitchell's appeal are speculative.  (*See* Dkt. 56, Order at p. 55 of 62.)  Because the Court did not permit Mitchell to proceed with fact development and an evidentiary hearing, he is of course unable to "allege with any specificity how [the conflict of interest] adversely affected her representation on appeal."  (*Id*.)

Mitchell presented the Court with disputed facts, and counsel's testimony did not resolve the matter.  The Court's resolution of the facts against Mitchell, particularly in light of the unilateral fact development for the Government, was manifestly unjust, and clear error.

### *Issue D.  Trial counsel was ineffective with respect to the penalty imposed*

Contrary to the Court's finding, counsel had little of the evidence about Mitchell's life history, and presented even less than what they had:

> Instead, the jury was presented with a misleadingly rosy picture of Mitchell's upbringing and background which failed to explore the abuse and neglect he suffered from infancy and the lack of stability and positive forces throughout much of his critical developmental years.  Nor did trial counsel present the ample evidence of Mitchell's drug use, or explore how his addiction was the result of the young Mitchell's attempts to self-medicate in order to cope with the fears

15

and anxieties that came with growing up in a home where he was regularly beaten and humiliated by his primary caretakers. The defense mitigation investigation stopped far short of what is required of competent capital counsel. If Mitchell's jury had heard testimony describing the nature and depth of his family's dysfunction and the manner in which it shaped the course of his life, there is a reasonable probability that at least one juror would have voted for a life sentence.

(Dkt. 30, Amended § 2255 motion at pp. 15-16 of 280; *see also id*., pp. 34-61 of 280 *and* exhibits cited therein.)[14] Had this Court correctly ordered an evidentiary hearing, Mitchell would have presented Mitchell's complete life history.

Possibly because the attorney with no prior capital experience managed the penalty phase investigation and because learned counsel conducted or directed no investigation, counsel's mitigation investigation did not uncover significant facts about Mitchell's life history. As described here, counsel missed many "red flags" that tells reasonable counsel triggers their obligation to investigate further. *Rompilla v. Beard*, 545 U.S. 374, 390-91, 393, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). Probably most importantly, counsel's investigation revealed that they had no insight into Mitchell's substance abuse, only that Mitchell drank a lot when Mitchell stayed with Bobbi following his high school graduation. (*See* Issues A & B, *supra*.)

Counsel's mitigation investigator Ockenfels assumed that Bobbi Jo was a reliable reporter, and took Bobbi's reports as truth without corroboration. Subsequent investigation has revealed that Bobbi was herself abusive to others, and particularly psychologically and physically abusive to Mitchell. But, because they relied on Bobbi Jo, counsel only knew about scuffles between Sherry and

---

[14]   *See also* Mitchell's Exhibit 169, attached (and numbered consecutive to the exhibits filed with the amended § 2255 motion). This exhibit, a supplemental declaration by Mitchell's social historian Hilary Weaver, D.S.W., describes, among other points, George Mitchell's pedophilia.
Again, Weaver's supplemental declaration is properly before the Court because the plain language of subsection (c) of Rule 59 contemplates the filing of affidavits with the motion. *See* Rule 59(c).

16

Mitchell, not the physical abuse Bobbi Jo inflicted on Mitchell. And, they knew only in passing that Auska and Lorenzo Reed said that Mitchell told them Bobbi Jo abused him and put him down.

Counsel's mitigation investigator described third-grader Mitchell as "defiant," that Sherry not able to control him. This punitive characterization prevented counsel from viewing their client as the miserable, abused 8-year-old child with limited ways to demonstrate his frustration and pain related to his caregivers' mistreatment and neglect of him. Moreover, counsel's investigation entirely missed the abandonment issue, describing it more as Mitchell feeling rejected, which turned to anger. Counsel's investigation also failed to uncover George's inability to parent, although she quoted Dr. Roessel as saying George was a "dour, sour man, who was never happy." She made no mention of how George would leave Mitchell on his own for months at a time or how George sexually abused small children, which caused him to lose a job.

Counsel's investigation missed Mitchell's depression, a substantial psychiatric condition, that existed even after he moved to the Reed's house (thus, it was not solely related to the abuse and neglect he suffered). Their investigation did not reveal how helpful Mitchell was to the Reeds, or that Mitchell sometimes sat, quiet and pensive. And, as Mitchell's psychiatric expert indicates, Mitchell suffers from Post-traumatic Stress Disorder, another substantial psychiatric condition that counsel failed to recognize in their client.

Counsel's investigation indicated that Mitchell was not interested in Navajo spirituality, only the Navajo stories. This was not the case. Not only did Dr. Weaver's supplemental declaration discuss how that was the one anchor Mitchell had culturally (no matter how much he missed for George's lack of teaching), and that Mitchell attended, and participated in, ceremonies in his life – including one in which he exposed Sherry for her poor parenting.

17

Mitchell's evidentiary-hearing reconstruction of counsel's perspective and performance would have refuted this Court finding that counsel had "significant evidence of Bobbi and Sherry Mitchell's history of personal problems and abuse." (Dkt. 56, Order at p. 44 of 62.)

Counsel also ignored the fact that Mitchell's father was addicted to alcohol, and died from that disease; his addiction suggests a strong genetic disposition to addiction (particularly since he had no relationship with his father and would not have been influenced by his behavior). Trial counsel did not deal or possibly even recognize the significance of this fact. If they did not know it, or investigate it, that incomplete investigation undercuts the reasonableness of their strategy.

Then, because none of Mitchell's counsel realized that their investigation was incomplete and undeveloped, their "good person" theory failed to account for, as this Court noted, the facts of the crime. (Dkt. 56, Order at pp. 44-45 of 62.)[15] Certainly, counsel's superficial presentation concerning Mitchell's family life undercuts their testimony that they had a strategy. *See Wiggins*, 539 U.S. at 526. And, because counsel did not prepare (or select) the mitigation witnesses with the requisite utmost care, one witness testified that Mitchell broke into his office, stole a computer and gun and used the gun to commit a robbery. So, trial counsel's "good person" strategy actually failed to keep out damaging testimony. This is another example of why counsel was unreasonable in stopping (or never starting) an adequate mitigation investigation, and in focusing on a strategy before uncovering the reasonably available mitigation. At a hearing, Mitchell would have presented expert testimony that counsel's few hours on the case would have

---

[15] As it was, the jury was nonplused by counsel's ad-hoc presentation (which included finding witnesses in hallways)(Mitchell's Exhibit 113), as evidenced by their Special Verdicts where only half the jurors found "[o]ther factors in Lezmond Mitchell's childhood, background, record, character or any other circumstance of the offense that mitigate against imposition of the death sentence." (Dkt. 945, 955.)

better spent investigating the circumstances of the "bad acts" then developing a theory that explained them by having the mental health and mitigation presentations account for them.

In rejecting Mitchell's mitigation evidence, the Court decided that it was of "*Minimal Mitigation Value*"; it would have "open[ed] the door" to "*Potentially Damaging Rebutt*al"; and, counsel was not unreasonable in presenting "lingering doubt concerning Petitioner's role in the offense and emphasis of his positive attributes were viable defenses." (Dkt. 56, Order at pp. 44-48 of 62.)

The Ninth Circuit has rejected any determination that a petitioner's mitigation evidence was of minimal value.  In *Jones v. Ryan*, the district court decided that the defendant's mitigation "played no role in [the] crimes."  The Ninth Circuit found that

> the district court's role was not to evaluate evidence in order to reach a conclusive opinion [about the mitigation] or lack thereof.  The district court should have decided only whether there existed a 'reasonable probability' that 'an objective fact-finder' in a state sentencing hearing would have concluded, based on the evidence presented, that [the mitigation] impaired his judgment at the time of the crimes.

*Jones*, 583 F.3d at 641(quoting *Correll v. Ryan*, 539 F.3d 938, 952 n.6 (9th Cir. 2008).)  This Court's "weighing" of the mitigation evidence was clear error.

The Court's next reason to reject Mitchell's mitigation evidence – because it would have "opened the door" to damaging evidence from counsel's social history investigation – ignores important facts about Ockenfels' role in the case:  She was not a testifying expert, she was an mitigation specialist, an investigator.  (*See* Mitchell's Exhibit 131, ¶ 1.)  And, her unfinished "social history" was clearly for counsel's use only, as she declared.  (*Id*. ¶ 13.)[16]  For those reasons, the social history was work-product, covered by the attorney-client privilege, and no

---

[16]   This is also evidenced by counsel's apparent decisions not to provide it to their mental health experts.

19

provision of the Federal Rules would have required is disclosure to the Government.[17]  Indeed, the Government knew none of the "damaging rebuttal" by the time of trial, even after its extensive investigation.  Thus, the Court's reasoning was contrary to fact, and was clear error.

Counsel's deposition testimony that they wanted to present "lingering doubt" about Mitchell's role, or culpability, in the crimes was contrary to fact: First, their opening statement at the guilt phase told the jury that Mitchell had no "premeditated plan to steal a truck and kill the occupants," yet they present nothing about Mitchell's lack of premeditation.[18]  This instance was one of several where trial counsel had promised the jury it would hear evidence as a defense to the charges or as mitigation of the sentence, yet counsel never delivered on those promises; these particular kinds of significant failures cut against counsel's testimony that they even had a strategy.  In *Wiggins*, the Court found it significant that trial counsel told the jury it would hear certain mitigation evidence and then never presented it.  Partly on that basis, the Court found that there was no strategic reason for trial counsel's failure and therefore their performance was deficient. *See Wiggins v. Smith*, 539 U.S. at 526-527.  The Court entirely ignored or dismissed counsel's failures on this point.

Additionally, counsel's lack of preparation permitted the Government's DNA testimony – unsupported by objective and competent science – to go unchallenged.  And, their unreasonable decision to forgo interviewing the medical examiner and their lack of preparation permitted the Government to again present erroneous and incompetent expert testimony about the only *possible* fatal wound Mitchell may have caused.  (*See* Issues E & F.)  Furthermore, the "lingering

---

[17] ( *See also* Dkt. 55, Reply to Response to Amended § 2255 Motion, p. 18.)

[18] ( *See also* RT 2563-64: "[W]e are not suggesting that you even consider the possibility that Lezmond Mitchell was not there.")

20

doubt" excuse was unreasonable and deficient performance since counsel ignored had their own experts' advice (they presented no expert testimony whatsoever) that Mitchell was impaired, had brain damage, and had an addiction to alcohol and drugs – all of which seriously affected his decision-making and impulse control, and all of which would have truly comprised "lingering doubt" about Mitchell's culpability.

Moreover, none of Mitchell's counsel realized that the investigation was incomplete and undeveloped. Subsequently, the presentation of the "good person" theory failed to account for, as this Court noted, the facts of the crime. (Dkt. 56, Order at pp. 44-45 of 62.)[19] And, because counsel did not prepare (or select) the mitigation witnesses with the requisite utmost care, one witness testified that Mitchell broke into his office, stole a computer and gun and used the gun to commit a robbery. So, trial counsel's "strategy" and deficient performance in preparing for the penalty phase actually failed to keep out damaging testimony. Mitchell would have presented expert testimony that counsel's few hours on the case would have better spent investigating the circumstances of the "bad acts" then developing a theory that explained them by having the mental health and mitigation presentations account for them.

The Court's failure to conduct an evidentiary hearing and instead finding that counsel's mitigation presentation was reasonable also ignored Ninth Circuit authority that holds:

> [M]erely skimming the surface on important issues [about the defendant's mitigation at trial] does not make in-depth discussion [of

[19] As it was, the jury was nonplused by counsel's ad-hoc presentation (which included finding witnesses in hallways)(Mitchell's Exhibit 113), as evidenced by their Special Verdicts where only half the jurors found "[o]ther factors in Lezmond Mitchell's childhood, background, record, character or any other circumstance of the offense that mitigate against imposition of the death sentence." (Dkt. 945, 955.) At an evidentiary hearing, Mitchell would show that counsel's were notably deficient as they did not give the jury any way to acknowledge what few mitigating facts counsel did present.

the mitigation at the subsequent habeas proceeding] cumulative. In *Lambright*, we found prejudice after the sentencing court 'was provided with some limited information about Lambright's mental health problems,' but 'the information contained in those reports was conclusory and based solely on Lambright's own accounts of his history.'

*Jones*, 583 F.3d at 642 (quoting *Lambright v. Schriro*, 490 F.3d 1103, 1125 (9th Cir. 2007)); *see also id*. (citing *Bean v. Calderon*, 163 F.3d 1073, 1079 (9th Cir. 1998) (finding prejudice when experts "gave newly definitive and expansive opinions on Bean's mental impairments, based on the information about Bean's social history and other recent testing that was newly available to them").)

This Court could not have made the requisite finding about Mitchell's mitigation evidence because it did not hear the evidence at an evidentiary hearing; an evidentiary hearing was warranted, and the failure to provide Mitchell a hearing was clear error.[20]

### Issue G.  Counsel's failure to investigate and challenge DNA evidence and testimony comprised ineffective assistance

This Court granted the Government's request to depose trial counsel.  At the deposition, trial counsel testified regarding their assumptions about the DNA evidence and admitted that their assumptions were formed without any scientific expertise or knowledge and without the assistance of a DNA expert.  (Dkt. 49, Ex. 3, pp. 28-29 of 86.)

Of particular importance to this Court was trial counsel's deposition testimony regarding their trial strategy which excluded the assistance of a DNA

---

[20]  For the same factual disputes indicated in these Issues A and B, counsel's failure to challenge the voluntariness of Mitchell's waiver was ineffective assistance.  (Issue E.)  The Government's case against Mitchell hinged largely on Mitchell's statements during the multiple interrogations.  Counsel's ignorance of their client's life history, including his brain damage (as cited in the exhibit-declarations of Drs. Herring (a neuropsychologist), and Morenz and Stewart (physicians)) was ineffective assistance.  As described *supra*, this Court's disregard of the factual disputes was clear error and manifestly unjust.

expert because it made no sense to trial counsel to attack the DNA evidence in this case. (Dkt. 56, Order at pp. 19-20 of 62 (citing Dkt. 49, Ex. 3 at pp. 46-47 of 86; Dkt. 49, Ex. 1 at pp. 43& 87 of 109).) However, this version of counsel's strategy fails to explain or acknowledge counsel's decision to attack the DNA evidence at trial using a scientific theory they created without expert assistance. Specifically, trial counsel attempted to create doubt during trial with a theory that Mitchell's DNA could have been lifted and transferred to evidence by somebody else. Their deposition testimony reveals that trial counsel formulated this scientific defense theory on their own without the assistance of a DNA expert. (RT 3171.) The theory was offered to the jury for one reason in contradiction to trial counsel's testimony; it was offered to "suggest[] to the jury that Mr. Mitchell wasn't there or that . . . Orsinger committed all these crimes." (Dkt. 56, Order at p. 20 of 62 (citing Dkt. 49, Ex. 3 at pp. 46-47 of 86; Dkt. 49, Ex. 1 at pp. 43 & 87 of 109).) While the deposition testimony reveals a specific strategy to avoid any scientific challenge to DNA evidence, the record reveals an opposite strategy plan. It is clear from the record that counsel attacked the DNA evidence with a flawed scientific theory. In clear error, this Court found trial counsel's DNA strategy to be reasonable by relying on trial counsel's stated trial strategy at the deposition without resolving a directly conflicting DNA strategy revealed on the record at trial through trial counsel's cross examination of the Government's DNA expert.

Assuming the accuracy of trial counsel's deposition testimony, counsel either reasonably reversed its DNA strategy near the time of trial after it was too late for counsel to consult an expert or counsel reasonably reversed the strategy and unreasonably decided as lay persons to create a scientific defense without the assistance of an expert. By failing to consult a DNA expert at any point after deciding upon a strategy to challenge the DNA with science, trial counsel unreasonably missed relevant, accurate scientific data that would have replaced their implausible transference theory and with a well-developed theory based in

23

science lending reasonable doubt to the accuracy of DNA testimony and the relevance of DNA evidence.

This Court found that Mitchell did not prove that a DNA expert was available to trial counsel or that the assistance of a DNA expert was more than speculative. However, Mitchell provided this Court with a declaration from a DNA expert, the same expert who informed and educated Mitchell's present counsel about the flaws in the Government expert's math and science testimony. If further proof of the value of an expert DNA witness was necessary, this Court could have allowed Mitchell's DNA expert to testify in a deposition or at evidentiary hearing. It was clear error for this Court to allow the Government to present testimony of trial counsel's strategy and the reasonableness of trial counsel's strategy without allowing Mitchell to present more than an expert declaration. For the court to fault Mitchell for this unbalanced presentation of testimony which the court created is also clear error.

This Court was also swayed by trial counsel's belief that any examination of the DNA evidence with an expert's assistance was "not likely to produce an argument that was completely exculpatory." (Dkt. 56, Order at p. 20 of 62 (citing Dkt. 49, Ex. 3 at pp. 46-47 of 86; Dkt. 49, Ex. 1 at pp. 43 & 87 of 109).) However, the declaration of Mitchell's expert Dr. Fedor challenges this assumption of trial counsel. (Mitchell's Exhibit 141.) Dr. Fedor provided this Court with an accurate and scientifically sound assessment of the DNA data which provides a readily-available theory casting reasonable doubt on the value of the DNA evidence. Specifically, the data removes Mitchell's DNA from the murder scenes and puts the burden back on the Government to prove by other means that Mitchell was present. That a knife with DNA that probably matches a victim's DNA was discovered at Mitchell's residence places the knife at the scene but not Mitchell. This Court accepts trial counsel's assumption that trial counsel had to prove that DNA evidence was "completely exculpatory." (Dkt. 56, Order at p. 20

24

of 62 (citing Dkt. 49, Ex. 3 at pp. 46-47 of 86; Dkt. 49, Ex. 1 at pp. 43 & 87 of 109).)  However, a reasonable trial counsel would have understood the burden to create a reasonable doubt that forensic evidence inculpated their client.  It is not defense counsel's burden to completely exculpate or prove innocence.  It is clear error for this Court to shift the burden to defense counsel to prove innocence.

This Court quotes passages from trial counsel's depositions stating their belief that Mitchell's confession obviated any DNA defense.  (Dkt. 56, Order at p. 19 of 62 (citing Dkt. 49, Ex. 1 at pp. 34 & 87 of 109; Dkt. 49, Ex. 3 at pp. 28-29 of 86.)  However, despite Mitchell's confession and other inculpatory evidence, counsel did attempt without expert assistance to create a scientific defense theory. In fact, all of trial counsel's questioning of the Government expert's DNA reveals that counsel believed that a DNA defense was reasonably necessary despite any other evidence against Mitchell.  Either counsel meant to create reasonable doubt or lingering doubt with their questions to the DNA expert.  Whatever the strategy, it was unreasonable to challenge the DNA testimony with only a lay person's understanding of DNA when experts were available to counsel.

In light of the conflict between the trial record and trial counsel's deposition testimony, it was clear error for this court  to make a finding that trial counsel maintained a trial strategy of avoiding a cross examination of the Government's DNA expert which challenged the science of the DNA evidence.  This court could not have made a requisite finding regarding the potential usefulness of a DNA expert because it did not hear the testimony of the defense's DNA expert; an evidentiary hearing or deposition was warranted, and the failure to provide Mitchell such discovery was clear error.  Further, this court clearly erred in its finding that counsel reasonably concluded that statements in evidence and other evidence obviated a science-based DNA challenge since trial counsel attempted a science-based DNA challenge at trial and in direct contradiction to their deposition testimony.  Trial counsel's behavior at trial supports the conclusion that

25

their strategy was to create reasonable doubt or lingering doubt regarding the DNA evidence using a scientific theory developed by non-scientists.

### Issues H-L, O & P.  Jury and Jury-Selection Issues

Mitchell has raised several issues with respect to jury selection at his trial. In denying these claims, the Court notes that it "observed counsel's actions over the course of 13 days of jury selection and readily concludes that his conduct during voir dire was reasonable and vigorous...." (Dkt. 56, Order at p. 23 of 62.) Without further factual development, all this Court is left with are the actions that took place in this Court approximately seven years ago.  Presumably had this Court had serious concerns about anything happening in her courtroom in a federal death penalty trial, it would have taken some action at the time.  Hence relying on the Court's recollection and determination of factual issues without expanding the record beyond what occurred in court places an elevated and unfair burden on Mitchell.

Mitchell particularly draws the Court's focus to Claim O.  The Ninth Circuit denied a related appellate claim, finding that Mitchell failed to "show that the underrepresentation of Native Americans on venires such as his was either substantial or systematic." (*United States v. Mitchell*, 502 F.3d 931, 951 (9th Cir. 2007); *see also* Dkt. 56, Order at p. 57 of 62.)  The Ninth Circuit's decision essentially called for further factual development, yet despite Mitchell's request for such, this Court denied him relief without a hearing.

Jurors in Arizona are selected from voter registration rolls.  Thus, only those who actually register to vote have the potential of being called as a juror.  Of those Native Americans who register to vote and who are called, the majority of that group appears to claim hardship and is dismissed.  The practical effect of this is systemic exclusion of Native Americans from juries, which violates the fair cross-section of the community requirements. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L. Ed. 2d 579 (1979).  To fully develop this highly fact intensive issue,

26

Mitchell would require extensive discovery and fact development going beyond the limited record-based related issue raised on appeal.  There are disputed issues of fact that needs to be resolved and denial on the pleadings alone is manifestly unjust because it forces Mitchell to rely on a grossly deficient record.

### Issue Q.  The prosecution's failure to produce exculpatory evidence violated Mitchell's constitutional rights

Mitchell illustrated in his amended § 2255 motion how the Government violated his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), when it, quite literally at the last possible moment – gave trial counsel a letter from the Navajo Nation stating its opposition to capital punishment in Mitchell's case.  This issue was raised on direct appeal, and the Ninth Circuit agreed that the letter was *Brady*-type material, but denied Mitchell relief, finding no prejudice.  *Mitchell,* 502 F.3d at 989.

Mitchell raised this issue in the § 2255 proceeding because the prejudice from the Government's violation requires extra-record factual development.  Because the issue on its face is fundamentally different from the appellate issue, it is not barred, and this Court's failure to consider it and allow fact development resulted in manifest injustice.

Had counsel received the Navajo Nation's letter in a timely fashion, if they had not already, competent counsel would have been on notice to investigate and develop the Navajo Nation's position on the death penalty, for possible mitigation.  In addition to a very long history of opposition to capital punishment, counsel would have uncovered how damaging an execution would be to both the Navajo Nation itself and the victim's family.  (*See* Exhibit 168, Dineh Medicine Association Resolution; Exhibit 169, Hilary Weaver Dec; and Exhibit 167, Navajo Nation Death Penalty Report at p. 2.)

At the penalty phase, the Government made highly prejudicial and improper comments related to Mitchell and his Navajo background.  Mitchell can show how

counsel performed deficiently by , never informed the jury how and why the ultimate affront to the Diné was the Federal Government seeking the death penalty against one of its members. The gravity of this cultural divide was only explained to the jury in the barest of terms through one written document. (At an evidentiary hearing, Mitchell would present prejudice on this issue by way of testimony from Diné regarding their position.)

A collateral claim of ineffective assistance of counsel is a mixed question of fact and law. *Beardslee v. Woodford*, 358 F.3d 560 (9th Cir. 2004). In denying this claim on direct appeal, the Ninth Circuit was limited to the appellate record, and on the record alone, it found no prejudice. Mitchell requires further factual development to establish that he was prejudiced by the Government's failure to timely produce this document, and by its misconduct in its case in aggravation regarding the Navajo Nation. These are disputed factual issues that have not been resolved, so this Court's failure to grant fact development and an evidentiary hearing was clear error.

The Court found that Mitchell has raised insufficient grounds to "overcome the presumption against consideration of successive claims." (Dkt. 56, Order at p. 58 of 62.) Finding the claim "successive" is clear error; Mitchell respectfully request that the Court reconsider this finding. The issues Mitchell seeks further factual development on were not available on direct appeal as they are outside of the record. Furthermore, as the Ninth Circuit has explained, "[s]hould doubts arise in particular cases as to whether two grounds are different or the same, they should be resolved in favor of the applicant." *Polizzi v. United States*, 550 F.2d 1133, 1136 (9th Cir. 1976).

///

///

///

***Issue R.  The Government's collusion with the Navajo Nation violated Mitchell's constitutional rights***

In Claim P of his § 2255 motion and Claim R of his amended § 2255 motion, Petitioner illustrated how the federal government and tribal investigators colluded to deprive Mitchell of his constitutional rights.  This Court denied Mitchell's claim, without any factual development, contending that this claim was already denied by the Ninth Circuit on direct appeal.  Despite Petitioner's statement that the claim as currently presented relies on extra-record evidence unavailable to appellate counsel and requires further factual development, this Court found the claim to be barred and denied it without reaching the merits. (Dkt. 56, Order at p. 58 of 62.)  Petitioner respectfully requests that this Court reconsider this decision and either order an evidentiary hearing on this issue or grant Mitchell full relief as requested in his §2255 motion and amended motion.

Appellate counsel for Mitchell raised the collusion issue based entirely off of the trial record, which focused on Johnny Orsinger and almost exclusively on the acts of the federal agents involved in Mitchell's arrest.  (Appellant's Opening Brief, pp. 70-76.)  The Ninth Circuit denied this claim finding that Mitchell had failed to meet his burden.  *Mitchell*, 502 F.3d at 961. In so finding, the Ninth Circuit noted that this Court had found the testimony of federal agents Purcell and Duncan credible, and therefore found the agent's testimony credible that there was insufficient evidence to arrest Mitchell on federal charges and there was no deliberate attempt to deny Mitchell his federal rights.  *Id*. at 961-62.

Post-conviction counsel sought to expand the record on this issue.  First, post-conviction counsel has established that agents Purcell and Duncan's credibility is in question because of the statements concerning sufficiency of the evidence.  As Mitchell pointed out in his amended motion and reply, Mitchell was arrested tribally for robbery.  The agents testified that there was not enough evidence to arrest Mitchell on federal charges.  It is entirely illogical that there

would be enough evidence to arrest Mitchell tribally for robbery but not enough to arrest him federally for the same charge. Compare 17 N.N.C. § 491 to 18 U.S.C. § 2111.

Further, as explained in the amended motion, Mitchell appeared in the Navajo Nation court on November 7, 2001 and allegedly pled guilty to one count of criminal damage, a misdemeanor. (Dkt. 30, Amended Motion at p. 217 of 280.) As Mitchell points out in his reply, incarceration is not a possible penalty for this offense. (Dkt. 55, Reply at p. 55 of 62.) Mitchell was thus illegally held in tribal custody such that FBI agents could continue to interrogate him.

Petitioner thus sought to focus the inquiry largely on the abuse of the Navajo Nation courts and the manner in which the federal agents manipulated those courts. This Court, however, denied Mitchell's claim, without any discovery on this issue, concluding that despite the new evidence, the claim rested "on the same ground as that presented on appeal and is therefore impermissibly successive." (Dkt. 56, Order at p. 58 of 62.) This Court committed clear error and its ruling was manifestly unjust.

Mitchell's burden is to show actual collaboration intended to deprive Mitchell of his constitutional rights. *Mitchell*, 502 F.3d at 961; *United States v. Michaud*, 268 F.3d 728, 735 (9th Cir. 2001). There is no debate that the Navajo investigators and the federal agents actually collaborated. The issue is entirely whether Mitchell can prove the intent element. Mitchell has pled facts that, if proven, establish he was illegally confined, that the federal agents testified untruthfully, that there was sufficient evidence to arrest Mitchell federally, and that the only reason he was illegally kept in tribal custody was to deny him his federal procedural rights. Indeed Mitchell has consulted an expert on Navajo law, Kathleen Bowman, the Public Defender for the Navajo Nation, and she has been able to clarify issues related to Navajo criminal law and procedure. Based on

30

discussions with Ms. Bowman, post-conviction counsel would be able to provide at establish at an evidentiary hearing that:

### (1)    Mitchell's extended detention (November 7-29) in tribal custody violated Navajo Law

According to the Judgment and Mittimus filed in the District Court of the Navajo Nation, Mitchell pled guilty to one charge of criminal damage in violation of 17 N.N.C. § 380.A.1.  This document indicates that sentencing was deferred until a sentencing hearing could take place.  The next filing in tribal court in this case seems to have been an order of indefinite continuance of Mr. Mitchell's case on January 24, 2002 stating that Mr. Mitchell was in federal custody.  This latter filling appears to indicate that no sentencing hearing was ever scheduled for Mr. Mitchell.

The question of the legality of Mitchell's detention depends entirely on the offense upon which he was convicted.  In this case, Mr. Mitchell was convicted of violating 17 N.N.C. § 380.A.1.  The penalty for a violation of this code section is laid out in 17 N.N.C. § 380.B and provides:

> A.    The trial court shall review all charges to ascertain whether there is a personal victim of the offense(s) and whether restitution or nályééh shall be paid to the victim(s).
> B.    The trial court may utilize the services of the Navajo Peacemaker Court to determine nályééh and make a sentencing recommendation regarding that sentence, and the trial court may require the defendant to pay the fee of the peacemaker.
> C.    The trial court may consider the imposition of a peace or security bond upon the defendant, including the pledges of family or clan sureties.
> D.    Upon the imposition of a bond or security pledges, the district Office of Probation and Parole shall counsel the sureties of the consequences of breach of the bond or pledge.
> E.    The trial court shall consider the utility of labor or community service sentences, under the supervision of the Navajo Nation Department of Public Safety or a public or private organization, including the chapter in which the defendant resides.

17 N.N.C. § 380.B does not provide for any jail term for a conviction of 17 N.N.C. § 380.A.1.

31

An individual in a Navajo Nation court may only be punished in a manner consistent with Navajo law.  A punishment in addition to that recognized by the law is cruel and unusual punishment and violates the Navajo Bill of Rights.  *See* 1 N.N.C. § 9; *Martin v. Antone*, No. SC-CV-48-02, slip. op at 2 (Navajo Supreme Court, August 13, 2003).

Mitchell's incarceration from November 7 until November 29, when he was taken from tribal custody by federal agents, violated Navajo law.

**(2)     A factual dispute exists whether the tribal prosecutor's decision to not pursue the charged robbery offense was influenced by the federal government**

Mitchell was arrested on November 4, 2001, on a tribal warrant for armed robbery.  Armed robbery is considered a much more serious offense in the Navajo criminal justice system than criminal damage.  Indeed, looking at the penalties for robbery and armed robbery, both carry the maximum penalty available under Navajo law - 365 days imprisonment.  *See* 17 N.N.C. §§ 491.B.1, 492.B.  It is highly suspicious where a man is charged with one non-serious crime such as criminal damage, and one serious crime such as armed robbery, the prosecutor would drop the robbery charge and pursue criminal damage unless there was insufficient evidence to convict on the more serious charge.  However, given that Mitchell's federal co-defendant Jason Kinlicheenie pled guilty to the armed robbery of the Trading Post on November 5, 2001, it is difficult to believe there was insufficient evidence.[21]

The practical effect of not pursuing the armed robbery charge was to deprive Mitchell of an attorney.  On the direct appeal, the Ninth Circuit, in a footnote, discussed the right to counsel in tribal court.  They noted that:

> The record here shows that the Navajo Tribe at the time of Mitchell's arrest did at least in some circumstances appoint advisors for indigent

---

[21]  Navajo investigators have refused to turn over their files related to Jason Kinlicheenie.

defendants, but these advisors were not necessarily licensed attorneys, and that some such nonlawyer advisor was appointed for Mitchell.

*Mitchell*, 502 F.3d at 960 n.3.  This is not accurate.  At the time of Mitchell's arrest in 2001, the Navajo Nation provided attorneys for indigent people charged with criminal offenses that carried possible jail time.  Because there is no potential for a jail sentence for a charge of criminal damage, the defendant would not be eligible for appointed counsel.  Mitchell was indigent at the time of his arrest.

The Ninth Circuit noted that the Sixth Amendment does not apply in tribal proceedings.  *Mitchell*, 502 F.3d at 960 n.3.  However, where an individual is appointed or retains an attorney in tribal court on a charge such as armed robbery, such appointment implicates the defendant's Sixth Amendment right to counsel in federal court on the same offense.

Had the armed robbery offense not been dropped in the Navajo Nation court, Mitchell would have been entitled to a public defender, and the appointment of an attorney would have implicated Mitchell's Sixth Amendment rights in federal court and limited the government's access to Mitchell without the presence of his attorney.

**(3)    A factual dispute exists whether the federal agent's testimony that there was insufficient evidence to arrest Mitchell on federal charges was credible**

The federal agents testified in a pre-trial hearing in this Court that there was insufficient evidence to arrest Mitchell on federal charges.  The testifying agents stated that this was the reason Mitchell was arrested on tribal charges instead of on federal charges.  *Mitchell*, 502 F.3d at 961.  The agents' testimony difficult to reconcile with certain facts, and thus there credibility is in dispute.

Two days before Mitchell appeared in the district court of the Navajo Nation, Jason Kinlicheenie appeared in that same court charged with armed robbery in violation of 17 N.N.C. § 492.  Kinlicheenie pled guilty to that offense.

Both Mitchell and Kinlicheenie were subsequently convicted of this robbery in federal court.

A tribal arrest requires a warrant or probable cause just as a valid arrest by federal agents. *Compare* 17 N.N.C. § 1803, 1804 to Fed. Rule Crim. Proc. 4, 18 U.S.C. § 3041. The federal robbery statute is identical to the Navajo statute for *Blockburger* purposes. *Compare* 17 N.N.C. § 491 to 18 U.S.C. § 2111. *See Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)

Given the burden placed on the federal government and that the robbery offense is the same in federal and Navajo Nation court, one of Mitchell's alleged accomplices was charged in tribal court with armed robbery, and Mitchell was himself originally arrested for armed robbery, the representations made by federal agents that there was insufficient evidence to charge Mitchell federally, but there was sufficient evidence to charge him in tribal court are not credible. If there was sufficient evidence to charge him in tribal court, there must have been sufficient evidence to charge him federally, and I have to question the justification for pursuing tribal charges.

**(4)  A factual dispute exists whether the collaborative efforts between the federal government and tribal authorities result in an abuse of the Navajo Nation court system, and a violation of the defendant's federal constitutional rights**

These collaborative efforts apparently have a history of resulting in abuse of the Navajo Nation courts and misuse of the Navajo Nation investigators by the United States Attorney's Office. Indeed, it is well known amongst those practicing in the Navajo Nation courts that this is a problem. In a 2003 hearing in the Window Rock District Court, Navajo Prosecutor Leonard Livingston, speaking of the Navajo Nation criminal investigators, stated: "a dilemma [the Navajo criminal investigators] bear, they wear two hats. One is that they answer to the U.S. Attorney's office for all major crimes committed on the reservation; the other is that they answer to the Navajo Nation . . . ." Livingston went on to explain that

34

the Navajo Nation has "no control over the investigators.  I wish I would have ... control over [them] . . . it appears they answer to another entity which is the United States Attorney's office. . . ." *Navajo Nation v. Rafael Rodriguez*, No. SC-CR-03-04 (Supreme Court of the Navajo Nation 2004) - Transcript of Window Rock District Court, Hearing 6.24.2003.[22]

In this case, Mitchell was confined for almost three weeks in tribal custody while federal agents interrogated him at will.  His tribal rights were violated such that he could be kept for federal interrogation.  This is the epitome of the constitutional deprivation exacted by the Navajo Nation courts, the United States Attorney's Office, and the Federal Bureau of Investigations on a defendant's rights.

Mitchell's burden on the collusion issue is something beyond "a bare suspicion." *United States v. Doe*, 155 F.3d 1070, 1078 (9th Cir. 1998).  As the Ninth Circuit has explained, collusion is a highly fact intensive inquiry.  Here, Mitchell has alleged facts that vastly exceed a"bare suspicion" and, had the Court allowed him to prove them, would support a finding of collusion.

This Court, however, denied Mitchell's claim not on the merits, but on a procedural bar, reasoning that the claim is impermissibly successive.  In so doing, this court cites *Molina v. Rison*, 886 F.2d 1124 (9th Cir. 1989).  Mitchell respectfully requests this Court reconsider its reasoning.  While *Molina* does indeed discuss successive claims, it discusses it in the context of successive motions filed under 28 U.S.C. § 2255.  Indeed Molina filed three separate motions under § 2255 and the issue was whether the third motion was successive in relation to claims raised in the first and second post-conviction motions.  *Id*. at

---

[22]  Tribal investigator Louis St. Germane refused to speak with investigators working with post-conviction counsel.  Tribal investigator Esther Charley refused to speak with investigators working with post-conviction counsel absent the presence of an assistant United States Attorney.

1126-27.  This Court also cites *Sanders v. United States*, 373 U.S. 1, 83 S. Ct. 1068, 10 L. Ed. 2d (1963), which, again, is a case where the petitioner filed multiple post-conviction motions under 28 U.S.C. § 2255.  Further the line this Court quotes from *Molina* is followed in the opinion by a series of cases.  Each case cited is a case concerning the filing of multiple post-conviction motions under 28 U.S.C. § 2255.  *See Molina*, 886 F.2d at 1128 (citing  *Lonberger v. Marshall*, 808 F.2d 1169, 1174 (6th Cir.); *In re Shriner*, 735 F.2d 1236, 1240 (11th Cir.1984); *Williams v. United States*, 731 F.2d 138, 141-42 (2d Cir.1984); *Cunningham v. Estelle*, 536 F.2d 82, 83 (5th Cir.1976); *Raulerson v. Wainwright*, 753 F.2d 869, 873 (11th Cir.1985); *Brown v. Peyton*, 435 F.2d 1352, 1354 (4th Cir.1970)).

This is Mitchell's only post-conviction motion filed under § 2255.  As such, he is perfectly within his right to further develop issues originally raised on direct appeal, but to expand those issues beyond the record, as they were so limited on direct appeal.  Indeed as the Ninth Circuit explained in *United States v. Allen*, 157 F.3d 661 (9th Cir. 1998), after citing *Molina*, after an individual files a motion under § 2255, only then are subsequent collateral attacks subject to the rules concerning second or successive motions.  *Id.* at 664, 664-665.

Mitchell certainly concedes the long-standing rule that an issue raised on direct appeal cannot simply be re-raised verbatim in a collateral attack.  However, the rule is: "Grounds which were apparent on original appeal cannot be made the basis for a second attack under § 2255." *Egger v. United States*, 509 F.2d 745, 748 (9th Cir. 1975) (citing *Medrano v. United States*, 315 F.2d 361, 362 (9th Cir. 1963)).  The grounds for Mitchell's post-conviction collusion claim were not apparent at the time of the direct appeal because counsel was limited to the record trial counsel created and, as the Ninth Circuit noted, trial counsel took a very limited interest in this issue and scarcely joined in Orsinger's pre-trial hearing on this matter.  *Mitchell*, 502 F.3d at 960.

In *Polizzi v. United States*, 550 F.2d 1133 (9th Cir. 1976), the Ninth Circuit again confronted this issue. They explained that where the same grounds, or sufficient legal basis for granting the relief sought by the applicant, was brought in the direct appeal, a district court may refuse to entertain the claim brought in a § 2255 unless the petitioner makes a showing of manifest injustice or a change in the law. The Ninth Circuit, in deciding *Polizzi*, relies heavily on the Supreme Court's decision in *Sanders*, 373 U.S. 1. In this decision, the Supreme Court specifically notes the difference between issues raised that are pure questions of law and issues that are questions of fact. The Supreme Court explains that:

> Even if the same ground was rejected on the merits on a prior application, it is open to the applicant to show that the ends of justice would be served by permitting the redetermination of the ground. If factual issues are involved, the applicant is entitled to a new hearing upon showing that the evidentiary hearing on the prior application was not full and fair.

*Id.* at 17.

In the Government's Answer, they contend that this claim was procedurally barred in a similar manner to this Court's ultimate ruling. In support thereof, the Government cited *Reed v. Farley*, 512 U.S. 339, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994) focusing in particular on Justice Scalia's concurrence and quoting: "claims will ordinarily not be entertained under § 2255 that have already been rejected on direct review." The government, however, failed to put this quote in context. The full excerpt illustrates that Justice Scalia first explained the rules of procedural default and then made the above quoted statement, concluding that: "Together, these two rules mean that 'a prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim.'" *Id*. at 358 (quoting *Withrow v. Williams*, 507 U.S. 680, 721, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993) (Scalia, J., concurring in part and dissenting in part.).

The key elements in both *Reed* and *Sanders* is a prior opportunity to be heard. *Sanders* requires that an individual who alleges facts that would entitle him

37

to review receive a hearing if a prior hearing was not full and fair.  Mitchell has had no such prior hearing.  If *Sanders* requires further process for an individual who has already had the benefit of one hearing, it would be remarkable jurisprudence to deprive Mitchell of a hearing because he has not previously had one.

This Court did previously hold a hearing on collusion with respect to Johnny Orsinger.  In the pretrial context, Mitchell's attorneys failed to join in the motion Orsinger's attorneys filed with respect to collusion.  *Mitchell*, 502 F.3d at 960.  This Court granted Orsinger a pre-trial evidentiary hearing, which Mitchell's counsel failed to participate in or otherwise join.  *Id*.  This Court made no findings with respect to the delay Mitchell suffered before being brought for presentment and no findings with respect to collusion.  *Id*.  Appellate counsel then briefed this issue, over the course of six pages, based purely on a record that Mitchell's counsel had failed to establish.  (Appellant's Opening Brief at 70-76.)

Only via post-conviction litigation has Mitchell been able to investigate this issue and begin to put together a fact intensive record that is required to establish collusion.  No expert on Navajo law was previously consulted, and the Ninth Circuit apparently relied on inaccurate descriptions of Navajo law in denying Mitchell's claim.  *See, e.g., Mitchell*, 502 F.3d at 960 n.3.  Trial counsel failed to compile complete records from the Navajo Nation court or even cross-examine the witnesses who testified in Orsinger's pre-trial hearing.  *Id*. at 960.

Mitchell respectfully requests that this Court afford Mitchell his right to full and fair litigation and reconsider its decision and either grant Mitchell further factual relief, or in the alternative full relief as requested in his amended motion.

///

///

///

***Issue S.  Mitchell was incompetent from the conclusion of the guilt phase through the penalty phase, and thus deprived of his constitutional rights***

In rejecting this issue, the Court again adopted counsel's testimony that there were no "'red flag[s],'" there was "nothing to alert counsel that their client may have been incompetent," or that Mitchell was even abusing substances while he was in the County Jail.  (Dkt. 56, Order at pp. 50-52 of 62.)

Mitchell filed an exhibit that showed that, during the eighteen months of their representation of Mitchell, Bartolomei's, Sears' and Williams' total time at the County Jail, to meet with Mitchell, was 44 hours and 8 minutes.  44 hours throughout 18 months.  Indeed, learned counsel Sears met with Mitchell for barely an hour altogether.  Ockenfels met with Mitchell longer than the two experienced capital defenders on the team combined.  (Mitchell's Exhibit 146.)  Mitchell filed declarations from two then-County jail inmates who declared that Mitchell ingested large quantities of many illicit substances before his trial.  (Mitchell's Exhibits 97, 161.)

Given counsel's obvious inexperience with their client, it is not difficult to see why none saw any "red flags" indicating he was incompetent to assist them.  Yet, this Court ignored Mitchell's evidence, and accepted counsel's disputed assertion that Mitchell could not have obtained illicit substances in the Maricopa County Jail. (*Compare* Dkt. 49, Ex. 2 at pp. 28-29 & 66-67 of 92, *with* Mitchell's Exhibits 97 and 161; *see also* Mitchell's Exhibit 135 (discussing Mitchell's pre-trial substance abuse).)  Also, in denying the issue, the Court never acknowledged that Sears moved to withdraw, and said Mitchell had stopped communicating with his defense team.  Counsel however never realized that this break-down in their

relationship with their client was the "red flag" that Mitchell was decompensating to incompetence after the jury had convicted him of capital murder.[23]

Mitchell presented contested issues of fact showing why he was entitled to an evidentiary hearing. This Court's failure to grant a hearing was clear error and manifestly unjust.

### Issue T.  Mitchell's conviction and sentence should be reversed because the victims' family's conduct unduly prejudiced Mitchell at the guilt and penalty phases

Mitchell explained how his right to a fair trial was violated by the victim's family wearing "In Memory Of" buttons in court. He alleged counsel provided ineffective assistance for failing to adequately object to the violations, and create an adequate appellate record with respect to this issue. With respect to the former issue, this Court found the claim to be barred from review. (Dkt. 56, Order at p. 25 of 62, n.9.) It denied relief on the latter issue because counsel was not unreasonable in handling the situation as they saw fit. Because counsel failed to obtain a button for the record, there is no button for appellate review. The Court nonetheless relied on counsel's testimony – seven years after the fact – that the buttons were "not very big." (*Id*. at p. 25 of 62.)

Mitchell moved for leave to interview the jurors in this case, but this Court denied the request. (*See* Issue K.) Undersigned counsel have been unable to acquire a button despite diligent efforts. This Court has not allowed post-conviction counsel any factual development by which Mitchell may be able to obtain a button. Thus the only evidence in the record is trial counsel's deposition in response to Mitchell's claims of ineffective assistance that the button was small

---

[23]   Counsel's failure to recognize Mitchell's deteriorating mental condition is another reason why this Court should not have relied entirely on counsel's depositions regarding their purported "strategy" and decision making in reaching it.

40

and someone "would have had to have been fairly close" to have seen it.  (Dkt. 56, Order at p. 25 of 62.)

There is a presumption in favor of granting evidentiary hearings in § 2255 proceedings unless the records conclusively show that the movant is not entitled to relief.  This Court, however, applied the standard incorrectly and unjustly relied on trial counsel's deposition testimony, while making no credibility findings or allowing counsel to expand the record under Rule 7.  A deposition of trial counsel, either denying or admitting deficient performance, is not dispositive on the issue of ineffective assistance of counsel claim.  *See generally Rompilla v. Beard*, 545 U.S. 374, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005); *Libberton v. Ryan*, 583 F.3d 1147 (9th Cir. 2009).  *See also Williams v. Ryan*, --- F.3d ----, 2010 WL 4188304 (9th Cir. 2010) (The district court abused its discretion in determining these issues on the basis of the documentary evidence alone. This case is not one of the "rare instances" where "credibility may be determined without an evidentiary hearing.") (quoting *Earp v. Ornoski*, 431 F.3d 1158, 1169-70 (9th Cir. 2005))

Mitchell has presented disputed facts with respect to this claim.  Mitchell explained how the buttons worn were prejudicial under Ninth Circuit precedent. *Musladin v. Lamarque*, 427 F.3d 653 (9th Cir. 2005), *vacated on other grounds, Carey v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006).  And the Ninth Circuit, on direct appeal in this case, stressed the deficiency of the record before it.  *Mitchell*, 502 F.3d 931, 972 (9th Cir. 2007).  The minimal record on this issue requires further factual development such that Mitchell might use this court's subpoena power to attempt to acquire a pin and allow this court to make credibility findings with respect to counsel's representations concerning this issue.  This Court's failure to permit fact development was manifestly unjust and clear error.

**D.      Conclusion**

The Court's unilateral grant of discovery and counsel's subsequent testimony , along with this Court's reading of a "cold record without the opportunity to hear and observe the witnesses in order to determine their credibility," (*Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir. 1980)), resulted in manifest injustice to Mitchell.  Further, the Court's resolution of any factual disputes between the Answer and the unilateral discovery to the Government and Mitchell's motion and exhibits was clear error because the Court did not have the opportunity to assess trial counsel's demeanor and credibility, and to hear Mitchell's other evidence at a hearing.

This Court should alter or amend the judgment denying and dismissing his amended § 2255 motion, grant Mitchell's motion for  reconsideration and order an evidentiary hearing.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED:  October 28, 2010        By___*/s/ Statia Peakheart*___
                                                  STATIA PEAKHEART
                                                  Deputy Federal Public Defender

42

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Vincent Q. Kirby, AUSA

I hereby certify that on October 28, 2010, I electronically transmitted the attached document on the following, who are not registered participants of the CM/ECF System:

Capital Case Staff Attorney

Evo A. De Concini U.S. Courthouse

405 West Congress Street, Suite 1500

Tucson, AZ 85701-5010

/s/ Statia Peakheart

43