HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
JONATHAN C. AMINOFF (No. 259290)
(E-Mail:  Jonathan_Aminoff@fd.org)
CELESTE BACCHI (No. 307119)
(E-Mail:  Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-5374
Facsimile:  (213) 894-0310

Attorneys for Defendant/Movant
LEZMOND CHARLES MITCHELL

# THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Charles Mitchell,<br><br>Defendant/Movant,<br><br>v.<br><br>United States of America,<br><br>Plaintiff/Respondent. | Civil No. 3:09-CV-08089<br>(Criminal No. 3:01-CR-01062-NVW-1)<br><br>**<u>DEATH PENALTY CASE</u>**<br><br>Honorable Neil V. Wake<br>United States District Judge<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)(6)**<br><br>**Oral Argument Requested** |

# THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Charles Mitchell<br><br>        Defendant/Movant,<br><br>v.<br><br>United States of America,<br><br>        Plaintiff/Respondent. | Civil No. 3:09-CV-08089<br>(Criminal No. 3:01-CR-01062-NVW-1)<br><br>**DEATH PENALTY CASE**<br><br>Honorable Neil V. Wake<br>United States District Judge<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)(6)**<br><br>**Oral Argument Requested** |

Movant Lezmond Mitchell moves pursuant to Federal Rule of Civil Procedure, Rule 60(b)(6) for relief from the judgment of this Court due to the extraordinary circumstances of this case.  This motion is based on the attached memorandum of points and authorities and all the files and records of this case.

Respectfully submitted,

Dated: March 5, 2018

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

In this death-penalty case, appointed post-conviction counsel for Lezmond Mitchell sought to conduct a reasonable investigation in support of Mitchell's post-judgment motion to vacate his conditions and sentences.  Part of that investigation should have included interviewing the jurors from Mitchell's trial, but Mitchell's counsel was barred from speaking with the jurors.  The Supreme Court subsequently issued *Peña-Rodriguez v. Colorado,* 137 S. Ct. 855 (2017), which casts doubt on this Court's prior ruling and warrants re-opening this case to allow Mitchell to brief his right to access the jurors from his trial.

## II.  BACKGROUND

This Court sentenced Lezmond Mitchell to death on September 15, 2003.  *United States v. Mitchell*, CR-01-1062, Dkt. No. 425.  The Ninth Circuit affirmed Mitchell's convictions and sentences, *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007), and the Supreme Court denied certiorari.  *Mitchell v. United States*, 553 U.S. 1094 (2008).

On June 8, 2009, Mitchell moved to vacate his convictions and sentences in this Court, pursuant to 28 U.S.C. Section 2255, *Mitchell v. United States*, CV-09-8089, Dkt. No. 9.  Before filing his Section 2255 motion, however, Mitchell moved for authorization to interview the jurors from his capital trial.  *Id*. at Dkt. No. 1.  Leave of court was required pursuant to a District of Arizona rule that prohibits attorneys from contacting jurors after trial unless they submit written interrogatories to the district court "within the time granted for a motion for a new trial" and show "good cause" for the interview.  D. Ariz. Loc. Civ. R. 39.2(b); D. Ariz. Loc. Crim. R. 24.2.  The government opposed the motion.  Dkt. No. 18.

This Court denied Mitchell's request to interview the trial jurors on two grounds.  First, it indicated that Mitchell had not followed the local rule's procedures regarding

1

submitting proposed interrogatories and an affidavit,[1] and filing within the time granted for a motion for a new trial. Dkt. No. 31. Alternatively, the district court concluded that Mitchell had not shown "good cause" for contacting the jurors. *Id.* Mitchell then amended his Section 2255 motion to include a claim that this Court violated his constitutional rights by denying him access to the jurors. Dkt. No. 30 at 173.

This Court subsequently denied Mitchell's Section 2255 motion without holding an evidentiary hearing. Dkt. No. 56. Mitchell appealed on several grounds, including the denial of his motion to interview jurors. The Ninth Circuit's opinion affirming the denial of his Section 2255 motion does not address the juror interviews. *Mitchell v. United States*, 790 F.3d 881 (9th Cir. 2015). The Supreme Court denied certiorari. *Mitchell v. United States*, 137 S. Ct. 38 (2016).

In its recent decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct 855 (2017), the Supreme Court established that Mitchell was erroneously denied the opportunity to interview the jurors in his case. This error prevented Mitchell from presenting a fully investigated Section 2255 motion to this Court, and prevented the Court from conducting a full merits determination resulting in a "defect in the integrity of [his] federal habeas proceeding." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). Mitchell moves to re-open the Section 2255 litigation to correct the defects in the integrity of the post-conviction proceedings that deprived him of a resolution of his claims on their merits.

### III.   ARGUMENT

The central concern of Federal Rule of Civil Procedure 60(b)(6) is that justice is done. *Klapprott v. United States*, 335 U.S. 601, 615 (1949). Accordingly, Rule

---

[1] Mitchell submits that Local Rule 39.2 is unduly burdensome and should not impact Mitchell's ability to conduct a reasonable investigation including informal interviews with jurors. If, however, the Court grants this motion but insists on Mitchell's compliance with Local Rule 39.2, Mitchell will submit interrogatories as directed by the Court.

2

60(b)(6) "vests power in courts . . . to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Id*. at 615. Pursuant to Rule 60(b)(6), a party can seek relief "from a final judgment, order, or proceeding" and request reopening of his case, for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) "reflects and confirms the courts' own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233-34 (1995) (quoting *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238, 244 (1944).

The Circuit Courts have long identified Rule 60(b)(6) as "a grand reservoir of equitable power," *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009) (quoting *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992)), that affords courts the discretion and power "to vacate judgments whenever such action is appropriate to accomplish justice." *Gonzalez*, 545 U.S. at 542, (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)). A court's ability to grant relief under Rule 60(b), is constrained only by the requirements that a petitioner "demonstrate both the motion's timeliness and … that 'extraordinary circumstances justif[y] the reopening of a final judgment.'" *Christeson v. Roper*, 135 S. Ct. 891, 895-96 (2015) (quoting *Gonzalez*, 545 U.S. at 535).

Rule 60(b), "like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings" and "has an unquestionably valid role to play in habeas cases." *Gonzalez*, 545 U.S. at 534. District courts have jurisdiction to consider Rule 60(b) motions in habeas proceedings when such motions "attack[ ] not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceeding." *Gonzalez*, 545 U.S. at 532. Thus, a district court can consider a Rule 60(b) motion when a petitioner "asserts that a previous ruling which precluded a merits determination was in error — for example, a denial for such reasons as failure to exhaust, procedural default or statute-of-limitations bar." *Id*. at 532 n.4.

3

Rule 60(b) is particularly important where federal review of the merits of a petitioner's claims has been limited. *Phelps v. Alameida*, 569 F.3d 1120, 1140 (9th Cir. 2009) ("a central purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent the true merits of a petitioner's constitutional claims from ever being heard.").

## A.    The Lack of Due Process Afforded to Mitchell Constitutes an Extraordinary Circumstance Justifying Relief

Post-conviction counsel in a capital case is duty-bound to conduct "an aggressive investigation of all aspects of the case." American Bar Association ("ABA") 2003 Death Penalty Guidelines 10.15.1(E)(4). The commentary to the ABA Death Penalty Guidelines explains that post-conviction counsel must conduct a "thorough, independent investigation" of, *inter alia*, juror misconduct, because "the trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case." 31 Hofstra L. Rev. 913, 1085-86 (2003).

In the course of litigating his Section 2255 motion, Mitchell was denied the ability to conduct the type of investigation mandated by the ABA. Intervening Supreme Court caselaw reaffirms that this denial, which precluded a full and fair merits determination, was erroneous.

The Supreme Court's recent decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), supports Mitchell's case for interviewing the jurors and demonstrates the error of this Court's decision. In that case, Peña-Rodriguez's counsel was permitted to speak with the jurors, and two jurors informed counsel that another juror had expressed anti-Hispanic bias toward the defendant and his alibi witnesses. *Id.* at 861. Defense counsel ultimately submitted signed affidavits from those jurors, which memorialized the racist comments made by another juror. *Id.* at 862. Despite this evidence of juror misconduct, the trial court denied the defense motion for a new trial, finding that the affidavits were not admissible to impeach the verdict under Colorado's equivalent to Federal Rule of Evidence 606(b), which renders inadmissible virtually any post-verdict

4

juror statement concerning the contents of the jury's deliberations. *Id.* at 862. The Colorado Supreme Court affirmed, and the Supreme Court granted certiorari to decide if racial bias should be an exception to the general, firmly rooted provisions behind Rule 606(b). *Id.* at 862-63. The Supreme Court reversed, finding that the Sixth Amendment requires that the no-impeachment rule give way in order to permit a trial court to consider evidence that a juror relied on racial stereotypes or animus to convict a criminal defendant. *Id*. at 869. The Court reasoned that racial bias is such a stain on American history and notions of fair justice, and such a clear denial of the jury trial guarantee, that general evidence rules must be modified to root out racism in the criminal justice system. *Id.* at 871.

It is uncontroverted that the death penalty has a long history of racial injustice. Indeed, just last term the Supreme Court reversed a Texas capital conviction in which a man's death sentence may have been based on his race. *Buck v. Davis*, 137 S. Ct. 759 (2017). The United States government has a particularly shameful history of oppressing the Native American people. *See, e.g., Mesclaero Apache Tribe v. Jones*, 411 U.S. 145, 152 (1973) ("The intent and purpose of the Reorganization Act was 'to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism.'") (quoting H.R.Rep.No.1804, 73d Cong., 2d Sess., 6 (1934)). Indeed, in this case, the government arbitrarily pursued a death sentence pursuant to "an aggressive expansion of the federal death penalty" despite strong opposition from the Navajo Nation, the victims' family, and the local United States Attorney's Office. *Mitchell*, 790 F.3d at 894-897 (Reinhardt, J., dissenting). Mitchell was then tried before a jury that consisted of only one Native American. The jury was picked from a 207-person venire which included 29 Native Americans. Of those 29 people, four were excluded based on their use of Navajo as their first language, RT 38, 119, 601-602, 1174, and eight more were excluded due to their Navajo beliefs in opposition to the death penalty. RT 198-99, 336, 988, 1262-63, 1424, 1684, 2256. In fact, when the government attempted to exclude the lone

surviving Native American juror, the Court sustained Mitchell's *Batson*[2] objection and denied the government's strike.  RT 2506, 2509-13.  The government was, however, successful in removing the only African American juror on the venire.  RT 2514-16.  Given the severity of Mitchell's sentence, and the racial undertones of this capital prosecution, Mitchell should be permitted to conduct an investigation no more intrusive than necessary to determine what role, if any, racial bias played in his convictions and sentences.

The Supreme Court noted in *Peña-Rodriguez* that the "practical mechanics of acquiring and presenting [evidence of juror bias] will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id*. at 869.  In Arizona, however, Local Rule 39.2 goes far beyond *limiting* counsel's contacting with jurors.  Rather, it *prevents* any contact between the parties and a juror absent permission of the Court on a showing of good cause.  Indeed, of the fifteen district courts in the Ninth Circuit, only two — the District of Arizona and the District of Montana — require a "good cause" showing. D. Ariz. Loc. Civ. R. 39.2(b); D. Ariz. Loc. Crim. R. 24.2; D. Mont. Loc. Civ. R. 48.1(b); D. Mont. Loc. Crim. R. 24.2(b).  Five other district courts require leave of court without a "good cause" showing.  D. Alaska Loc. Civ. R. 83.1(h); D. Or. Loc. R. 48-2; E.D. Wash. Loc. R. 47.1(d); W.D. Wash. Loc. R. 47(d).  Eight district courts in the Ninth Circuit impose no post-trial restrictions on juror contacts whatsoever.

Moreover, Local Rule 39.2 does not apply to habeas petitioners attacking state convictions and sentences in federal district courts in Arizona.  *Ellison v. Ryan*, 2017 WL 1491608 (D. Ariz. April 26, 2017) at *2-3; *Cota v. Ryan*, 2017 WL 713640 (D. Ariz. February 23, 2017) at *2; *Harrod v. Ryan*, 2016 WL 6082109 (D. Ariz. October 18, 2016) at *3.  As a practical matter, this means that all 116 inmates on death row in

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

6

Arizona[3] are free to conduct a reasonable investigation by informally interviewing their jurors and presenting the fruits of that investigation in support of their federal habeas petitions to federal district courts in Arizona.  But Mitchell, solely by virtue of the fact that he was prosecuted federally, is barred from conducting that same reasonable investigation.  Thus Mitchell is left with no mechanism, practical or otherwise, for investigating the type of misconduct at issue in *Peña-Rodriguez*.

Ultimately, the *Peña-Rodriguez* case emphasizes that the specter of racial bias is an issue so repulsive that exceptions should be made to general rules to ensure that racism has not influenced criminal convictions or sentences.  The Supreme Court has also emphasized the importance of investigation in the post-conviction context.  *See, e.g., Martinez v. Ryan*, 566 U.S. 1, 13 (2012) (explaining that post-conviction ineffective assistance of counsel claims can require extensive investigation such that an inmate's ability to file such a claim is significantly diminished absent the assistance of post-conviction counsel).  On balance, *Peña-Rodriguez* establishes that criminal defendants must be allowed to pursue racial bias issues, and whether this Court sets aside Local Rule 39.2's good cause requirement, or finds that investigating racial bias satisfies the good cause requirement, Mitchell must be afforded the right to investigate.  Mitchell's inability to adequately investigate his case prevented a full and fair merits determination, which warrants re-opening the proceedings under Rule 60(b) and permitting Mitchell to move the Court for an order granting Mitchell access to the jurors from his trial.

**B.    This Motion is Timely**

Mitchell has diligently pursued his rights.  He timely appealed his convictions and sentences in this Court and timely filed his Section 2255 motion and related appeals.

---

[3] https://corrections.az.gov/public-resources/death-row

7

Mitchell has filed this motion under Federal Rule of Civil Procedure, Rule 60(b)(6).  A motion brought pursuant to Rule 60(b)(6) must be filed within a reasonable time to be considered timely.  Rule 60(c)(1).  "What constitutes "reasonable time" depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties."  *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam).

The interest in finality has been minimized by the Supreme Court in the context of a Rule 60(b) motion because the purpose of Rule 60(b) is to create an exception to finality.  *Gonzalez*, 545 U.S. at 520 ("[Finality], standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality.").  Setting aside the first factor, Mitchell has good reason for any delay, as this motion is based on the Supreme Court's recent decision in *Peña-Rodriguez*, which was issued less than a year from the date of filing this motion.  The third factor also weighs in Mitchell's favor because he obviously could not have known how this decision would impact his case before the Supreme Court issued its opinion.  Indeed, the circuit courts have legitimized waiting for subsequent decisions to be issued before filing a Rule 60(b) motion.  *Clarke v. Burke*, 570 F.2d 824, 831-32 (8th Cir. 1978) (where the "movants acted reasonably in waiting for the district court's decision in a later, but related, case before filing the Rule 60(b) motion because it was the unfavorable ruling in the later case that precipitated the need for the Rule 60(b) motion.").  Finally, the government will not suffer prejudice if the Court grants this motion.  While the Supreme Court opinion upon which this motion is based is new, the underlying issue has been previously argued in this case.  As a result, the government should be familiar with these issues and not prejudiced by the timing of this motion.

The primary concern for timeliness is avoiding a scenario where the movant has allowed "the normal appeals channels [to] lapse" or "ignored normal legal recourses" and now seeks a "second bite at the apple."  *In re Pacific Far East Lines, Inc.*, 889 F.2d

8

242 (9th Cir. 1989). That is not the situation here. Mitchell timely moved to interview the jurors in his case. When the Court denied his request, he raised the issue in his Amended 2255 Motion. *Mitchell v. United States*, Case No. 09-CV-8089, Dkt. No. 30, Claim K at 173. When his 2255 Motion was denied, Mitchell raised the issue on appeal. *Mitchell v. United States*, Ninth Circuit Case No. 11-99003, Dkt. Entry 23 at 78.

In *Buck v Davis*, the Supreme Court overturned the Fifth Circuit's denial of a COA and found that Buck had demonstrated entitlement to relief under Rule 60(b)(6). 137 S. Ct. 759 (2017). The Supreme Court reached this decision notwithstanding that Buck's motion primarily relied on the Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), but was filed almost two years after *Martinez* was decided and 8 months after *Trevino* was decided. *Id*. at 767, 771. Mitchell's motion is being filed less than one year after *Peña-Rodriguez* was decided. *Buck* establishes that Mitchell has filed his motion within a reasonable time.

## IV. CONCLUSION

For all of the foregoing reasons, Mitchell respectfully requests that the Court grant this motion, re-open this case, and allow Mitchell to move for access to the jurors.

Respectfully submitted,

Dated: March 5, 2018

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders