ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
VINCENT Q. KIRBY
Assistant U.S. Attorney
Arizona State Bar No. 006377
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Email: Vincent.Kirby@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>        vs.<br><br>Lezmond Mitchell,<br><br>                    Defendant. | CV-09-08089-DGC<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF FROM JUDGEMENT PURSUANT TO RULE 60(b)(6) FED. R. CIV. P.** |

The government respectfully requests the Court to deny the Defendant's Motion based on this Court's prior ruling that since the defendant's original Motion To Interview Jurors was raised in a post-trial setting there was "not a cognizable claim for relief under § 2255." *Mitchell v. United States*, No. CV-09-8089-PCT-MHM, 2010 WL 3895691, *42 (D. Ariz. Sept. 30, 2010).  The Ninth Circuit affirmed the decision. *Mitchell v. United States* 790 F.3d 881, 894 (9th Cir. 2015).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Alternatively, the Rule 60 (b)(6) Motion is a disguised § 2255 Petition which would require a COA.   Finally, *Pena-Rodriguez v. Colorado,* 137 S.Ct. 855 (2017) is not retroactive, nor does it permit a defendant to interview jurors to determine whether there was juror racial bias without any preliminary evidence.  For all of these reasons the Motion should be denied.   This request is based on the attached Memorandum.

Respectfully submitted this 21st day of May 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*S/Vincent Q. Kirby*
VINCENT Q. KIRBY
Assistant U.S. Attorney

-2-

## MEMORANDUM

### I.    Facts and Procedural History

The defendant was convicted of eleven criminal counts related to the brutal murders of a 63-year old grandmother and her 9-year old granddaughter.  Among the counts of conviction was Count 2 - Carjacking Resulting in Death, for which the defendant received the death penalty at the recommendation of the trial jury.  The defendant was sentenced on September 15, 2003.  The Ninth Circuit later affirmed the conviction and sentenced on September 5, 2007.  *United States v. Mitchell* 502 F.3d 931 (9th Cir. 2007).  A petition for certiorari was denied June 9, 2008.  *Mitchell v. United States*, 553 U.S. 1094 (2008).

Six years after conviction, on May 22, 2009, the defendant filed a Motion for Authorization to Interview Jurors.  (CV 09-08089, CR-1.)   The Court denied the Motion as untimely, failure to provide requisite affidavits, interrogatories and establish "good cause" to substantiate his request.  (CV 09-08089, CR-21; *Mitchell v. United States*, No. CV-09-8089-PCT-MHM, 2010 WL 3895691, *2, *4 (D. Ariz. Sept. 30, 2010)

The defendant amended his original habeas petition in an attempt to again raise his request to interview the jurors. (CV 09-08089, CR- 42-1.)  However, this Court ruled that the Motion for Authorization to Interview Jurors had been raised in a post-conviction setting, rather than in a trial/sentencing setting and therefore was not a "cognizable claim for relief under § 2255."  *Mitchell v. United States*, No. CV 09-08089, CR-56; 2010 WL 3895691 at *42 (D. AZ. September 30, 2010)

The issue was raised as part of the defendant's appeal of the Court's denial of the habeas petition.  The Ninth Circuit, while not specifically addressing this issue, implicitly rejected the argument by affirming the judgment of this Court. *Mitchell v. United States* 790 F.3d 881, 894 (9th Cir. 2015); *Certiorari Denied Mitchell v. United States* 137 S.Ct. 38, U.S., Oct. 3, 2016. The defense failed to raise it again either in his Motion for Rehearing or the Petition for Certiorari.

The defendant has now filed another Motion seeking permission to reopen his Section 2255 litigation in order to interview the jurors citing *Pena-Rodriguez v. Colorado*,

137 S.Ct. 855 (2017).

## **ARGUMENT**

### **Court's Prior Orders Precludes the Reopening of the Habeas Proceedings.**

The defendant seeks to reopen his "Section 2255 litigation to correct the defects in the integrity of the post-conviction proceedings that deprived him of a resolution of his claims on their merits" in order to again seek permission to interview the trial jurors. (CR-71 p. 2.)   He is seeking relief pursuant to Fed. R. Civ. P. 60 60(b)(6) that allows a court, in very limited circumstances, to grant relief in habeas cases for "any other reason that justifies relief."  However, before the Court can reach the Rule 60(b)(6) issue, there is the question of whether the defense can even request to reopen the habeas proceeding.

In 2009, the defendant sought authorization to interview the trial jurors pursuant to LRCiv 39.2(b) made applicable to criminal cases by Local Rule Criminal 24.2, which provides in part:

> Interviews with jurors after trial by or on behalf of parties involved in the trial are prohibited except on condition that the attorney or party involved desiring such an interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial. Approval for the interview of jurors in accordance with the interrogatories and affidavit so filed will be granted only upon the showing of good cause. See Federal Rules of Evidence, Rule 606(b). Following the interview, a second affidavit must be filed indicating the scope and results of the interviews with jurors and setting out the answers given to the interrogatories.

The defendant did not file a motion in compliance with LRCiv 39.2(b) after the verdict was rendered in May 2003.  It was not until approximately six years later, on May 22, 2009, that the defendant filed his Motion Seeking Authorization to Interview Jurors. (CV 09-08089, CR-1.)

The Court denied the Motion noting Rule 606(b)'s limitations on juror testimony. Further, it found that not only was the request untimely, but the defendant failed to proffer proposed interrogatories, or an affidavit as required by the Rule.  Finally, even overlooking

the procedural failures the Court ruled that the defendant failed to show "good cause." *Mitchell v. United States,* CV-09-08089, 2009 WL 2905958 *2.   The Court also rejected the defendant's argument that the good cause was established by the American Bar Association's Guidelines in Death Penalty cases directing habeas counsel to interview jurors post-verdict. It found no support in case law that death cases were entitled to exceptions of the strong policy against such interviews.  *Mitchell v. United States,* CV-09-08089, 2009 WL 2905958 *2 (CR-21 p. 3.)   The Supreme Court has agreed that the ABA Guidelines are only guidelines.  *Bobby v. Van Hook*, 558 U.S. 4, 8 (2009).

In response to that ruling, the defendant amended his original habeas petition to include the Court's denial of the request to interview jurors. (CV-09-08089, CR 42-1.) However, the Court ruled that the Motion for Authorization to Interview Jurors had been raised in a post-conviction setting rather than trial or sentencing and therefore was "not a cognizable claim for relief under § 2255." *Mitchell v. United States*, No. CV 09-08089, CR-56; 2010 WL 3895691 at *42 (D. AZ. September 30, 2010).  Under the doctrine of the "law of the case," courts are "generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 ((9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)).

A court may depart from the law of the case and grant reconsideration only where 1) the first decision was clearly erroneous, 2) an intervening change in the law has occurred, 3) the evidence on remand is substantially different, 4) other changed circumstances exist, or 5) a manifest injustice would otherwise result. Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion. *Id*. at 876. The original decision was not clearly erroneous, there has been no intervening change in the law, as no case has authorized the interviews of jurors without some preliminary showing of an issue; nothing else has changed; and there is no manifest injustice when after 15 years no juror has come forward to allege racial bias. Therefore, the Court's decision that the original request to interview jurors was not timely, failed to demonstrate good cause as well

as its subsequent ruling that the Motion was "not a cognizable claim for relief under § 2255", are the law of case.  Therefore, there is no Habeas Proceeding to reopen on the matter of juror interviews.

Furthermore, the defendant raised the denial on direct appeal, (CA-11-99003, CR-23).  While the Ninth Circuit's opinion did not include a discussion of the juror interview issue, it implicitly rejected the claim in ruling: "[t]he judgment of the district court is AFFIRMED." *Mitchell v. United States* 790 F.3d 881, 894 (9th Cir. 2015).  The defendant failed to raise it any further with the Ninth Circuit in its Motion for Rehearing. (CA-11-99003, CR-74-1)  Nor did it bring the issue to the attention of the Supreme Court in its petition for certiorari.   (No 15-8725).  He also failed to seek a Certificate of Appealability from the Ninth Circuit.  Had he been denied a certificate by the Court of Appeals he could have sought a review by the United States Supreme Court via petition for Writ of Certiorari. *Hohn v. United States*, 524 U.S. 236 (1998).

Since he raised this issue on direct appeal, he is also barred from raising it in a habeas proceeding.  The Ninth Circuit has long held that "[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent petition under 2255." *Stein v. U.S.*, 390 F.2d 625, 626 (9th Cir. 1968). "Issues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding. The fact that the issue may be stated in different terms is of no significance." *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979); *Mitchell v. United States*, 2012 WL 1768088 *4 (D. Az. May 17, 2012).

Based on the Court's prior rulings and his direct appeal the defendant's request to reopen his § 2255 Habeas proceeding must be denied.

**RULE 60(b)(6) and SECOND OR SUCCESSIVE MOTION**.

To the extent that the Court disagrees with the argument that the Habeas Proceeding is not directly available based on its prior rulings, the Court must first determine whether this Motion is a legitimate Rule 60(b)(6) motion or a disguised second or successive habeas petition.  If it is the latter, the Court lacks jurisdiction to consider the matter. *United States v. Washington*, 653 F.3d 1057, 1065 (9th Cir. 2011).

Federal criminal defendants are generally limited to a single motion under § 2255, and may not bring a "second or successive motion" unless it meets the exacting standards of 28 U.S.C. § 2255(h). Under that provision, a subsequent motion cannot be considered absent certification by the circuit court of appeals that it contains "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or "(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* § 2255(h). To avoid this onerous standard, petitioners sometimes characterize their pleadings as motions under Rule 60(b) of the Federal Rules of Civil Procedure, which "allows a party to seek relief from a final judgment, and request reopening of a case, under a limited set of circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005)[1]; *United States v. Washington*, 653 F.3d 1057, 1059 (9th Cir. 2011). When a Rule 60(b) motion is actually a disguised second or successive § 2255 motion, it must meet the criteria set forth in § 2255(h). *Gonzalez*, 545 U.S. at 528.

The Supreme Court has not adopted a bright-line rule for distinguishing bona fide Rule 60(b) motions from disguised second or subsequent § 2255 motions, instead holding that a Rule 60(b) motion that attacks "some defect in the integrity of the federal habeas proceedings" is not a disguised § 2255 motion but rather "has an unquestionably valid role to play in habeas cases." *Id.* at 532, 534; see also *United States v. Buenrostro*, 638 F.3d 720, 722–23 (9th Cir. 2011) (per curiam). A legitimate Rule 60(b) motion may challenge a district court's procedural ruling, such as a "failure to exhaust, procedural default, or statute-of-limitations bar," that actually "precluded a merits determination." *Gonzalez*, 545 U.S. at 532 n. 4. On the other hand, if the motion presents a "claim," i.e., "an asserted federal basis for relief from a ... judgment of conviction," then it is, in substance, a new request for relief

---

[1] Although *Gonzalez* dealt with a § 2254 proceeding the Ninth Circuit has held it also applies to § 2255 motions as well. *United States v. Buenrostro*, 638 F.3d 720, 722 (9th Cir. 2011).

on the merits and should be treated as a disguised § 2255 motion.  *Id.* at 530.

In this case, Mitchell purports to attack a procedural ruling – the denial of a request to interview jurors – but does so in the service of a claim he never made; that racial bias amongst the jurors prejudiced the verdict against him.  (CR-30).  Indeed, this Court has already held that Mitchell's complaints about the denial of juror interviews failed to state a claim upon which collateral relief might lie.  *Mitchell v. United States*, No. CV-09-8089, CR-56 p. 60.)  The Court did so despite Mitchell's complaints that "without any opportunity to communicate with the jurors, it would be impossible for him to identify, much less prove, that an individual juror was biased or that the deliberations were otherwise compromised." (CR-30 at 174.)  Therefore, while Mitchell does attack a procedural ruling by this Court, the issue he identifies could not form the basis of relief absent permission by the Ninth Circuit for him to raise the substantive question of juror bias.  As such, it appears that he has used Rule 60(b) in an improper attempt to smuggle a substantive issue before the Court, notwithstanding § 2255(h).  Stated another way, Mitchell's arguments cannot satisfy Rule 60(b) because they allege a "defect in the integrity of the federal habeas proceedings" that did not impact this Court's adjudication of the merits as presented in the amended motion for relief. Cf. *Gonzalez*, 545 U.S. at 532, 534.  Indeed, the defendant states that he is seeking to reopen the Section 2255 litigation to correct defects in those prior proceeding in order to pursue a "resolution of his claims on their merits."  (CR 71, p. 2)

Even were the court to conclude that the defendant is entitled to reopen his habeas petition, the defendant is still not eligible for relief.  He cannot sustain his burden of showing "'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby,* 545 U.S. at 535.  The Court has explained that "[s]uch circumstances will rarely occur in the habeas context." Gonzalez, 545 U.S., at 535, 125 S.Ct. 2641.  He fails to show that *Pena-Rodriguez* applies retroactively to his case.  Even if the Court does determine that *Pena-Rodriguez* applies to the case, the defendant is unable to establish that the opinion supports his request to interview the jurors without a preliminary showing.

In *Tharpe v. Sellers*, 138 S. Ct. 545 (2018)(per curiam), a post *Pena-Rodriguez*

case, the Supreme Court remanded that case to the Eleventh Circuit for further consideration of whether a COA should issue on the issue of juror-bias.  Although the opinion did not discuss *Pena-Rodriguez*, Justice Thomas, in dissent, provided an instructive analysis in concluding that *Pena-Rodriguez* did not apply retroactively:

> *Pena–Rodriguez* established a new rule: The opinion states that it is answering a question "left open" by this Court's earlier precedents. 580 U.S., at ——, 137 S.Ct., at 867. A new rule does not apply retroactively unless it is substantive or a "watershed rul[e] of criminal procedure." *Teague v. Lane*, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). Since *Pena–Rodriguez* permits a trial court "to consider [certain] evidence," 580 U.S., at ——, 137 S.Ct., at 869–70, and does not "alte[r] the range of conduct or the class of persons that the law punishes," *Schriro v. Summerlin*, 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), it cannot be a substantive rule. And Tharpe does not even attempt to argue that *Pena–Rodriguez* established a watershed rule of criminal procedure—a class of rules that is so "narrow" that it is " 'unlikely that any has yet to emerge.' " *Schriro,* supra, at 352, 124 S.Ct. 2519 (quoting *Tyler v. Cain*, 533 U.S. 656, 667, n. 7, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001); alterations omitted). Nor could he. Not even the right to have a jury decide a defendant's eligibility for death counts as a watershed rule of criminal procedure. *Schriro*, supra, at 355–358, 124 S.Ct. 2519. *Tharpe v. Sellers*, 138 S. Ct. 545, 551–52, 199 L. Ed. 2d 424 (2018) (Justice Thomas dissenting)

While Pena-Rodriguez carved out an exception to Rule 606(b) and allow for a review of racial bias of jurors, the Ninth Circuit had already raised the possibility. *United States v. Henley*, 238 F.3d 1111, 1120 (9th Cir. 2001). Nevertheless, the defendant failed to avail himself of the opportunity to pursue this area of inquiry in his 2009 Motion.  He now submits that *Pena-Rodriguez* supports his request to interview jurors without any preliminary showing of racial bias.  There is no approval from the Supreme Court or any other court for fishing expeditions in the absence of some information of racial bias.  Rather the case law is to the contrary.

In *Pena-Rodriguez*, the jury was discharged and advised by the court that they were free to discuss the case with anyone if they chose.  *Pena-Rodriguez,* 137 S.Ct. at 861. The defense attorney entered the jury room and was approached by two jurors.  They informed counsel that another juror had expressed anti-Hispanic bias toward the defendant. *Id*. 861.

Following the local court rules, defense counsel sought and obtained permission from the court to again contact the two jurors and obtain their affidavits limited solely to the issue of racial bias. *Id.* 870. However, the district denied the motion for a new trial because of Colorado's version of Rule 606(b) ruling that it was powerless to consider the affidavits and the Colorado Supreme Court agreed. *Id.* 862.

The Supreme Court set out to determine "whether there is an exception to the no-impeachment rule when, after the jury is discharged, *a juror comes forward* with compelling evidence that another juror made clear and explicit statements that racial animus was a significant motivating factor in his or her vote to convict." *Id*. 861(emphasis added).

The Court had previously addressed the issue of jury impeachment in *Tanner v. United States*, 483 U.S. 107 (1987). It expressed concerns that allegations of juror misconduct raised after a verdict would "seriously disrupt the finality of the process." "Moreover, full and frank discussion on the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of post-verdict scrutiny of juror conduct." *Id*. 120-121. "While persistent inquiry into internal jury processes could "in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior," our very system of trial by jury might not "survive such efforts to perfect it." *Id. 120*.

More recently, the Court rejected losing plaintiff's attempts to introduce a juror affidavit in an attempt to prove the foreperson lied during *voir dire*. *Warger v. Shauers* 135 S.Ct. 521 (2014). It stated, "Congress' enactment of Rule 606(b) was premised on the concern that the use of deliberation evidence to challenge verdict would represent a threat to both jurors and finality in those circumstances not covered by the Rule's express exceptions." *Id*. at 528.

In *Pena-Rodriguez*, the Court again reviewed *Tanner* and *Warger* in conjunction with the history behind the no-impeachment rule found in Rule 606 Fed. R. Evid. It reiterated that Rule 606 continued to have substantial merit. "It promotes full and vigorous discussion by jurors with considerable assurance that after being discharged they will not be

summoned to recount their deliberations, and they will not otherwise be harassed or annoyed by litigants seeking to challenge the verdict. Additionally, it provides stability and finality to the verdict." *Pena-Rodriguez,* 137 S.Ct. at 865. "Once a jury has pronounced its judgment, Rule 606(b) helps ensure jurors' ability to 'separate and melt anonymously in to the community from which they came.'" *United States v. Leung*, 796 F.3d 1032, 1038 (9th Cir. 2015) (internal citation omitted).

The *Pena-Rodriguez* Court, after a review of the no-impeachment rule and the impact of racial prejudice in the administration justice carved out another exception to Rule 606(b). "[T]hat where a juror makes a clear statement that he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any denial of the jury trial guarantee." *Pena-Rodriguez,* 137 S.Ct. at 869.

The defendant argues that the only way for him to determine whether racial bias played any role in the jury deliberations is to interview the members of the jury. However, the Court rejected the idea of open season on interviewing jurors. Rather, it left the mechanics of acquiring such evidence to the "state rules of professional ethics and local court rules both of which often limits counsel's post-trial contact with jurors." *Pena-Rodriguez,* 137 S.Ct. at 869. "These limits seek to provide jurors some protection when they return to their daily affairs after the verdict. But while a juror can always tell counsel they do not wish to discuss the case, jurors in some instances may come forward of their own accord." *Pena-Rodriguez,* 137 S.Ct. at 869. The Sixth Circuit concluded that this language allowed for the enforcement of local rules limiting juror contact. *United States v. Robinson*, 872 F.3d 760, 770 (6th Cir. 2017). It upheld a district court's dismissal of a motion for new trial, in part, based on juror racial bias where the defense contacted jurors in violation of its local rules. *Id*. 770.

The Court repeatedly emphasized in *Pena-Rodriguez* that it was the jurors who came forward and that defense counsel followed the local court rules and obtained

-11-

permission to seek the affidavit of the jurors. *Pena-Rodriguez,* 137 S.Ct. at 870.  The argument offered here of the need to interview jurors to determine whether there was racial bias in the jury room was rejected in *United States v. Reyes*, 2018 WL 705302 (D. Vermont 2/01/2018 *3.  The judge ruled that *Pena-Rodriguez* did not support mere speculation since it was premised on jurors coming forward, which had not happened in *Reyes*.  * 3

In this District, Ariz. R. Sup. Ct. 42, E. R. 3.5 ("E.R. 3.5").  Arizona Rule of Professional Conduct Rule ER 3.5(a)(1) ""prohibits contact with jurors after they are discharged if the communication is prohibited by law or court order. LRCiv 39.2(b) prohibits such contact unless the court grants permission under a limited set of circumstances. The Ninth Circuit disfavors post-verdict interrogation of jurors and has consistently disallowed such interrogation for the purpose of discovering potential, but unspecified, jury misconduct.  *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972); *N. Pac. Ry. Co. v. Mely*, 219 F.2d 199, 202 (9th Cir. 1954). At minimum, a party must make a preliminary showing of misconduct to establish good cause to conduct juror interviews. *See United States v. Stacey*, 475 F.2d 1119, 1121 & n. 1 (9th Cir. 1973); *Smith,* 457 F.2d at 1100. The defense cites to no authority in which a court allowed a fishing expedition without some type of preliminary showing of misconduct.

**TRIAL SAFEGUARDS AGAINST RACIAL BIAS**

The *Tanner* Court also outlined existing safeguards to protect an individual's right to an impartial and competent jury without the need to delve into juror testimony.  It listed *voir dire* as a means of probing impartiality, the ability of the court and counsel to observe and learn of juror misconduct during the course of the trial, the opportunity of jurors to observe each other and to report issues prior to the verdict and finally the use of non-juror testimony after trial to impeach the verdict. *Tanner,* 483 U.S. at 127.  The Supreme Court again acknowledged those safeguards in *Warger,* 135 S.Ct. *at* 529 and *Pena-Rodriguez,* 137 S.Ct. at 871.

In the instant case, there were many such safeguards.  More so than a usual trial. First, each member of the venire panel answered a 22-page questionnaire with 77 questions,

which they answered under the penalty of perjury.  Question 40 inquired whether the individual, close family members or friends were Native American.  They were asked in Question 41 whether they, close family member or friends ever lived or worked on an Indian Reservation or had substantial work or personal contacts with a Reservation or its tribal members.  Question 42 sought out whether any contacts or relationships with Native Americans would make it difficult for the potential juror to be fair and impartial in a case where the defendant was alleged to be a Native American.  Finally, in question 43, they were asked whether there was any reason, such as personal experiences, or what they had heard or read or visits to a Reservation, that they believed would make it difficult for them to be a fair and impartial juror.  Some potential jurors were struck based on their answers to the questionnaires prior to the actual selection process. (RT 3/26/03 pp. 88-153.)

Over the course of approximately 16 days, the venire was interviewed in small groups and then one by one by both the court and counsel.  At the end of the penalty phase, the jurors were instructed:

> Finally – finally, in your consideration of whether the death sentence is appropriate, you must not consider the race, color, religious beliefs, national origin, or sex of either the defendant of the victims.  You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to race, color, religious beliefs, national origin or sex of either the defendant or any victim.

> To emphasize the importance of this consideration, Section VII of the Special Verdict Forms contains a certification statement.  Each juror should carefully read the statement and sign your name in the appropriate place if the statement accurately reflects the manner in which you reach your individual decision.

(RT 5/16/2003 pp. 4103-04.)

Each of the jurors signed this document at the conclusion of their deliberations. (RT 5/20/2003 pp. 4201, 4206.) (CR-01-01062, CR 325.)

Finally, as the court discharged the jury it advised them that they were free to talk with anyone about the case including the lawyers, but that they were under no obligation to

-13-

do so.  (RT 5/23/2003 p. 4207.)   No juror came forward at that time nor in the 15 years since the verdict was rendered in this case to report racial bias.  The Supreme Court found that juror complaints about the racial bias of another juror are usually made quickly after the verdict.  *Pena-Rodriguez*, 137 S.Ct. at 870.

## CONCLUSION

The law of the case that the original request to interview jurors was untimely, failed to show good cause and that the Motion was not a cognizable claim under Section 2255 precludes reopening the Habeas Proceedings.  Further, the Ninth Circuit's affirmance of the district court's decision also bars the reopening.

Alternatively, the defendant's Rule 60(b)(6) Motion is a disguised Section 2255 Petition which requires a Certificate Of Appealability to proceed.  Further, *Pena-Rodriguez* is not retroactive to this case nor does it support the defense contention that he is entitled to interview the jurors without any showing of racial bias.  Therefore, the defendant cannot sustain his burden of demonstrating "extraordinary circumstances" to support the reopening of a final judgement under Rule 60(b)(6).  For these reasons, the Motion should be denied.

Respectfully submitted this 21st day of May, 2018.

ELIZABETH A. STRANGE
Acting United States Attorney


*s/ Vincent Q. Kirby*
VINCENT Q. KIRBY
Assistant United States Attorney

-14-