HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
JONATHAN C. AMINOFF (No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant/Movant
LEZMOND CHARLES MITCHELL

# THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Charles Mitchell, | Civil No. 3:09-CV-08089-DGC (Criminal No. 3:01-CR-01062-NVW-1) |
| Defendant/Movant, | **DEATH PENALTY CASE** |
| v. | Honorable David G. Campbell United States District Judge |
| United States of America, | **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)(6)** |
| Plaintiff/Respondent. | |
| | **Oral Argument Requested** |

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.     The Law of the Case Doctrine Does Not Bar Relief

The Government argues that law-of-the-case doctrine bars the Court from granting Mitchell's Rule 60 motion.  Because Rule 60 allows for post-judgment relief from judgment or orders, however, the Government's logic would dictate that no Rule 60 motion could be granted absent a law-of-the-case analysis, which is belied by Supreme Court precedent.  *Christeson v. Roper*, 135 S. Ct. 891, 895-96 (2015) (stating that a petitioner must establish only timeliness and extraordinary circumstances to avail himself of relief under Rule 60).  Assuming arguendo that the Government is correct, however, Mitchell has already cited to *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), which constitutes "an intervening change in the law" that justifies departing from the law-of-the-case doctrine.  *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir. 1996).  Moreover, Mitchell established in his motion the injustice of depriving him of an opportunity to interview the jurors, Motion at 4-7, which also warrants a departure from the law-of-the-case doctrine.  *Id*. at 281.

### B.     The Underlying Issues Are Not Procedurally Barred

The Government argues that because Mitchell raised the Court's denial of his request for juror interviews on "direct appeal," Mitchell is barred from raising the issue in a habeas proceeding.  Opposition at 6:14-16.  Separately, the Government asserts that Mitchell first sought authorization for juror interviews during his section 2255 proceedings, after his direct appeal was denied.  Opposition at 3:7-11.  The former is incorrect.  The parties agree that Mitchell first sought approval for juror interviews in 2009, dkt. no. 1, his direct appeal proceedings ended when the Supreme Court denied his petition for writ of certiorari on June 9, 2008.  *Mitchell v. United States*, 553 U.S. 1094 (2008).  When he appealed the District Court's denial of his section 2255 motion, Mitchell included the District Court's denial of his request for juror interviews in his appeal.  However, an appeal of his section 2255 motion and a "direct appeal" are two separate proceedings.  *Wall v. Kholi*, 562 U.S. 545, 553 (2011) ("'collateral review' of

1

a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding *outside of the direct review process*.") (emphasis added).

It appears this argument may simply be an oversight by the Government as the Government makes reference to Mitchell's "direct appeal" but then cites to the collateral proceedings. *See* Opposition at 6:4-7. Regardless, the procedural rule that the Government advances – namely, if an issue is raised on direct appeal, the defendant is barred from raising the same issue in a habeas proceeding – is obviously not applicable here because the juror interviews were not raised on direct review.

**C.     Mitchell's Motion Is Not a Second or Successive 2255 Motion**

In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court held that Federal Rule of Civil Procedure, Rule 60 is applicable to habeas corpus proceedings, but cautioned that courts should be wary of second or successive habeas petitions disguised as Rule 60 motions. The Court explained that a Rule 60(b) motion "that seeks to revisit the federal court's denial *on the merits* of a claim for relief should be treated as a successive habeas petition." *Id*. at 534 (emphasis added). But where the motion "confines itself not only to the first federal habeas petition, but to a nonmerits aspect of the first federal habeas proceeding," that motion is not a second or successive petition; rather, it is a valid exercise of Rule 60(b). *Id.* Indeed, a motion that "challenges only the District Court's failure to reach the merits does not warrant such treatment, and can therefore be ruled upon by the District Court without precertification by the Court of Appeals pursuant to § 2244(b)(3)." *Id.* at 538.

Here, Mitchell's motion raises a single issue: the Court's rejection of his request to interview his trial jurors. The parties agree that this is a procedural ruling. Opposition at 8:2-4.

Although acknowledging that Mitchell is not currently presenting a new claim in his motion or seeking to revisit a claim already denied on its merits, the Government argues that Mitchell's motion is a second or successive motion. Opposition at 8. The Government's theory is that if Mitchell's discovery request is granted, and in discovery

2

he finds evidence that may form the basis for a claim not currently included in his section 2255 motion, then that new claim would constitute a second or successive motion. *Id.* at 8:12-19. The Government offers no authority for this theory, and its citations to *Gonzalez* do not support this principle. Moreover, whether granting Mitchell's Rule 60(b) motion ultimately leads to an opportunity for Mitchell to amend his petition with a new claim is not part of the analysis at this stage. In fact, in *Gonzalez*, 545 U.S. 524 (2005), the Supreme Court found that challenging a timeliness denial via a Rule 60(b) motion was a proper function of a Rule 60(b) motion. If Gonzalez's motion was granted, it would obviously have allowed him to litigate his underlying substantive claims for relief and if, in the ordinary course of proceedings, discovery was granted, Gonzalez may indeed have amended his petition with new claims. Thus, whether litigation on this procedural issue ultimately allows Mitchell to re-open his habeas proceedings is not a question to be considered by this court, nor does it provide justification to deny this motion. Additionally, Mitchell raised several claims related to his jury in his section 2255 motion, and claimed in his amended section 2255 motion that the jury was not impartial. *See* Dkt. No. 30 at Claim M. Depending on what evidence is ultimately discovered, Mitchell may not need to amend his petition to add new claims.

**D.    *Peña-Rodriguez* Establishes that the Existing Safeguards Against Racial Bias are Lacking**

The Government argues that trial measures such as *voir dire* guard against racial prejudice. Opposition at 12-14. Of course, if those safeguards were effective, then cases like *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), where a juror espouses racist views during deliberations, would not exist. Moreover, and more specifically, Mitchell has raised several claims about the *voir dire* process in his case. Dkt. No. 30 at Claim H, I, J, L, M. It may be true, as a general matter, that *voir dire* helps to safeguard against racial prejudice. However, as cases like *Peña-Rodriguez*

demonstrate, the fact is that racist individuals exist and they end up on juries, and Mitchell should be permitted to investigate this issue.

**E.    Local Rule 39.2 is Inconsistent with *Peña-Rodriguez***

The District of Arizona's local rules have placed Mitchell in a catch-22:  to establish racial bias, he must investigate; to be permitted to investigate, he must establish racial bias.  Indeed, the Government endorses this catch-22, arguing that Mitchell "must make a preliminary showing of misconduct to establish good cause to conduct juror interviews."  Opposition at 12:13-14.

In support of its position, the Government contends that the "Ninth Circuit disfavors post-verdict interrogation of jurors and has consistently disallowed such interrogation…."  Opposition at 12:10-12.  In support of this theory, the Government cites to *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972) which does not state a general proposition adverse to juror interviews, but simply holds, pre- *Peña-Rodriguez*, that there is no federal constitutional right to interview jurors.  The Government also cites to *Northern Pacific Railway Co. v. Mely*, 219 F.2d 199, 202 (9th Cir. 1954), which also does not state a general proposition against juror interviews.  Instead, it simply holds that it is inappropriate to inquire into the course of jury deliberations, as prohibited by Federal Rule of Evidence 606(b), but says nothing about inquiring into juror misconduct or evidence that is not barred by Rule 606(b).  The additional cites offered by the Government do no more than to establish that evidence barred by 606(b) is not admissible.  *United States v. Stacey*, 475 F.2d 1119, 1121 (9th Cir. 1973) ("After a verdict is returned a juror will not be heard to impeach the verdict when his testimony concerns his misunderstanding of the court's instructions.  This rule does not violate a defendant's constitutional rights."  (internal citation omitted)).

In actuality, the Ninth Circuit has considered the fruits of juror interviews when the subject matter is admissible under Rule 606(b).  *See, e.g., Godoy v. Spearman*, 861 F.3d 956 (9th Cir. 2017) (en banc) (remanding for an evidentiary hearing in reliance on an alternate juror's declaration concerning juror's communication with outside source);

4

*Estrada v. Scribner*, 512 F.3d 1227 (9th Cir. 2008) (finding juror declarations admissible where they detailed improper discussions and extraneous evidence); *United States v. Maree*, 934 F.2d 196 (9th Cir. 1991) (juror's declaration was admissible where it detailed outside influence exerted on the jury) *overruled on other grounds by United States v. Adams*, 432 F.3d 1092 (9th Cir. 2006).  Mitchell's request to interview jurors is consistent with Ninth Circuit precedent as Mitchell seeks to interview the jurors for evidence that is not rendered inadmissible by Rule 606(b).

Both Mitchell and the Government cite to the Supreme Court's language in *Peña-Rodriguez v. Colorado,* where the Court states "[t]he practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors."  137 S. Ct. at 859-60; Opposition at 11:16-18; Motion at 6:8-11.  Yet the Government does not respond to the fact that Local Criminal Rule 39.2, requiring good cause as a prerequisite to juror interviews, is far more limiting than almost any rule on this topic in the entire Ninth Circuit.  Indeed, Local Criminal Rule 39.2 does not set forth "practical mechanics" guiding counsel's post-trial contact with jurors; rather, it constitutes an all-out ban on counsel's ability to investigate the possibility of juror misconduct.  The Government's only response is that because the jurors did not approach Mitchell's counsel of their own accord, and Mitchell could not otherwise find evidence of juror misconduct, Opposition at 11-12, Mitchell must live with the possibility of unrealized juror misconduct.

The Government's arguments do not comport with *Peña-Rodriguez.*  Federal Rule of Evidence 606(b) prohibits jurors from testifying about the substance of their deliberations.  In *Peña-Rodriguez,* however, the Supreme Court held that the Sixth Amendment required that Rule 606(b), and its state equivalent, cannot bar evidence of racial animus.  137 S. Ct. 855 (2017).  Allowing a petitioner to advance evidence of a juror's racial bias is inconsistent with barring a petitioner from investigating racial bias amongst jurors.  Indeed, the Supreme Court discusses at length rules that "limit"

attorneys contact with jurors and provide the jurors "some protection" when their juror obligations are complete. *Id*. at 869.  Rules like Rule 39.2 that go beyond *limiting* contact and instead create total bans on juror interviews, render the rights articulated in *Peña-Rodriguez* meaningless.

Constitutional rights implicitly protect those closely related acts necessary to their exercise. *Luis v. United States*, 136 S. Ct. 1083, 1097 (2016) (Thomas, J. dissenting).  Inevitably, "[t]here comes a point ... at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself." *Hill v. Colorado*, 530 U.S. 703, 745 (2000) (Scalia, J., dissenting).  The Supreme Court has applied this principle in a number of cases.  For example, because criminal defendants have a right to an initial appeal, the Court has determined that defendants must also have the right to counsel for that appeal, or else the appellate right is diminished. *Douglas v. California*, 372 U.S. 353 (1963).  And later, continuing this trend, the Court held that if defendants on appeal have a right to counsel, then that right must encompass the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387 (1985).  The same logic applies here:  If criminal defendants have the constitutional right to present evidence of juror bias, then they must be given the tools to investigate that evidence, and Local Rule 24.1 bars the ability to do so.

This past term, the Supreme Court emphasized that "[d]iscrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice." *Buck*, 137 S. Ct. at 778 (quoting *Rose v. Mitchell,* 443 U.S. 545, 555 (1979)); *Peña-Rodriguez,* 137 S. Ct. at 868 (same).  The *Buck* court continued that:

> Relying on race to impose a criminal sanction "poisons public confidence" in the judicial process. *Davis v. Ayala,* 135 S. Ct. 2187, 2208 (2015).  It thus injures not just the defendant, but "the law as an institution, … the community at large, and ... the democratic ideal reflected in the processes of our courts." *Rose,* 443 U.S. at 556 (internal quotation marks omitted).

6

Such concerns are precisely among those we have identified as supporting relief under Rule 60(b)(6).

137 S. Ct. at 778.

Those same concerns are at issue here.  Mitchell has already highlighted the racial issues at play in his case and in death-penalty prosecutions at large.  Motion at 5-6.  These issues warrant relief under Rule 60(b).

## CONCLUSION

For all of the foregoing reasons, Mitchell respectfully requests that the Court grant this motion, re-open this case, and allow Mitchell to move for access to the jurors.

Respectfully submitted,

Dated:  June 18, 2018

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders