MICHAEL BAILEY
United States Attorney
District of Arizona
WILLIAM G. VOIT
Arizona State Bar No. 025808
Email: William.Voit@usdoj.gov
SHARON K. SEXTON
Arizona State Bar No. 012359
Email: Sharon.Sexton@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for Respondent
United States of America*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Charles Mitchell, | No. CV-09-08089-PCT-DGC |
| Petitioner, | Related Criminal Case No. CR-01-1062-PCT-DGC |
| v. | **RESPONSE TO PETITIONER'S MOTION FOR STAY OF EXECUTION** |
| United States of America, | |
| Respondent. | (Capital Case) |
| | **(Oral Argument Requested)** |

Petitioner Lezmond Charles Mitchell was convicted and sentenced to death for the double murder of a 63-year old grandmother and her 9-year old granddaughter. In the nearly two decades since his crime, Petitioner's conviction and sentence have been consistently and repeatedly upheld by every court to review them, including this Court, the Ninth Circuit, and the Supreme Court. The judgment is final and enforceable. Pursuant to his lawful authority, the Attorney General has scheduled Petitioner's execution to take place in four months, on December 11, 2019.

This Court should not stay the execution. First and foremost, it lacks jurisdiction in light of Petitioner's most recent notice of appeal. Rule 62(d) only applies in the context of injunctive appeals. There is also no need for district court jurisdiction. The Ninth Circuit has set a briefing schedule that will conclude in mid-October, leaving

sufficient time to resolve the single discrete issue on appeal. It would be both speculative and premature for the district court to enjoin an execution set months in the future on the assumption that the appellate court will not act promptly.

Even if there were jurisdiction, a stay would not be warranted. The Supreme Court has been clear that "a stay of execution is an equitable remedy" and thus "is *not* available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (emphasis added). Petitioner fails to meet the equitable requirements for a stay. As no case has ever adopted his argument, he does not establish a likelihood of success on the merits. Nor does he show that the equities tip substantially in his favor. Petitioner's conviction and sentence have been repeatedly upheld, the United States has a strong federal interest in ensuring the finality of the judgment, and Petitioner has no constitutional, statutory, or other right to avoid the consequences of his crime.

For all these reasons, Petitioner's motion should be denied.

# **I. BACKGROUND**[1]

In 2001, in the midst of preparing for an armed robbery, Petitioner carjacked and murdered Alyce Slim, a 63-year old grandmother, and "Jane Doe," her 9-year old granddaughter. In order to steal the truck Alyce was driving, Petitioner and a confederate set upon her with knives and butchered her alive. As Jane Doe looked on, they stabbed Alyce 33 times. Alyce was unarmed, but she fought back against the two men, suffering 16 incised defensive wounds to her hands before she finally succumbed.

After Petitioner finished killing Alyce, her body was shoved into the back seat of the truck—along with Jane Doe, who was forced to ride next to her grandmother's mutilated corpse as Petitioner drove the stolen truck 30-40 miles into the mountains. Reaching a secluded area, Petitioner stopped, dragged Alyce's body out onto the ground, and ordered Jane Doe to lay down on the ground and die.

Petitioner then slashed the 9 year-old's throat, twice. But Jane Doe still didn't die. So Petitioner and his confederate found large, 20-pound rocks and took turns dropping

---

[1] *See generally United States v. Mitchell*, 502 F.3d 931, 942-46 (9th Cir. 2007).

them onto Jane Doe's head until her skull was crushed in. Afterward, the men stripped the victims down to their panties and dismembered their bodies. They severed and buried the victims' heads and hands and dragged their naked torsos into the woods.

Petitioner would later confess that he stabbed the "old lady," told Jane Doe to lay down on the ground and die, cut the young girl's throat twice, gathered rocks and took turns dropping them onto her head, and helped to dismember the bodies. He ultimately led law enforcement to where the bodies were located.

Petitioner was charged and convicted of eleven counts, including Carjacking Resulting in Death, for which he was sentenced to death at the recommendation of the trial jury. Trial proceeded after prescreening questionnaires and over a dozen days of exhaustive juror voir dire. There has never been any evidence of racial bias by any member of the jury, which included a Native American.

The Ninth Circuit affirmed the conviction and sentence in all respects. *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007). The Ninth Circuit rejected as meritless every single argument Petitioner made regarding his jury pool, including many of the arguments that he continues to repeat in his briefing.[2] The Supreme Court denied certiorari. *Mitchell v. United States*, 553 U.S. 1094 (2008).

In 2009, six years after his conviction, Petitioner filed a motion for authorization to interview jurors (CR 1) alongside a motion under 28 U.S.C. § 2255 to vacate his convictions and sentence (CR 9-12). The motion to interview jurors neither alleged nor offered reason to believe that any juror was racially biased; in fact, the motion asserted that it "does not seek to impeach the verdict" on this issue. (CR 1 at 15.) This Court denied the motion because it was untimely, failed to provide the affidavits and interrogatories required by local rule (something he still has not done), and failed to establish good cause to interrogate jurors years after the verdict. (CR 21.)

---

[2] For example, the Ninth Circuit found the jury pool was fair and representative. *See Mitchell*, 502 F.3d at 950 (affirming district court's findings that "36 of the 207-person venire (17.39%) identified themselves as Native American" while "Native Americans comprise 16.7% of the Prescott master jury wheel (from which the jury was drawn in this case)" and "the adult population of the Prescott Division was 18.64% Native American").

1 | Petitioner later amended his original 2255 motion in an attempt to again raise his request to interview the jurors. (CR 42-1 at 303-09.) Because the motion was raised in a post-conviction setting, rather than at trial or sentencing, this Court ruled it was not a cognizable claim for relief. (CR 56 at 60.) The Court denied all claims. (*Id.* at 62.)

This issue was raised yet again as part of Petitioner's appeal of the Court's denial of the 2255 motion. (CA No. 11-99003, Dkt. # 23, at 78-84.) The Ninth Circuit, while not specifically addressing this issue, affirmed the district court's judgment in all respects and affirmed the denial of a certificate of appealability ("COA") for all uncertified claims. *Mitchell v. United States*, 790 F.3d 881, 894 & n.7 (9th Cir. 2015). The Supreme Court again denied certiorari. *Mitchell v. United States*, 137 S.Ct. 38 (2016).

In 2018, Petitioner filed a motion to reopen his 2255 litigation to interview the jurors, citing *Pena-Rodriguez v. Colorado*, 137 S.Ct. 855 (2017). (CR 71.) Petitioner again did not offer any reason to believe his jurors were actually biased, nor did he submit an affidavit and proposed interrogatories. This Court denied the motion and denied a COA. (CR 80.) The Ninth Circuit granted a COA on the reasoning that one had been granted for other claims in the prior 2255 appeal, and it set a briefing schedule that will conclude no later than October 18. (CA 18-17031, Dkt. # 10-1 (reply due within 21 days of the answering brief, which is due September 27).)

On July 25, 2019, the Attorney General exercised his authority to set Petitioner's execution date for December 11, 2019, then some four-and-a-half months in the future. Petitioner now moves this Court to enjoin that execution. (CR 84 ("Mot.").)

## II. JURISDICTION

"It is clear that the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). It is equally clear that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Thus, the "filing of a notice of appeal confers jurisdiction on the court of appeals and

divests the district court of control over those aspects of the case involved in the appeal." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985).

Here, Petitioner asserts that this Court has jurisdiction pursuant to Federal Rule of Civil Procedure 62(d). (*See* Mot. at 4 (citing pre-amendment Rule 62(c)).) By its plain language, however, Rule 62(d) only applies during injunctive appeals. The rule allows district courts to grant or modify injunctions "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify *an injunction*." Fed. R. Civ. P. 62(d) (emphasis added).

"Rule 62(d) addresses the trial court's continuing jurisdiction over its rulings on claims *for injunctive relief* after those rulings have been appealed." 2 FEDERAL RULES OF CIVIL PROCEDURE, RULES & COMMENTARY § 62, Practice Commentary (West 2019 ed.) (emphasis added). *See also Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 819 (5th Cir. 1989) (the rule provides "limited injunctive powers during the pendency of an appeal" that "allow a district judge to retain jurisdiction for purposes of granting or modifying an injunction subsequent to the filing of an appeal of the injunction"); *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, No. CV 09-00598 DAE-KSC, 2011 WL 2441679, at *4 (D. Haw. June 14, 2011) ("Rule 62(c) [now (d)], by its terms, requires that the appealed matter relate to an injunction."). To apply the rule outside that context would require ignoring the plain language of the rule, as well as the Advisory Committee Notes, which also explain that subdivision (d) applies "to interlocutory *injunction* orders and to final judgments that grant, refuse, or otherwise deal with *an injunction*." Fed. R. Civ. P. 62, Advisory Committee Notes, 2018 Amendments (emphases added).

The only case Petitioner cites is *NRDC v. Sw. Marine Inc.*, 242 F.3d 1163 (9th Cir. 2001), but that case involved an appeal of an injunction order. The court found that "the district court had jurisdiction and discretion to make the post-appeal modifications, *which slightly modified and enforced the injunction*, to preserve the status quo." *Id.* at 1165 (emphasis added). *NRDC* confirmed that the "exception to the jurisdictional transfer principle has been codified in Rule 62(c) [now (d)]," *id.* at 1166, and it concluded that

"the district court had jurisdiction under Rule 62(c) to make the modifications" because "neither modification at issue here impermissibly altered the status quo *with respect to the appeal of the injunction*," *id.* at 1168 (emphasis added).

The cases *NRDC* cited likewise all involved injunctive appeals. *See id.* at 1166 (citing *Newton v. Consolidated Gas Co.*, 258 U.S. 165, 172, 177 (1922) (appeal involving an amended "decree which imposed conditions upon continuation of the injunction"); *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976) (district court had jurisdiction to grant "further injunctive relief and compliance fines" and to "modif[y] the temporary injunction" during appeal of contempt fines imposed for party's ongoing refusal to comply with the injunction's terms; explaining that then-Rule 62(c) "provides that, in the case of an appeal *from an order granting an injunction*, the district court does not lose jurisdiction to alter the injunction") (emphasis added); *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 64, 79 (9th Cir. 1951) (opining that the district court would have jurisdiction to grant a temporary injunction against sale of misbranded drugs during the pendency of "an appeal from an order of the district court denying permanent injunctions")).

Here, Petitioner has not appealed from an order granting or denying injunctive relief, directing the course of conduct of a party, or anything even remotely analogous. His appeal is from an order denying a Rule 60(b)(6) motion to reopen the judgment. (CR 71, 80, 81.) Indeed, the relief Petitioner requested was not even directed to the conduct of the opposing party. *See Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (an injunction is an order "by which a court directs the conduct of a party") (quotation omitted); *Thompson v. Enomoto*, 815 F.2d 1323, 1326 (9th Cir. 1987) ("Injunctions are orders that are directed to a party, enforceable by contempt . . . .") (quotation omitted). The Rule 60(b)(6) motion was instead directed to the Court, seeking to allow Petitioner to interrogate jurors without having to comply with the Court's local rules requiring good cause. (CR 71.) Rule 62(d) provides no jurisdictional basis for issuing injunctions during the appeal of such an order.

Although Petitioner did not raise the issue, the Court at the status conference inquired about Federal Rule of Appellate Procedure 8(a)(1)(A), which provides that "[a] party must ordinarily move first in the district court" for a stay of the judgment or an injunction. FRAP 8(a)(1) is not an independent grant of jurisdiction to the district court. "The grant of a stay or injunction by the district court is regulated by Civil Rule 62, not Appellate Rule 8." 20 MOORE'S FEDERAL PRACTICE - CIVIL § 308.12 (2019).

FRAP 8(a)(1) recognizes that there are many cases in which a stay of judgment may indeed be obtained in the district court, including as a matter of right by providing bond or other security (Rule 62(b)) and in genuine Rule 62(d) situations where an injunctive order is under appeal. The questions likely to arise in such cases are ones the district court is best suited to answer (for instance, the amount of the bond or security necessary or the scope of the injunction being appealed). FRAP 8(a)(1) thus codifies the principle articulated in *Cumberland Tel. & Tel. Co. v. Louisiana Pub. Serv. Comm'n*, 260 U.S. 212, 219 (1922), that where multiple courts have jurisdiction to grant an injunction, the request should first be directed to "the court which is best and most conveniently able to exercise the nice discretion needed to determine [the] balance of convenience[.]" That rule of prudence does not create jurisdiction where it does not otherwise exist.

Moreover, prudentially, it makes much more sense for jurisdiction to be with the appellate court right now. Adopting Petitioner's argument would require this Court to speculate about the Ninth Circuit's timeliness in ruling on the appeal. There is no reason to believe the Ninth Circuit will be dilatory; it has established a briefing schedule that will conclude, at the latest, by October 18. Petitioner's execution will not take place until December 11, almost two months later, leaving sufficient time to rule. This is especially true because the issue on appeal is discrete, it has already been briefed several times, and a capital case like this one will surely be a priority. But if the Ninth Circuit needs more time to address this matter, that should be for the Ninth Circuit to say.

For all these reasons, the Court lacks jurisdiction and should refrain from issuing a stay order regarding Petitioner's execution date.

# III. PETITIONER IS NOT ENTITLED TO AN INJUNCTION

Although the Court lacks jurisdiction, in an abundance of caution, the United States also notes that Petitioner does not meet his heavy burden to obtain an injunction.

**A.      Petitioner is Not Entitled to a Stay as a "Matter of Right"**

Petitioner claims he is "entitled to a stay of execution as a matter of right." (Mot. at 4.) But "[a] stay is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926). The Supreme Court has expressly held that "a stay of execution is an equitable remedy" and thus "is *not* available as a matter of right." *Hill*, 547 U.S. at 584 (emphasis added). The Ninth Circuit, of course, follows this principle. *See Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) ("[A] stay of execution is an equitable remedy. It is not available as a matter of right . . . ."). Thus, to obtain a stay of execution, Petitioner must meet the traditional standard for equitable relief, which he does not do. *See infra* Part III.B.

*Barefoot v. Estelle*, 463 U.S. 880 (1983), is not to the contrary. Indeed, *Hill* cited *Barefoot* as support for the proposition that "like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S. at 584 (citing *Barefoot*, 463 U.S. at 895-96). Although predating the Supreme Court's current articulation of the equitable stay standard, *Barefoot* nonetheless recognized equitable considerations (like whether there is a "significant possibility" of merits success, "a likelihood [of] irreparable harm," and the like). *See id.* at 892-96. *Barefoot* does not excuse compliance with *Hill*.

Rather, *Barefoot* laid out "general guidelines" for appellate courts evaluating stay requests. *Id.* at 892. The principle Petitioner appears to invoke is that "a circuit court, where necessary to prevent the case from becoming moot by the petitioner's execution, should grant a stay of execution pending disposition of an appeal when a condemned prisoner obtains a certificate of probable cause on his initial habeas appeal." *Id.* at 893-94 (such a certificate requiring a substantial showing of the denial of a federal right).

This is inapplicable for several reasons (in addition to the lack of probable success on the merits, *see infra* Part III.B.1). First, the matter currently before the Ninth Circuit is not Petitioner's "initial habeas appeal." *Id.* at 894. Petitioner's initial 2255 appeal ended years ago, and his conviction and sentence were affirmed. Petitioner cites no case holding that a second appeal in a such a case, from an order denying a Rule 60(b)(6) motion, is the same as his "initial habeas appeal." *Id.* In fact, he concedes the Ninth Circuit employs the equitable stay analysis in just such circumstances. (Mot. at 6.) *See, e.g., Cook v. Ryan*, 688 F.3d 598, 608, 612-13 (9th Cir. 2012); *Wood*, 759 F.3d at 1121.

Petitioner argues he is entitled to a stay because his motion was not a second or successive petition. (Mot. at 6.) Assuming that for present purposes,[3] it still would not change the need to apply the equitable test. *Hill* itself held the inmate's 1983 action was not a second or successive petition, but that still "does not entitle the complainant to an order staying an execution as a matter of course." 547 U.S. at 584. Rather, like other stay applicants, the petitioner was required to satisfy the equitable factors. *Id. See also Cook*, 688 F.3d at 608, 612-13 (applying equitable test even though the Rule 60(b)(6) motion was not a second or successive petition).

Petitioner argues *Cook* is also not dispositive because "the stay request was moot when denied." (Mot. at 6.) The stay request was not denied as moot; the Ninth Circuit analyzed and denied it on the merits of the equitable test. *See Cook*, 688 F.3d at 612-13.

---

[3] We acknowledge the Court's prior holding that Petitioner's motion was not a second or successive petition, although the United States does respectfully disagree. After this Court issued the Order under appeal, the Fifth Circuit in similar circumstances reached the opposite conclusion. *See In re Robinson*, 917 F.3d 856, 865 (5th Cir. 2019) ("Robinson is attempting to advance a new habeas claim related to jury impartiality (in light of [*Pena-Rodriguez*]) under the guise of a Rule 60(b)(6) motion. His motion seeks to re-open the proceedings for the purpose of adding new claims and, as such, is the definition of a successive claim.") (internal quotations omitted). As a second petition, it would be barred because *Pena-Rodriguez* is not a new rule of constitutional law made retroactive on collateral review. 28 U.S.C. § 2255(h)(2); *see, e.g., Tharpe v. Warden*, 898 F.3d 1342, 1344 (11th Cir. 2018) (denying certificate of appealability because the inmate's "claim arises from the rule announced in [*Pena-Rodriguez*], and that rule does not apply retroactively"), *cert. denied sub nom. Tharpe v. Ford*, 139 S.Ct. 911 (2019); *Robinson*, 917 F.3d at 869 (describing the argument that *Pena-Rodriguez* announced a new substantive rule that applies retroactively as "exceedingly doubtful," but declining to reach the issue).

- 9 -

Second, Petitioner fails to establish that a stay is "necessary to prevent the case from becoming moot." *Barefoot*, 463 U.S. at 894. A stay may be necessary "if a court of appeals is unable to resolve the merits of an appeal before the scheduled date of execution." *Id.* at 889. Here, there is no reason to believe that the Ninth Circuit will be unable to resolve the appeal before December 11. As noted above, the parties have a briefing schedule that will conclude almost two months beforehand, and this Court should not presume the Ninth Circuit would delay a ruling past that date.

*Barefoot* itself undercuts Petitioner's assumption on this point. *Barefoot* upheld the denial of a motion to stay execution where the appellate schedule allowed for two-and-a-half months between the district court's order and the execution date. *See id.* at 886, 890. The execution date was January 25, 1983, and "[f]rom the time the District Court ruled on the petition on November 9, 1982, petitioner had 71 days in which to prepare the briefs and arguments which were presented to the Fifth Circuit on January 19, 1983." *Id.* at 890. The Court of Appeals ruled on the merits and denied the stay the very next day. *Id.* at 886. The Supreme Court held that there was no prejudice to the inmate from such a schedule and that "[t]he course pursued by the Court of Appeals in this case was within the bounds" of its precedent. *Id.* at 890.

Another example is *Rodriguez v. Texas*, 515 U.S. 1307, 1308 (1995) (Scalia, as Circuit Justice). In *Rodriguez*, an inmate scheduled to be executed on November 8 was denied a stay of execution when he filed his cert petition on August 15. *Id.* at 1307-08. Recognizing that a stay of execution "is no small matter, and should not be considered when no need exists," the stay request was denied because the purpose of a stay is to prevent the execution date from interfering with appellate proceedings, and "there is no reason to believe such interference will occur" where sufficient time remains for those proceedings to take place. *Id.*

The same is true here. Sufficient time remains to address Petitioner's appeal. He is not entitled to a stay "as a matter of right," nor does prudence dictate entry of a stay by a district court based on conjecture about the appellate court's schedule.

## B. Petitioner Does Not Meet His Burden to Obtain an Equitable Stay

Standard injunctive principles "apply even in the context of an impending execution." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citing *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012)). Thus, to obtain a stay of execution, an inmate "must demonstrate (1) that he is likely to succeed on the merits of such a claim, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "Alternatively, injunctive relief could be granted if he demonstrated either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005) (internal quotation and brackets omitted). "These two alternatives represent extremes of a single continuum, rather than two separate tests." *Id.* (quotation omitted).

"It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Indeed, a preliminary injunction carries with it the "requirement for substantial proof," a standard "much higher" than "even a defendant's motion for summary judgment." *Id.*

### 1. No Significant Possibility of Success on the Merits

"A federal court will only grant a stay of execution where the inmate seeking the stay can show a significant possibility of success on the merits." *Moormann v. Schriro*, 672 F.3d 644, 647 (9th Cir. 2012). A stay of execution must be denied where the inmate fails to meet this burden. *See, e.g., Cook*, 688 F.3d at 613 ("Because Cook . . . fails to show a significant possibility of success on the merits, we must deny his request for a stay [of execution].") (internal quotation omitted).

Where the "motion for a stay of execution depends on the availability of Rule 60(b)(6) review," the inmate must show "a likelihood of success on the merits of his Rule

- 11 -

60(b)(6) motion." *Diaz v. Stephens*, 731 F.3d 370, 379 (5th Cir. 2013); *see also Workman v. Bell*, 484 F.3d 837, 839 (6th Cir. 2007) ("The success-on-the-merits inquiry here relates to the district court's rejection of [the inmate's] Rule 60(b) motion[.]").

Here, Petitioner claims he has a "strong likelihood of success on the merits" simply because a COA has been granted by the Ninth Circuit. (Mot. at 8.) But the mere fact that a COA has been issued does not equate to a stay. *See Moran v. McDaniel*, 80 F.3d 1261, 1268 (9th Cir. 1996) ("By issuing the certificate [of appealability], Moran argues, the district court implicitly determined that a stay was justified. We disagree."). "The standard for a stay is, in part, a showing of a substantial likelihood of success on the merits of the claims, *which is a higher standard than the one for a COA*." *Lambrix v. Sec'y, DOC*, 872 F.3d 1170, 1183 n.6 (11th Cir. 2017) (emphasis added).[4]

Petitioner does not make a substantial showing that his argument will succeed. By its own terms, *Pena-Rodriguez* simply carved out an exception to Federal Rule of Evidence 606(b), which otherwise bars impeachment of a verdict by evidence of what happened during jury deliberations. The Supreme Court held that "where a juror makes a clear statement that he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any denial of the jury trial guarantee." *Pena-Rodriguez*, 137 S.Ct. at 869.

Courts have recognized this was a narrow holding. *See United States v. Birchette*, 908 F.3d 50, 57 (4th Cir. 2018) ("There are sound reasons to read *Pena-Rodriguez* as a narrow exception."); *United States v. Baker*, 899 F.3d 123, 133-34 (2d Cir. 2018) (*Pena-Rodriguez* creates a "narrow exception"); *United States v. Robinson*, 872 F.3d 760, 764 (6th Cir. 2017) (exception applies "in very limited circumstances"); *Young v. Davis*, 860 F.3d 318, 333 (5th Cir. 2017) (exception applies "narrowly").

---

[4] Notably, the Ninth Circuit here did not offer commentary about the merits of Petitioner's current argument; rather, it simply granted the COA because in the initial appeal a decade ago, "[t]he district court previously determined that at least three of the constitutional claims raised in appellant's underlying 28 U.S.C. § 2255 motion met the substantive certificate of appealability standard." (CA 18-17031, Dkt. # 10-1 at 1.)

Petitioner cites no case interpreting *Pena-Rodriguez* as granting criminal defendants an unfettered right to interrogate jurors, with no court oversight and without showing good cause. (Mot. at 8-9.) Rather, the Supreme Court expressly left the mechanics of acquiring such evidence to state and local rules, including those (like our district's) that limit post-verdict contact with jurors. *See Pena-Rodriguez*, 137 S.Ct. at 869 (citing overviews of state and federal district court rules and explaining that "[t]he practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, *both of which often limit counsel's post-trial contact with jurors*") (emphasis added).

Petitioner's next argument reveals why these rules have long existed. He claims he has raised "serious questions going to the merits" by suggesting "racial bias" in his jurors (Mot. at 9)—with no evidence whatsoever. He repeats arguments about the racial composition of his venire pool that the Ninth Circuit conclusively resolved against him more than a decade ago. *See Mitchell*, 502 F.3d at 949-59 (affirming district court's findings that the jury pool represented a fair cross-section of the community, including Native Americans; noting settled law that no such claim can be raised about petit juries; and rejecting every single challenge to jury selection).

Petitioner next points out that not all of his jurors found the Navajo Nation letter mitigating, but this was a non-statutory factor committed to the jury's discretion. No court reviewing this case has found any juror misconduct. Indeed, the letter, emphasizing the seriousness of taking human life, only served to highlight the aggravated nature of Petitioner's heinous murders. In the Ninth Circuit's apt summation: "As full review of the record shows, the evidence was overwhelming. By any reasonable measure, the mitigating factors proffered by Mitchell were weak when compared to the gruesome nature of the crimes and the impact they had on the victims' family." *Id.* at 996.

Nor are Petitioner's jurors to be suspected of "racial bias" because of "this country's history . . . of discrimination towards the Native people." (Mot. at 9.) People should be judged by the content of their own character. The jurors, following their oath

and in accordance with 18 U.S.C. § 3593(f), attested that race played no part in their decision. (Criminal Case 01-1062, RT 4206.) One of them was Native American. Each juror was subjected to exhaustive questioning during voir dire that spanned more than a dozen days. (Criminal Case 01-1062, CR 253, 262, 266-270, 272, 277-78, 280, 285, 289-90, 292, 295.) The jurors were told that if they wished to speak with the lawyers, they were free to do so, and this was made easy because the lawyers were instructed to stand in the hallway as the jurors filed past them after the trial ended. (Criminal Case 01-1062, RT 4207-08.) Having completed their public service in a lengthy trial about a gruesome and emotionally wrenching double murder, the jurors became entitled to peace and protection from baseless interrogations designed to impugn their verdict.

Courts "decline to denigrate jury trials by afterwards ransacking the jurors in search of some ground for a new trial." *Wilkerson v. Amco Corp.*, 703 F.2d 184, 185-86 (5th Cir. 1983) (internal quotation and ellipsis omitted). There are "very cogent reasons for requiring parties to make a showing of likely misconduct before allowing such an inquiry," including "protecting the jury from post-verdict misconduct and the courts from time-consuming and futile proceedings," "reducing the chances and temptations for tampering with the jury," and "increasing the certainty" of the verdict. *Id.* at 185.

Petitioner does not show a likelihood of success in establishing a constitutional right to juror interrogations about supposed racial bias, for which there has never been any actual evidence. He therefore cannot obtain injunctive relief.

### 2. Petitioner's Injury Argument is Speculative

Petitioner claims that it is "beyond dispute" that he will suffer irreparable harm without a stay because "he will be executed before his appeal can be resolved." (Mot. at 9.) This is entirely speculative, and indeed implausible on its face. The appeal will be fully briefed well before the execution date, and the Ninth Circuit is unlikely to be dilatory. It would be premature for this Court to stay his execution on the assumption that the Ninth Circuit will not have time to resolve his case before December. Speculation that the appeal might remain unresolved in another court four months from

now is not enough, and Petitioner has not shown that he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20-22.

Moreover, Petitioner has no legal right to avoid execution. He was duly convicted and sentenced, and his conviction and sentence have been repeatedly upheld by every court to consider them. The Supreme Court cautions that "direct appeal is the primary avenue for review of a conviction or sentence, and death penalty cases are no exception." *Autry v. Estelle*, 464 U.S. 1, 3 (1983) (quotation omitted). Thus, "[w]hen the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence." *Id.* (quotation omitted). Here, Petitioner's sentence is final and enforceable. His only cognizable interest is in "being executed *in a constitutional manner*." *Beaty*, 649 F.3d at 1072 (emphasis added). To show irreparable harm, then, he would have to show that his execution would actually be unconstitutional, a showing he has not made. This is far from a sufficient showing of irreparable harm.

### 3. The Balance of the Equities Cuts Against Petitioner

Measured against Petitioner's speculative claim, the United States has a strong federal interest in enforcing its judgment. Equity must be sensitive to the government's "strong interest in enforcing its criminal judgments." *Hill*, 547 U.S. at 584; *see also Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992) ("Equity must take into consideration the State's strong interest in proceeding with its judgment . . . ."); *Cook*, 688 F.3d at 613 (recognizing the government's "compelling interest" in seeing a lawful judgment enforced). Suits that are "dilatory or speculative" impinge on those interests, as does "[r]epetitive or piecemeal litigation." *Hill*, 547 U.S. at 584-85.

The fact that this case has been repeatedly affirmed, in both direct and collateral appeals, provides the United States with a strong interest in finality. *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998) ("A State's interests in finality are compelling when a federal court of appeals issues a mandate denying federal habeas relief.").

Petitioner claims "the Government has no interest in pursuing an execution tainted by racial bias" (Mot. at 10), but as discussed, he has never offered any legitimate reason

- 15 -

to suspect that his jurors were "tainted by racial bias," and he should not be able to delay justice through speculative insinuations about his jurors. The federal courts have universally rejected every challenge Petitioner has ever raised to his conviction and sentence. The judgment is final, and the Attorney General has exercised his lawful authority to effect that repeatedly-upheld judgment. The equities cut against Petitioner.

### 4. An Injunction is Not in the Public Interest

Finality is not just a strong interest of the United States as a litigant. "Finality is essential to both the retributive and the deterrent functions of criminal law," and "[w]ithout finality, the criminal law is deprived of much of its deterrent effect." *Calderon*, 523 U.S. at 554 (quotation omitted). "Only with an assurance of real finality can the State execute its moral judgment in a case" and vindicate the public's "'powerful and legitimate interest in punishing the guilty.'" *Id.* at 556 (quoting *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring)). Petitioner's crimes were heinous, cruel, and depraved. The public has a strong interest in executing the moral judgment and just punishment of the penalty imposed and repeatedly affirmed in this case. The public interest does not support a stay in the absence of any evidence of an illegal verdict.

Petitioner recognizes "that the public has an interest in seeing a judgment enforced," but he asserts (citing only a dissenting opinion) that is "rebutted" because "the people of Arizona did not want a capital prosecution in this case." (Mot. at 11-12.) This argument is not persuasive on its own terms, as Petitioner cannot claim to speak for the people of Arizona. The jury spoke for the community and unanimously recommended a capital sentence. Further, if this were the issue, the fact that the State of Arizona has adopted the death penalty would contravene his argument.

But more importantly, Petitioner misapprehends the nature of the public's interest, which is a federal one. Petitioner was convicted of a federal crime under a statute of nationwide applicability. The decision to seek the death penalty is committed to the sole discretion of the Attorney General in his role as the nation's chief law enforcement officer. Here, the decision to seek, obtain, maintain, and carry out a capital sentence has

been made and upheld by Attorneys General in every administration for almost two decades. The Attorney General strives for "[n]ational consistency," employing a "multi-tier process" that is "carefully designed to provide reviewers with access to the national decision-making context, and thereby, to reduce disparities across districts." JUSTICE MANUAL § 9-10.140. The public interest is that of the nation at large, and through the democratic process, that interest lies in the stewardship of the Attorney General.

Finally, Petitioner claims that the family of his victims has no interest in finality because, he asserts, "the victims' family requested that the Government not seek death." (Mot. at 12.) Petitioner can no more speak for the victims' family than for the people of Arizona. Many victim impact statements were submitted in the criminal case; some supported a capital sentence, others did not. (*See* Criminal Case 01-1062, PSR & Att.)[5] As recently as last week, the father of the murdered child expressed strong support for the capital sentence and his desire to be personally present when it is carried out.

Doubtless, the many family members who have been victimized by Petitioner's crimes are of as diverse and complicated views on the death penalty as any group of people. But all of them have a strong interest in the finality of the judgment. Indeed, since Petitioner's plan appears to be to try to undermine the entire verdict by accusing his jurors of racial animus, he is seeking to subject the victims' family to years of additional litigation and *yet another trial*. It is implausible any family members support that.

In sum, Petitioner fails to establish any, let alone all, of the equitable requirements for a stay of execution. His motion therefore should be denied.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion should be denied.

---

[5] (*See, e.g.*, Statements of K.H. ("I [am] requesting that the defendant Lezmond Mitchell pay for what he has done to my mother and niece and how he has hurt our family/families. I'm for the death penalty. He knew right from wrong."), B.H. ("He had no respect for life and no remorse for what he did to my grandma and cousin. I want the death penalty for him."), D.H. ("I want Justice which is the death penalty.").)

- 17 -

RESPECTFULLY SUBMITTED this 19th day of August, 2019.

                MICHAEL BAILEY
                United States Attorney
                District of Arizona

                */s William G. Voit*
                WILLIAM G. VOIT
                SHARON K. SEXTON
                Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of August, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

>Celeste Bacchi
>  Email: Celeste_Bacchi@fd.org
>Jonathan C. Aminoff
>  Email: Jonathan.Aminoff@fd.org
>Sean K. Kennedy
>  Email: Sean_Kennedy@fd.org
>Statia Peakheart
>  Email: Statia_Peakheart@fd.org
>Federal Public Defender's Office
>Central District of California
>321 East 2nd Street
>Los Angeles, California 90012-4202
>Telephone: (213) 894-5374
>Facsimile: (213) 894-0310

Attorneys for Petitioner Lezmond Charles Mitchell

/s     William G. Voit
U.S. Attorney's Office