HILARY POTASHNER (CA Bar No. 167060)
Federal Public Defender
JONATHAN C. AMINOFF (CA Bar No. 259290)
(E-Mail:  Jonathan_Aminoff@fd.org)
CELESTE BACCHI (CA Bar No. 307119)
(E-Mail:  Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-5374
Facsimile:  (213) 894-0310

Attorneys for Defendant/Movant
LEZMOND CHARLES MITCHELL

# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Charles Mitchell,<br><br>        Defendant/Movant,<br><br>        v.<br><br>United States of America,<br><br>        Plaintiff/Respondent. | Civil Case No. 3:09-cv-08089-DGC<br><br>(Criminal Case No. 3:02-cr-01062-DGC<br><br>**<u>DEATH PENALTY CASE</u>**<br><br>**<u>EXECUTION SET FOR DECEMBER 11, 2019</u>**<br><br><u>Honorable David B. Campbell</u><br><u>United States District Judge</u><br><br>**REPLY IN SUPPORT OF MOVANT'S MOTION FOR STAY OF EXECUTION**<br><br>**Oral Argument Requested** |

## <u>TABLE OF CONTENTS</u>

Page

I. ARGUMENT.........................................................................................................................1

    A.    This Court Has Jurisdiction to Rule on the Motion to Stay.........................1

    B.    Mitchell Is Entitled to a Stay of Execution................................................3

        1.    Mitchell is Entitled to a Stay as a Matter of Right............................3

        2.    Mitchell is Entitled to a Stay as A Matter of Equity ........................6

II. CONCLUSION ...............................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alliance of Nonprofits for Ins., Risk Retention Group v. Barratt*,
    2012 U.S. Dist. LEXIS 115431 (Dist. Nev., Aug. 16, 2012) ...................................... 2

*Barefoot v. Estelle*,
    463 U.S. 880 (1983) ........................................................................................ 3, 4, 5, 6

*Batson v. Kentucky*,
    476 U.S. 79 (1986) .......................................................................................................10

*Benham v. Namba*,
    2014 U.S. Dist. LEXIS 188139 (C.D. Cal. Sept. 30, 2014) ........................................ 2

*Buck v. Davis*,
    137 S. Ct. 759 (2017) ................................................................................................... 7

*Bucklew v. Lombardi*,
    572 U.S. 1131 (2014) ................................................................................................... 8

*Cook v. Ryan*,
    688 F.3d 598 (9th Cir. 2012) ....................................................................................... 5

*Greenawalt v. Stewart*,
    105 F.3d 1268 (9th Cir. 1997) ..................................................................................... 5

*In re Halvorson*,
    2019 U.S. Dist. LEXIS 130886 (C.D. Cal. April 1, 2019)........................................... 2

*Harris v. Copenhaver*,
    2012 U.S. Dist. LEXIS 154931 (E.D. Cal. Oct. 26, 2012)........................................... 2

*Hill v. McDonough*,
    547 U.S. 573 (2006)................................................................................................. 4, 5

*Hilton v. Braunskill*,
    481 U.S. 770 (1987).................................................................................................... 2

*Hoffman v. Beer Drivers & Salesmen's Local Union 888*,
    536 F.2d 1268 (9th Cir. 1976) ..................................................................................... 1

*Jones v. Ryan*,
    2018 U.S. Dist. LEXIS 178611 (Dist. Ariz., Oct. 17, 2018) ....................................... 1

# TABLE OF AUTHORITIES

Page(s)

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) ............................................................................... 6

*Lonchar v. Thomas*,
    517 U.S. 314 (1996) ................................................................................................ 3

*Morse v. ServiceMaster Global Holdings, Inc.*,
    2013 U.S. Dist. LEXIS 3663 (N.D. Cal. Jan. 8, 2013) ............................................ 6

*Natural Resources Defense Council Inc. v. Southwest Marine Inc.*,
    242 F.3d 1163 (9th Cir. 2001) ................................................................................ 1

*Peña-Rodriguez v. Colorado*,
    137 S. Ct 855 (2017) ........................................................................................... 7, 8

*United States v. Mitchell*,
    502 F.3d 931 (9th Cir. 2007) ................................................................................ 10

*United States v. Winkles*,
    795 F.3d 1134 (9th Cir. 2015) ................................................................................ 7

*Workman v. Tate*,
    958 F.2d 164 (6th Cir. 1992) .................................................................................. 1

**Federal Rules and Statutes**

28 U.S.C. § 2255 ......................................................................................................... 5

Federal Rule of Appellate Procedure 8 .............................................................. 1, 2, 3

Federal Rule of Civil Procedure 62 ............................................................................ 2

Federal Rule of Evidence 606 ..................................................................................... 7

## I.  ARGUMENT

### A.    This Court Has Jurisdiction to Rule on the Motion to Stay

The Government argues that this Court has no jurisdiction to rule on the motion to stay because the filing of a notice of appeal typically "'divests the district court of control over those aspects of the case involved in the appeal.'"  (Response to Movant's Mot. to Stay (hereinafter "Resp.") at 4-5 (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985)).)  However, this general rule is neither "a creature of statute" nor "absolute in character."  *Hoffman v. Beer Drivers & Salesmen's Local Union 888*, 536 F.2d 1268, 1276 (9th Cir. 1976).  Thus, even though the filing of a notice of appeal confers jurisdiction on a court of appeal, "[t]he district court retains jurisdiction to grant a stay or injunction even after an appeal is filed."  20 MOORE'S FEDERAL PRACTICE - CIVIL § 308.12 (2019); *see also* Fed. R. App. P. 8(a)(1)(A) ("A party must ordinarily move first in the district court" for a stay pending appeal).  So long as the district court's exercise of jurisdiction does not "materially alter the status of the case on appeal," the district court may act during the pendency of an appeal "to preserve the status quo."  *Natural Resources Defense Council Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).  Mitchell's request for a stay of execution will allow him to continue with habeas litigation that was instigated before the warrant was issued.  Thus, a stay would serve only to preserve the status quo and enable Mitchell's appeal to proceed without the specter of an imminent execution.  *See Workman v. Tate*, 958 F.2d 164, 167 (6th Cir. 1992) ("The district court . . . retains jurisdiction in aid of the appeal.").

Despite the guidance from Rule 8(a)(1)(A), the Government claims that Rule 62(d), which "only applies during injunctive appeals," exclusively controls the question of jurisdiction, rather than Rule 8(a)(1)(A).  (Resp. at 7.)  But that assertion is belied by recent precedent in this court which relied upon Rule 62(d) when granting relief in a habeas case that did not involve an injunctive appeal.  In *Jones v. Ryan*, this Court issued a conditional writ granting habeas relief in a capital case.  2018 U.S. Dist.

LEXIS 178611 (Dist. Ariz., Oct. 17, 2018) at *3.  The state filed a notice of appeal in the Ninth Circuit, and the appeal was docketed and a briefing schedule set.  *Id.*  The state subsequently filed a motion in this Court to stay the conditional writ and refuse petitioner's request for release.  *Id.*  Relying on Rule 62(c) (the predecessor to current Rule 62(d)) and Fed. R. App. P. 8(a)(1)(A), this Court denied the motion to stay.[1]  *Id.* at *5, 36.

Other district courts have employed a similar analysis, based on Rule 8(a)(1)(A)'s mandate that the movant "should seek a stay pending appeal from the district court before seeking such a stay from the circuit court."  *Harris v. Copenhaver*, 2012 U.S. Dist. LEXIS 154931, *1-2 (E.D. Cal. Oct. 26, 2012) (relying upon Rule 8(a)(1)(A) to establish jurisdiction over a habeas petitioner's request for a stay pending appeal).  *See also In re Halvorson*, 2019 U.S. Dist. LEXIS 130886 (C.D. Cal. April 1, 2019), *4-5 (motion to stay pending appeal was properly before the court pursuant to Rule 8(a)(1) and Fed. R. Civ. P. 62, which "gives reviewing courts the power 'to stay proceedings or suspend, modify, restore, or grant an injunction while an appeal is pending' and the power 'to issue an order to preserve the status quo or the effectiveness of the judgment to be entered.'"); *Benham v. Namba*, 2014 U.S. Dist. LEXIS 188139, *2 (C.D. Cal. Sept. 30, 2014) (litigant was right to request district court for a stay even though the case was on appeal); *Alliance of Nonprofits for Ins., Risk Retention Group v. Barratt*, 2012 U.S. Dist. LEXIS 115431, *3 (Dist. Nev., Aug. 16, 2012) (on appeal from summary judgment for the plaintiff, district court's jurisdiction over defendant's

---

[1] The Supreme Court has held that factors relevant to the determination of whether a successful habeas petitioner should be released pending appeal are the same as those traditional factors governing the power of district and appellate courts to stay an order under Fed. R. Civ. P. 62 and Fed. R. App. P. 8(a), namely, "(1) likelihood of the stay applicant's success on the merits; (2) whether the stay applicant will be irreparably harmed; (3) whether the issuance of the stay would injure other interested parties; and (4) the public interest—are equally applicable to the determination of whether a successful habeas petitioner should be released pending appeal."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

2

motion to stay was proper because Rule 8(a)(1)(A) "requires that the moving party request to stay an order or judgment to file a motion in district court").

Finally, the Government claims that it would be prudent and make "much more sense for jurisdiction to be with the appellate court right now" because to assert jurisdiction "would require this Court to speculate about the Ninth Circuit's timeliness in ruling on the appeal." (Resp. at 7.)  This argument is without merit.  If the Ninth Circuit, or any appellate court, was concerned about district courts improperly speculating on its timeliness, it would have been unlikely to create a rule urging litigants to file their motions to stay in the district court first.  Fed. R. App. P. 8(a)(1)(A).  Mitchell respectfully asks this Court to follow in the steps of the *Jones* Court and act to preserve the status quo in this case by staying the warrant.

**B.      Mitchell Is Entitled to a Stay of Execution**

**1.      Mitchell is Entitled to a Stay as a Matter of Right**

The Government first contends that stays are not a matter of right, purely a matter of equity.  (Resp. at 8.)  The Government is wrong.  *Barefoot v. Estelle*, 463 U.S. 880 (1983) is clear:

> When a certificate of probable cause is issued by the district court, as it was in this case, or later by the court of appeals, petitioner must then be afforded an opportunity to address the merits, and the court of appeals is obligated to decide the merits of the appeal. Accordingly, a court of appeals, where necessary to prevent the case from becoming moot by the petitioner's execution, *should* grant a stay of execution pending disposition of an appeal when a condemned prisoner obtains a certificate of probable cause on his initial habeas appeal.

*Id*. at 893-94 (emphasis added).

The Supreme Court extended *Barefoot* in *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996), holding that: "the same principle applies when a district court is faced with a request for a stay in a first federal habeas case: If the district court cannot dismiss the petition on the merits before the scheduled execution, it is obligated to address the merits and *must* issue a stay to prevent the case from becoming moot."  (emphasis added).

The Government further attempts to confabulate the *Barefoot* stay standard with the *Hill*[2] equitable stay standard by noting that *Hill* cited to *Barefoot* in support of the proposition that inmates must establish the requirements for a stay.  (Resp. at 8.)  Mitchell has not shied away from his obligation to meet the relevant stay standards.  Under *Barefoot*, Mitchell need only show that he was granted a certificate of appealability in an appeal concerning his initial habeas proceeding.  (*See* Dkt. 84 at 5-7.)  The Government claims that even under *Barefoot*, however, Mitchell would need to establish his entitlement to a stay using the equitable factors.  (Resp. at 8, 9.)  The Government misreads *Barefoot*.  *Barefoot* is unequivocal that when a petitioner appeals the denial of his initial federal habeas appeal, and he has been given a COA by either the district or circuit court, he is entitled to a stay of execution if the court of appeals is unable to resolve the merits of his appeal before the scheduled date of execution.  *Barefoot*, 463 U.S. at 888.  The equitable considerations are not at issue, and the Government is incorrect when stating that "*Barefoot* nonetheless recognized equitable considerations (like whether there is a "significant possibility" of merits success, "a likelihood [of] irreparable harm," and the like)."  (Resp. at 8.)  In actuality, the *Barefoot* Court stated that with respect to stays of execution *pending review of petitions for writ of certiorari*, a stay is not automatic and the Court would consider such factors as the likelihood of irreparable harm.  *Id*. at 895-96.  But those factors do not come into play in the situation presently before this Court: whether Mitchell is entitled to a stay such that the Ninth Circuit has adequate time to review his appeal after granting a COA.  And on that point, *Barefoot* is clear that the equitable factors are not at issue.

The Government next contends that the *Hill* standard should apply to this stay request because this proceeding does not concern Mitchell's initial habeas appeal, but rather an appeal from a Rule 60(b)(6) denial.  Opposition at 9-10.  First, *Hill* on its face does not apply.  The ruling of Hill is that "inmates seeking time to challenge the

---

[2] *Hill v. McDonough*, 547 U.S. 573 (2006).

manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S. at 584.  This appeal does not concern the manner in which the Government plans to execute Mitchell.  Rather, the appeal concerns "a defect in the integrity of [Mitchell's] federal habeas proceeding."  Dkt. No. 71 at 2:16-17 (citing *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)).  In his Rule 60(b)(6) motion, Mitchell challenges an earlier ruling of this Court barring him from conducting a post-conviction investigation regarding his jurors.  Should the Ninth Circuit rule in his favor, Mitchell's original Section 2255 proceedings would be re-opened and he would be permitted to conduct an investigation and further pursue relief under Section 2255.  Given the relief under this appeal would be identical to the relief at issue in his initial Section 2255 litigation, it would not make any logical sense for a different standard to be applied to his first appeal versus this appeal.  The Government believes *Cook v. Ryan*, 688 F.3d 598 (9th Cir. 2012), rebuts this position.  But *Cook* was not eligible for a stay under *Barefoot:* when the Ninth Circuit decided that Cook was not entitled to a stay, the Ninth Circuit had already decided the merits of his appeal.  As a result, there was no appeal pending on which a COA had been granted, and no concern that the Ninth Circuit would not be able to decide the appeal prior to an execution date.  And in instances where petitioners have sought to appeal the denials of Rule 60(b)(6) motions, the Ninth Circuit has applied the *Barefoot* standard.  *See, e.g., Greenawalt v. Stewart*, 105 F.3d 1268, 1277 (9th Cir. 1997).

The Government continually suggests that the Ninth Circuit will have ample time to resolve Mitchell's appeal prior to Mitchell's December 11, 2019 execution date and thus Mitchell is not entitled to a stay.  The Government points to *Barefoot* in support of this point, noting that "*Barefoot* upheld the denial of a motion to stay execution where the appellate schedule allowed for two-and-a-half months between the district court's order and the execution date." (Resp. at 10:8-10.)  What the Government fails to note is that the Fifth Circuit applied an expedited schedule to Barefoot's appeal such that the

5

briefs were submitted, the parties were afforded unlimited time in oral argument to state their positions, and the court issued a decision the next day. *Barefoot*, 463 U.S. at 886. Here, however, because the Government arbitrarily decided to issue an execution warrant during the course of this appeal and absent consultation with Mitchell or the Court, there is no expedited schedule. On average, in the Ninth Circuit, oral argument is scheduled 9-12 months after the reply brief is filed in a civil appeal and, in a criminal appeal, oral argument is scheduled approximately 4-5 months after the reply brief is filed. *See* Ninth Circuit Office of the Clerk, Frequently Asked Questions, "Briefing/Hearing Process," available at: https://www.ca9.uscourts.gov/content/faq.php. Under either calculation, Mitchell will have no opportunity to argue his cause to the Ninth Circuit before his December 11, 2019 execution date. Thus Mitchell is entitled to a stay of execution as a matter of right.

> **2.     Mitchell is Entitled to a Stay as A Matter of Equity**
>
> > **a.     Mitchell has Established a Likelihood of Success on the Merits**

The Government contends that Mitchell claims that because he has been granted a COA, that necessarily means he has established a likelihood of success on the merits. (Resp. at 12.) In actuality, Mitchell never made this argument. (Mot. at 8-9.) It is Mitchell's burden to establish that his appeal presents a "substantial case for relief on the merits." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). "The Ninth Circuit has not clearly defined this phrase. Often a 'substantial case' is one that raises genuine matters of first impression within the Ninth Circuit." *Morse v. ServiceMaster Global Holdings, Inc.*, 2013 U.S. Dist. LEXIS 3663, at *3 (N.D. Cal. Jan. 8, 2013) (citing *Britton v. Co-Op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990)). As the parties appear to agree, the Ninth Circuit has not yet definitively ruled on the issues presented in Mitchell's Rule 60(b) motion. Moreover, the Government, relying on out-of-circuit precedent, apparently intends to contest the propriety of this Court's decision that

Mitchell's motion was not a second or successive habeas petition. (Resp. at 9 n.3.) The Government's arguments are an acknowledgement that these issues have yet to be decided by the Ninth Circuit, and an apparent concession that Mitchell's appeal thus presents a substantial case, thereby satisfying this first factor.

Relatedly, the Government misleadingly claims that the Ninth Circuit granted a COA because it had previously granted Mitchell a COA in his initial Section 2255 appeal. The Ninth Circuit actually stated:

> The district court previously determined that at least three of the constitutional claims raised in appellant's underlying 28 U.S.C. § 2255 motion met the substantive certificate of appealability standard. *See* 28 U.S.C. § 2253(c)(2). Accordingly, we grant the request for a certificate of appealability (Docket Entry No. 3) with respect to the following procedural issue: whether the district court properly denied appellant's motion to re-open his case pursuant to Fed. R. Civ. P. 60(b)(6) following the Supreme Court's opinion in *Peña-Rodriguez v. Colorado*, 137 S. Ct 855 (2017).

DE 10-1.

Obviously, Mitchell is not entitled to a COA simply because he previously received a COA. *United States v. Winkles*, 795 F.3d 1134, 1143 (9th Cir. 2015); *Buck v. Davis*, 137 S. Ct. 759, 777 (2017). And if the Government actually believed that the Ninth Circuit wrongfully granted Mitchell's request for a COA, they could have moved for reconsideration. Yet, they stood silent, and thus cannot now complain about the basis for the COA.

The Government attempts to cast *Peña-Rodriguez* as a narrow holding, yet the language of *Peña-Rodriguez* tells a different story. The Supreme Court's intent in *Peña-Rodriguez* was to provide lower courts the tools to "root[] out racial bias" in their courtrooms. 137 S. Ct. at 869. The Court acknowledged its "duty to confront racial animus in the jury system" and noted that "[t]ime and again, this Court has been called upon to enforce the Constitution's guarantee against state-sponsored racial discrimination in the jury system." 137 S. Ct. at 867. Given the purpose of this ruling, its strains credulity to accept the Government's position that the Court sought to create an exception to Federal Rule of Evidence 606(b) to permit evidence about "racial bias,

7

a familiar and recurring evil that, if left unaddressed, would risk systemic injury to the administration of justice," yet believe there is no issue with depriving Mitchell, a Native American man, of the ability to even investigate the possibility that his death-penalty trial suffered from racial bias.  137 S. Ct. at 868.

### b.      Mitchell Will Suffer Irreparable Harm Absent a Stay

If Mitchell's stay is denied, he will suffer irreparable harm.  He will be barred from completing his appeal, which the Ninth Circuit has already authorized to go forward, and he will be executed absent a full merits review.  The Government contends Mitchell has no legal right to avoid execution.  (Resp. at 15.)  If the Ninth Circuit rules in Mitchell's favor, this case will be sent back to this Court presumably to allow Mitchell to finally interview the trial jurors, and if this Court determines that racial bias did infect the jurors' deliberations, then Mitchell will likely be entitled to a new trial.  The Government is incorrect, Mitchell does have a legal right to avoid execution such that he may pursue his lawful appeal.  *See, e.g., Bucklew v. Lombardi*, 572 U.S. 1131 (2014) (application for a stay of execution treated as an application for stay pending appeal in the Eighth Circuit; stay granted "pending disposition of petitioner's appeal").

### c.      The Balance of Equities Favors Mitchell

It is difficult to credit the Government's argument that the United States has a strong federal interest in enforcing Mitchell's death judgment when it has not carried out an execution in over 16 years and now attempts to rush through five executions without a thorough vetting of its lethal injection proceedings.  (Resp. at 15.)  The Government continually touts that the Courts have previously upheld Mitchell's convictions and sentence, yet those rulings must be squared with the fact that Mitchell has been denied the ability to conduct a reasonable investigation.  As previously mentioned, Mitchell's current appeal centers on a "defect in the integrity of [his] federal habeas proceedings" and, as such, prior court's decisions with respect to those proceedings are not necessarily reliable.

It is similarly difficult to understand why the Government would be so resistant to Mitchell's investigation, especially considering that this is a death-penalty case. Mitchell is not proposing to harass, embarrass, assault, or otherwise overly inconvenience the trial jurors. He is simply asking for the opportunity to carry out the investigation that almost every other criminal defendant would be permitted to conduct if they were tried in any other district court in the Ninth Circuit.

The Government's statement that Mitchell "should not be able to delay justice through speculative insinuations about his jurors" is misplaced. (Resp. at 16.) Mitchell timely filed his Rule 60(b) motion over a year ago, well before the Government gave any indication that it intended to execute Mitchell in December, 2019. The present time crunch is the Government's creation, not Mitchell's.

### d.      An Injunction is in the Public's Interest

The Government's argument that finality is a strong interest of the United States rings hollow for the reasons previously discussed concerning lethal injection. The Government does not acknowledge this long delay, or explain why it suddenly has a strong interest in finality after years of delay.

The Government then argues that Mitchell is attempting to speak for the people of Arizona and the victim's family. (Resp. at 16, 17.) In actuality, Mitchell cited the opinion of the late Justice Reinhardt of the Ninth Circuit, who in turn cited the positions of the Navajo Nation, members of the Slim family, and the Office of the United States Attorney for the District of Arizona, for the proposition that the people of Arizona did not want a death sentence in this particular case. (Mot. at 11-12.) The Government's argument that "the jury spoke for the community and unanimously recommended a capital sentence" ironically highlights one of the key reasons why Mitchell wanted to interview the jurors in the first place: In a case committed by a Navajo, with Navajo victims on Navajo land, the trial in which Mitchell was convicted and sentenced to death was moved by the Government hundreds of miles from the reservation and heard

9

by a jury comprised of eleven white people and one Navajo.[3]  The Government claims that the public interest here is really "a federal one" spearheaded by an Attorney General "striving for consistency" as Mitchell "was convicted of a federal crime under a statute of nationwide applicability."  Opposition at 16-17.  Yet Mitchell has consistently questioned whether his prosecution was truly an attempt at national consistency given the circumstances of his prosecution and the fact that he is the only Native American on federal death row.[4]

//

//

//

---

[3] The Government actually exercised a peremptory challenge against this juror, but this Court sustained Mitchell's objection under *Batson v. Kentucky,* 476 U.S. 79 (1986).  The Government was permitted, over Mitchell's objection, to strike the one African-American potential juror from the panel.  *United States v. Mitchell*, 502 F.3d 931, 956-58 (9th Cir. 2007).

[4] If this Court needs further information on whether the public interest, which the Government claims "lies in the stewardship of the Attorney General," (Resp. at 17) would be better served by granting or denying Mitchell an opportunity to interview jurors, Mitchell respectfully requests that the Court permit an inquiry into this issue and grant Mitchell subpoena power with respect to the Government's charging decision in this case.

10

## II.  CONCLUSION

For the foregoing reasons, the Court should grant Mitchell's request for a stay until such time that his appeal is resolved and the Ninth Circuit issues its mandate.

Mitchell respectfully asks that the Clerk of this Court serve any stay order on the Government and T.J. Watson, Complex Warden at FCC Terre Haute, at:

**T.J. Watson, Complex Warden**
U.S. Penitentiary Terre Haute
4700 Bureau Road South
Terre Haute, IN 47802
812.244.4400 (phone)
812.244.4791 (fax)

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED:  August 26, 2019          By */s/ Jonathan C. Aminoff*

JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

Attorneys for Defendant/Movant
Lezmond Charles Mitchell

11